# EXHIBIT A

 CT Corporation

**Service of Process Transmittal**
05/08/2018
CT Log Number 533305738

TO: Stacia Cunningham
Mednax Services, Inc.
1301 Concord Ter
Sunrise, FL 33323-2843

RE: **Process Served in Florida**

FOR: Mednax, Inc. (Domestic State: FL)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Aetna, Inc., et al., Pltfs. vs. Mednax, Inc., et al., Dfts. |
| **DOCUMENT(S) SERVED:** | Writs of Summons, Complaint, Service Lists |
| **COURT/AGENCY:** | Court of Common Pleas - County of Philadelphia, PA<br>Case # 171101040 |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Plantation, FL |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 05/08/2018 at 14:44 |
| **JURISDICTION SERVED :** | Florida |
| **APPEARANCE OR ANSWER DUE:** | None Specified |
| **ATTORNEY(S) / SENDER(S):** | FREDERICK P. SANTARELLI<br>Union Meeting Corporate Center<br>925 Harvest Drive<br>Blue Bell, PA 19422<br>215-977-1000 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 05/10/2018, Expected Purge Date: 05/15/2018<br><br>Image SOP<br><br>Email Notification, Stacia Cunningham  stacia_cunningham@mednax.com<br><br>Email Notification, Risk Management  risk_management@mednax.com |
| **SIGNED:** | C T Corporation System |
| **ADDRESS:** | 1200 South Pine Island Road<br>Plantation, FL 33324 |
| **TELEPHONE:** | 954-473-5503 |

Page 1 of  2 / AH

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

 CT Corporation

**Service of Process Transmittal**
05/08/2018
CT Log Number 533305738

TO: Stacia Cunningham
Mednax Services, Inc.
1301 Concord Ter
Sunrise, FL 33323-2843

RE: **Process Served in Florida**

FOR: Mednax, Inc. (Domestic State: FL)

**DOCKET HISTORY:**

| DOCUMENT(S) SERVED: | DATE AND HOUR OF SERVICE: | TO: | CT LOG NUMBER: |
|---|---|---|---|
| Attachment(s), Order | By Regular Mail on 05/07/2018 at 17:17 postmarked: "Illegible" | Stacia Cunningham Mednax Services, Inc. | 533288086 |
| Order and Rule | By Regular Mail on 04/02/2018 at 16:05 postmarked on 03/26/2018 | Stacia Cunningham Mednax Services, Inc. | 533075962 |
| Order | By Regular Mail on 04/02/2018 at 16:05 postmarked: "Not Post Marked" | Stacia Cunningham Mednax Services, Inc. | 533073827 |
| Letter | By Regular Mail on 02/26/2018 at 18:23 postmarked: "Not Post Marked" | Stacia Cunningham Mednax Services, Inc. | 532858501 |
| Writ of Summons, Attachment(s) | By Certified Mail on 02/12/2018 at 19:19 postmarked on 02/06/2018 | Stacia Cunningham Mednax Services, Inc. | 532785672 |

Page 2 of  2 / AH

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

2:44pm
5/8/18

*Summons*
*Citacion*

SP5 *S17

# Commonwealth of Pennsylvania
## COUNTY OF PHILADELPHIA

Filed and Attested by the
Office of Judicial Records

Aetna, Inc., et al.
_____
*Plaintiff*

:
:
:
:
:
:
:
:
:
:

COURT OF COMMON PLEAS

Aetna Inc Etal Vs Mednax Inc Etal-WRSUM

vs.

17110104000003

Mednax, Inc., et al.
_____
*Defendant*

To[1]

_See attached party list_
_____

MEDNAX INC.
_____

_____

# Writ of Summons

You are notified that the Plaintiff[2]
*Usted esta avisado que el demandante*

Aetna, Inc., et al.
_____

_____

_____

Has (have) commenced an action against you.
*Ha (han) iniciado una accion en contra suya.*



**ERIC FEDER**
*Director, Office of Judicial Records*



By: _____

Date: _____

10-208 (Rev. 6/14)

_____
[1] Name(s) of Defendant(s)
[2] Name(s) of Plaintiff(s)

Case ID: 171101040

# Court of Common Pleas

_____ Term, 20 17

No. _____

Aetna, Inc., et al.
*Plaintiff*

vs.

Mednax, Inc., et al.
*Defendant*

# SUMMONS

**COMPLETE LIST OF PLAINTIFFS:**

1. AETNA INC
    980 JOLLY ROAD
    BLUE BELL PA 19422
2. AETNA LIFE INSURANCE CO
    151 FARMINGTON AVE
    HARTFORD CT 06156
3. AETNA HEALTH INC
    151 FARMINGTON AVE
    HARTFORD CT 06156
4. AETNA HEALTH MANAGEMENT LLC
    151 FARMINGTON AVE
    HARTFORD CT 06156

**COMPLETE LIST OF DEFENDANTS:**

1. MEDNAX INC
    1200 SOUTH PINE ISLAND ROAD
    PLANTATION FL 33324
2. MEDNAX SERVICES INC
    1200 SOUTH PINE ISLAND ROAD
    PLANTATION FL 33324
3. PEDIATRIX MEDICAL GROUP INC
    1200 SOUTH PINE ISLAND ROAD
    PLANTATION FL 33324
4. OBSTETRIX MEDICAL GROUP OF PHOENIX PC
    3800 NORTH CENTRAL AVENUE
    PHOENIX AZ 85012
5. OBSTETRIX MEDICAL GROUP OF ARIZONA
    3800 NORTH CENTRAL AVENUE
    PHOENIX AZ 85012
6. PEDIATRIX MEDICAL GROUP OF ARIZONA
    3800 NORTH CENTRAL AVENUE
    PHOENIX AZ 85012
7. PEDIATRIX MEDICAL GROUP OF ARKANSAS
    124 WEST CAPITOL AVE
    LITTLE ROCK AR 72201
8. PEDIATRIX MEDICAL GROUP OF CALIFORNIA
    818 W SEVENTH ST
    LOS ANGELES CA 90017
9. OBSTETRIX MEDICAL GROUP OF CALIFORNIA
    818 W SEVENTH ST
    LOS ANGELES CA 90017
10. PEDIATRIX CARDIOLOGY OF ORANGE COUNTY
    818 W SEVENTH ST
    LOS ANGELES CA 90017
11. PEDIATRIX MEDICAL MANAGEMENT GROUP OF COLORADO
    7700 E ARAPAHOE RD
    CENTENNIAL CO 80112
12. PEDIATRIX MEDICAL GROUP OF COLORADO
    7700 E ARAPAHOE RD
    CENTENNIAL CO 80112
13. OBSTETRIX MEDICAL GROUP OF COLORADO
    7700 E ARAPAHOE RD
    CENTENNIAL CO 80112
14. PEDIATRIX MEDICAL GROUP OF FLORIDA
    1200 SOUTH PINE ISLAND ROAD
    PLANTATION FL 33324
15. MAGELLA MEDICAL ASSOCIATES OF GEORGIA
    289 S CULVER ST
    LAWRENCEVILLE GA 30046
16. PEDIATRIX MEDICAL GROUP OF GEORGIA
    289 S CULVER ST
    LAWRENCEVILLE GA 30046
17. PEDIATRIX MEDICAL GROUP OF ILLINOIS

```
    208 SO LASALLE ST
    CHICAGO IL 60604
18. PEDIATRIX MEDICAL GROUP OF INDIANA
    150 WEST MARKET STREET
    INDIANAPOLIS IN 46204
19. MAGELLA MEDICAL ASSOCIATES OF IOWA
    400 E COURT AVE
    DES MOINES IA 50309
20. OBSTETRIX MEDICAL GROUP OF KANSAS AND MISSOURI
    112 SW 7TH STREET
    TOPEKA KS 66603
21. PEDIATRIX MEDICAL GROUP OF KANSAS
    112 SW 7TH STREET
    TOPEKA KS 66603
22. PEDIATRIX CARDIOLOGY OF SPRINGFIELD
    112 SW 7TH STREET
    TOPEKA PA 66603
23. PEDIATRIX MEDICAL GROUP OF MISSOURI
    112 SW 7TH STREET
    TOPEKA KS 66603
24. PEDIATRIX MEDICAL GROUP OF KENTUCKY
    306 W. MAIN STREET
    FRANKFORT KY 40601
25. PEDIATRIX MEDICAL GROUP OF LOUISIANA
    8550 UNITED PLAZA BLVD
    BATON ROUGE LA 70809
26. PEDIATRIX MEDICAL GROUP OF MICHIGAN
    11900 E 12 MILE RD
    WARREN MI 48093
27. PEDIATRIX NEWBORN HEARING SCREENING OF MN
    1010 DALE ST
    ST PAUL MN 55117
28. PEDIATRIX MEDICAL GROUP OF NEVADA
    701 S CARSON ST
    CARSON CITY NV 89701
29. PEDIATRIX CARDIOLOGY OF NEW MEXICO
    206 S CORONADO AVE
    ESPANOLA NM 87532
30. PEDIATRIX MEDICAL GROUP OF NEW MEXICO
    206 S CORONADO AVE
    ESPANOLA NM 87532
31. PEDIATRIX MEDICAL GROUP OF NEW JERSEY
    446 BELLEVUE AVE
    TRENTON NJ 08618
32. PEDIATRIX MEDICAL GROUP OF NEW YORK
    111 EIGHTH AVENUE
    NEW YORK NY 10011
33. PEDIATRIX MEDICAL GROUP OF NORTH CAROLINA
    160 MINE LAKE CT
    RALEIGH NC 27615
34. PEDIATRIX MEDICAL GROUP OF OHIO
    4400 EASTON COMMONS WAY
    COLUMBUS OH 43219
35. PEDIATRIX MEDICAL GROUP OF OKLAHOMA
    1833 S MORGAN RD
    OKLAHOMA CITY OK 73128
36. PEDIATRIX MEDICAL GROUP OF PENNSYLVANIA
    116 PINE ST
    HARRISBURG PA 17101
37. PEDIATRIX MEDICAL GROUP OF PUERTO RICO
    361 SAN FRANCISCO STREET
    OLD SAN JUAN PR 00901
38. PEDIATRIX MEDICAL GROUP OF SOUTH CAROLINA
    2 OFFICE PARK CT
    COLUMBIA SC 29223
```

Case ID: 171101040

39. PEDIATRIX MEDICAL GROUP OF TENNESSEE
    PEDIATRIX MEDICAL GROUP OF TEN
    KNOXVILLE TN 37929
40. MAGELLA MEDICAL ASSOCIATES OF TEXAS
    1999 BRYAN ST
    DALLAS TX 75201
41. PEDIATRIX MEDICAL GROUP OF THE MID-ATLANTIC
    2405 YORK ROAD
    LUTHERVILLE TIMONIUM MD 21093
42. PEDIATRIX MEDICAL GROUP OF MARYLAND
    2405 YORK ROAD
    LUTHERVILLE TIMONIUM MD 21093
43. PEDIATRIX MEDICAL GROUP OF VIRGINIA
    2405 YORK ROAD
    LUTHERVILLE TIMONIUM MD 21093
44. PEDIATRIX MEDICAL GROUP OF UTAH
    1108 E SOUTH UNION AVE
    MIDVALE UT 84047
45. PEDIATRIX MEDICAL GROUP OF WASHINGTON
    711 CAPITOL WAY
    OLYMPIA WA 98501
46. PEDIATRIX MEDICAL GROUP OF WASHINGTON
    711 CAPITOL WAY
    OLYMPIA WA 98501
47. PEDIATRIX MEDICAL GROUP OF WASHINGTON
    711 CAPITOL WAY
    OLYMPIA WA 98501
48. PEDIATRIX MEDICAL GROUP OF WEST VIRGINIA
    5400 D BIG TYLER ROAD
    CHARLESTON WV 25313
49. NORTHWEST NEWBORN SPECIALISTS
    780 COMMERCIAL ST SE
    SALEM OR 97301

Summons
Citacion

# Commonwealth of Pennsylvania
## COUNTY OF PHILADELPHIA

Aetna, Inc., et al.
_____
*Plaintiff*

vs.

COURT OF COMMON PLE...

Aetna Inc Etal Vs Mednax Inc Etal-WRSUM

17110104000003

Mednax, Inc., et al.
_____
*Defendant*

To[1]

See attached party list
_____

_____

_____

# Writ of Summons

You are notified that the Plaintiff[2]
*Usted esta avisado que el demandante*

Aetna, Inc., et al.
_____

_____

_____

Has (have) commenced an action against you.
*Ha (han) iniciado una accion en contra suya.*



ERIC FEDER
*Director, Office of Judicial Records*

By: _____

Date: _____

10-208 (Rev. 6/14)

_____

[1] Name(s) of Defendant(s)
[2] Name(s) of Plaintiff(s)

Case ID: 171101040

# Court of Common Pleas

_____ Term, 20 17

No. _____

Aetna, Inc., et al.
*Plaintiff*

vs.

Mednax, Inc., et al.
*Defendant*

# SUMMONS

Case ID: 171101040

**COMPLETE LIST OF PLAINTIFFS:**

1. AETNA INC
   980 JOLLY ROAD
   BLUE BELL PA 19422
2. AETNA LIFE INSURANCE CO
   151 FARMINGTON AVE
   HARTFORD CT 06156
3. AETNA HEALTH INC
   151 FARMINGTON AVE
   HARTFORD CT 06156
4. AETNA HEALTH MANAGEMENT LLC
   151 FARMINGTON AVE
   HARTFORD CT 06156

**COMPLETE LIST OF DEFENDANTS:**

1. MEDNAX INC
   1200 SOUTH PINE ISLAND ROAD
   PLANTATION FL 33324
2. MEDNAX SERVICES INC
   1200 SOUTH PINE ISLAND ROAD
   PLANTATION FL 33324
3. PEDIATRIX MEDICAL GROUP INC
   1200 SOUTH PINE ISLAND ROAD
   PLANTATION FL 33324
4. OBSTETRIX MEDICAL GROUP OF PHOENIX PC
   3800 NORTH CENTRAL AVENUE
   PHOENIX AZ 85012
5. OBSTETRIX MEDICAL GROUP OF ARIZONA
   3800 NORTH CENTRAL AVENUE
   PHOENIX AZ 85012
6. PEDIATRIX MEDICAL GROUP OF ARIZONA
   3800 NORTH CENTRAL AVENUE
   PHOENIX AZ 85012
7. PEDIATRIX MEDICAL GROUP OF ARKANSAS
   124 WEST CAPITOL AVE
   LITTLE ROCK AR 72201
8. PEDIATRIX MEDICAL GROUP OF CALIFORNIA
   818 W SEVENTH ST
   LOS ANGELES CA 90017
9. OBSTETRIX MEDICAL GROUP OF CALIFORNIA
   818 W SEVENTH ST
   LOS ANGELES CA 90017
10. PEDIATRIX CARDIOLOGY OF ORANGE COUNTY
    818 W SEVENTH ST
    LOS ANGELES CA 90017
11. PEDIATRIX MEDICAL MANAGEMENT GROUP OF COLORADO
    7700 E ARAPAHOE RD
    CENTENNIAL CO 80112
12. PEDIATRIX MEDICAL GROUP OF COLORADO
    7700 E ARAPAHOE RD
    CENTENNIAL CO 80112
13. OBSTETRIX MEDICAL GROUP OF COLORADO
    7700 E ARAPAHOE RD
    CENTENNIAL CO 80112
14. PEDIATRIX MEDICAL GROUP OF FLORIDA
    1200 SOUTH PINE ISLAND ROAD
    PLANTATION FL 33324
15. MAGELLA MEDICAL ASSOCIATES OF GEORGIA
    289 S CULVER ST
    LAWRENCEVILLE GA 30046
16. PEDIATRIX MEDICAL GROUP OF GEORGIA
    289 S CULVER ST
    LAWRENCEVILLE GA 30046
17. PEDIATRIX MEDICAL GROUP OF ILLINOIS

      208 SO LASALLE ST
      CHICAGO IL 60604
18. PEDIATRIX MEDICAL GROUP OF INDIANA
      150 WEST MARKET STREET
      INDIANAPOLIS IN 46204
19. MAGELLA MEDICAL ASSOCIATES OF IOWA
      400 E COURT AVE
      DES MOINES IA 50309
20. OBSTETRIX MEDICAL GROUP OF KANSAS AND MISSOURI
      112 SW 7TH STREET
      TOPEKA KS 66603
21. PEDIATRIX MEDICAL GROUP OF KANSAS
      112 SW 7TH STREET
      TOPEKA KS 66603
22. PEDIATRIX CARDIOLOGY OF SPRINGFIELD
      112 SW 7TH STREET
      TOPEKA PA 66603
23. PEDIATRIX MEDICAL GROUP OF MISSOURI
      112 SW 7TH STREET
      TOPEKA KS 66603
24. PEDIATRIX MEDICAL GROUP OF KENTUCKY
      306 W. MAIN STREET
      FRANKFORT KY 40601
25. PEDIATRIX MEDICAL GROUP OF LOUISIANA
      8550 UNITED PLAZA BLVD
      BATON ROUGE LA 70809
26. PEDIATRIX MEDICAL GROUP OF MICHIGAN
      11900 E 12 MILE RD
      WARREN MI 48093
27. PEDIATRIX NEWBORN HEARING SCREENING OF MN
      1010 DALE ST
      ST PAUL MN 55117
28. PEDIATRIX MEDICAL GROUP OF NEVADA
      701 S CARSON ST
      CARSON CITY NV 89701
29. PEDIATRIX CARDIOLOGY OF NEW MEXICO
      206 S CORONADO AVE
      ESPANOLA NM 87532
30. PEDIATRIX MEDICAL GROUP OF NEW MEXICO
      206 S CORONADO AVE
      ESPANOLA NM 87532
31. PEDIATRIX MEDICAL GROUP OF NEW JERSEY
      446 BELLEVUE AVE
      TRENTON NJ 08618
32. PEDIATRIX MEDICAL GROUP OF NEW YORK
      111 EIGHTH AVENUE
      NEW YORK NY 10011
33. PEDIATRIX MEDICAL GROUP OF NORTH CAROLINA
      160 MINE LAKE CT
      RALEIGH NC 27615
34. PEDIATRIX MEDICAL GROUP OF OHIO
      4400 EASTON COMMONS WAY
      COLUMBUS OH 43219
35. PEDIATRIX MEDICAL GROUP OF OKLAHOMA
      1833 S MORGAN RD
      OKLAHOMA CITY OK 73128
36. PEDIATRIX MEDICAL GROUP OF PENNSYLVANIA
      116 PINE ST
      HARRISBURG PA 17101
37. PEDIATRIX MEDICAL GROUP OF PUERTO RICO
      361 SAN FRANCISCO STREET
      OLD SAN JUAN PR 00901
38. PEDIATRIX MEDICAL GROUP OF SOUTH CAROLINA
      2 OFFICE PARK CT
      COLUMBIA SC 29223

Case ID: 171101040

39. PEDIATRIX MEDICAL GROUP OF TENNESSEE
    PEDIATRIX MEDICAL GROUP OF TEN
    KNOXVILLE TN 37929
40. MAGELLA MEDICAL ASSOCIATES OF TEXAS
    1999 BRYAN ST
    DALLAS TX 75201
41. PEDIATRIX MEDICAL GROUP OF THE MID-ATLANTIC
    2405 YORK ROAD
    LUTHERVILLE TIMONIUM MD 21093
42. PEDIATRIX MEDICAL GROUP OF MARYLAND
    2405 YORK ROAD
    LUTHERVILLE TIMONIUM MD 21093
43. PEDIATRIX MEDICAL GROUP OF VIRGINIA
    2405 YORK ROAD
    LUTHERVILLE TIMONIUM MD 21093
44. PEDIATRIX MEDICAL GROUP OF UTAH
    1108 E SOUTH UNION AVE
    MIDVALE UT 84047
45. PEDIATRIX MEDICAL GROUP OF WASHINGTON
    711 CAPITOL WAY
    OLYMPIA WA 98501
46. PEDIATRIX MEDICAL GROUP OF WASHINGTON
    711 CAPITOL WAY
    OLYMPIA WA 98501
47. PEDIATRIX MEDICAL GROUP OF WASHINGTON
    711 CAPITOL WAY
    OLYMPIA WA 98501
48. PEDIATRIX MEDICAL GROUP OF WEST VIRGINIA
    5400 D BIG TYLER ROAD
    CHARLESTON WV 25313
49. NORTHWEST NEWBORN SPECIALISTS
    780 COMMERCIAL ST SE
    SALEM OR 97301

**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
COURT OF COMMON PLEAS OF PHILADELPHIA**

AETNA INC., AETNA HEALTH, INC., AETNA
HEALTH MANAGEMENT LLC and AETNA
LIFE INSURANCE COMPANY,

Plaintiffs,

v.

MEDNAX, INC., PEDIATRIX MEDICAL
GROUP, INC. and MEDNAX SERVICES, INC.,

Defendant.

**COMMONWEALTH OF
PENNSYLVANIA COURT OF
COMMON PLEAS
PHILADELPHIA COUNTY**

**NOVEMBER TERM 2017
CIVIL NO. 01040**

**JURY TRIAL DEMANDED**

Filed and Attested by the
Office of Judicial Records
25 APR 2018 10:13 am

## NOTICE TO DEFEND

### NOTICE

You have been sued in court.  If you wish to
defend against the claims set forth in the
following pages, you must take action within
twenty (20) days after this complaint and notice
are served, by entering a written appearance
personally or by attorney and filing in writing
with the court your defenses or objections to the
claims set forth against you.  You are warned
that if you fail to do so the case may proceed
without you and a judgment may be entered
against you by the court without further notice
for any money claimed in the complaint of for
any other claim or relief requested by the
plaintiff.  You may lose money or property or
other rights important to you.

You should take this paper to your lawyer at
once.  If you do not have a lawyer or cannot
afford one, go to or telephone the office set forth
below to find out where you can get legal help.

**Philadelphia Bar Association Lawyer Referral
and Information Service One Reading Center
Philadelphia, Pennsylvania  19107 (215) 238-
6333 TTY (215) 451-6197**

### AVISO

Le han demandado a usted en la corte.  Si usted
quiere defenderse de estas demandas expuestas en
las paginas siguientes, usted tiene veinte (20) dias de
plazo al partir de la fecha de la demanda y la
notificacion. Hace falta ascentar una comparencia
escrita o en persona o con un abogado y entregar a
la corte en forma escrita sus defensas o sus
objeciones a las demandas en contra de su persona.
Sea avisado que si usted no se defiende, la corte
tomara medidas y puede continuar la demanda en
contra suya sin previo aviso o notificacion. Ademas,
la corte puede decidir a favor del demandante y
requiere que usted cumpla con todas las provisiones
de esta demanda.  Usted puede perder dinero o sus
propiedades u otros derechos importantes para
usted.

Lleve esta demanda a un abogado immediatamente.
Si no tiene abogado o si no tiene el dinero suficiente
de pagar tal servicio.  Vaya en persona o llame por
telefono a la oficina cuya direccion se encuentra
escrita abajo para averiguar donde se puede
conseguir asistencia legal.

**Asociacion De Licenciados De Filadelfia
Servicio De Referencia E Informacion Legal
One Reading Center Filadelfia, Pennsylvania
19107 (215) 238-6333 TTY (215) 451-6197**

Case ID: 171101040

ELLIOTT GREENLEAF, P.C.
By:   John M. Elliott (PA 04414)
       Frederick P. Santarelli (PA 53901)
       Gregory S. Voshell (PA 208566)
       Thomas B. Helbig, Jr. (PA 321470)
Union Meeting Corporate Center V
925 Harvest Drive, Suite 300
P.O. Box 3010
Blue Bell, PA  19422
215-977-1000
Counsel for Plaintiffs

| | |
|---|---|
| **AETNA INC., AETNA HEALTH, INC., AETNA HEALTH MANAGEMENT LLC and AETNA LIFE INSURANCE COMPANY,**<br><br>             **Plaintiffs,**<br><br>v.<br><br>**MEDNAX, INC., PEDIATRIX MEDICAL GROUP, INC. and MEDNAX SERVICES, INC.,**<br><br>             **Defendant.** | **COMMONWEALTH OF PENNSYLVANIA COURT OF COMMON PLEAS PHILADELPHIA COUNTY**<br><br>**NOVEMBER TERM 2017 CIVIL NO. 01040**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

For their Complaint, Plaintiffs Aetna Inc., Aetna Health, Inc. and Aetna Life Insurance

Company (together, "Aetna") allege the following:

## NATURE OF THE ACTION

1.     This case involves a scheme to defraud Aetna and the employer-sponsored health

plans that Aetna administers.  The fraudulent scheme was created by Defendants Mednax, Inc.,

Mednax Services, Inc., and Pediatrix Medical Group, Inc. (together "Mednax") and employed by

Mednax through physician groups that it operates and controls throughout the country, including

here in Pennsylvania.

Case ID: 171101040

2.     The scheme revolves around the manner in which Mednax fraudulently bills Aetna for medical treatment provided to newborn children. Mednax has intentionally and systematically overbilled Aetna and its employer self-funded health plans by artificially and fraudulently inflating the severity of the clinical condition of their newborn patients on bills that Mednax submits to Aetna for reimbursement.  In other words, Mednax made infants appear sicker than they actually were, so that Mednax could bill Aetna and its self-funded plan sponsors at higher rates corresponding to more intensive infant medical care.  Had Mednax billed honestly, Aetna and its plan sponsors would have paid far less.

3.     Mednax physicians have also systematically billed for unnecessary medical tests on infant children.  Mednax billed for these tests in an attempt to clinically justify the intensive or critical care level of the newborns.   Indeed, Mednax physicians go so far as to admit newborn children into the neonatal intensive care unit (the "NICU") of hospitals even where the newborns have no need for more intensive and expensive care.

4.     In pursuit of its goal of maximizing reimbursement from Aetna, Mednax centralized billing and collections for all of its physicians and ordered physicians to change medical records to reflect Mednax's desired billing goals.  Mednax established a bonus system for physicians, which has incentivized making newborn babies appear sicker than they truly are.

5.     As a result of its scheme, over at least the last seven years, Aetna has paid Mednax more than 18% more per episode of care, even after allowing for differences in fee structures, than it has paid to physicians practicing at the nation's top 50 hospitals.  Empirical data, including a detailed regression analysis recently undertaken by Aetna, establishes that this significant, 18% discrepancy cannot be attributed to any cause other than intentional overbilling.

6.     As a result of this unlawful scheme, Aetna has paid more than $50 million more

2

than it should have to Mednax.  Aetna brings this action to recover these overpayments.

## THE PARTIES

### Plaintiffs

7.      Plaintiff Aetna Inc. is a Pennsylvania corporation with its principal place of business in Connecticut and with a substantial business operation in Blue Bell, Pennsylvania. Aetna Inc., through its affiliated companies, provides health insurance to its members and provides administrative services for self-funded medical benefits plans throughout the United States.

8.      Plaintiff Aetna Life Insurance Company ("ALIC"), one of Aetna Inc.'s affiliates, is a managed care company organized under the laws of Connecticut with a principal place of business in Connecticut.  ALIC provides health insurance and administrative services for self-funded medical benefits plans throughout the United States.

9.      Plaintiff Aetna Health Management, LLC is a Delaware company with its principal place of business in Hartford, Connecticut.

10.      Plaintiff Aetna Health, Inc., one of Aetna Inc.'s affiliates, is a managed care company organized under the laws of Texas.

### Defendants

11.      Mednax, Inc. is a publicly traded Florida company, with its principal place of business in Sunrise, Florida.  Mednax, Inc. can be served at CT Corporation System, 1200 South Pine Island Road, Plantation Florida 33324.   Mednax, Inc. purports to act as a holding company for various wholly-owned subsidiaries, including defendants Mednax Services, Inc. and Pediatrix Medical Group, Inc.

12.      Mednax Services, Inc. is a Florida company, with a principal place of business in

3

Sunrise, Florida. Mednax Services, Inc. can be served at CT Corporation System, 1200 South Pine Island Road, Plantation Florida 33324.

13.     Pediatrix Medical Group, Inc. ("Pediatrix") is also a Florida company, with a principal place of business in Sunrise, Florida. Pediatrix can be served at CT Corporation System, 1200 South Pine Island Road, Plantation Florida 33324. Together, Mednax Services, Inc. and Pediatrix perform all administrative services for Mednax' pediatric groups.

14.     Mednax describes itself in its filings with the United States Securities and Exchange Commission as a leading provider of physician services including newborn, anesthesia, maternal-fetal, radiology and teleradiology, pediatric cardiology and other pediatric subspecialty care, primarily within hospital-based neonatal intensive care units, to babies born prematurely or with medical complications.

15.     Mednax enters into contractual arrangements with physician groups from across the country (the "Physician Groups"), and it operates through these Physician Groups in 38 states, including here in Pennsylvania. By virtue of these contracts, Mednax secured complete control of the Physician Groups.

16.     Mednax performs all management, billing, and collection services on behalf of the groups. In return, the Physician Groups assign all right to proceeds from all payers to Mednax.

17.     Mednax, in turn, sets and distributes compensation to the Physician Groups. The Physician Groups cannot ever terminate their contracts with Mednax.

## JURISDICTION AND VENUE

18.     This Court has personal jurisdiction over Defendants because Defendants carried on a continuous and systematic part of their general business within the Commonwealth of

4

Pennsylvania. This Court may exercise personal jurisdiction over Defendants consistent with due process and under 42 Pa. C.S.A. § 5301(a)(2), 42 Pa. C.S.A. § 5322, and the Fourteenth Amendment to the Constitution of the United States.

19.     Venue is proper here under Pa. R.C.P. 1006 and 2179 because transactions or occurrences out of which the causes of action arise took place in Philadelphia County.

## FACTUAL ALLEGATIONS

### Aetna's Network

20.     Aetna brings this action on its own behalf as the provider of fully-insured health plans through which individuals, employees and employers pay Aetna premiums in exchange for Aetna agreeing to pay their healthcare claims using Aetna's money.

21.     Aetna also brings this action as claims administrator for self-funded, employer-established health plans that retain Aetna as a third-party administrator to process employees' healthcare claims and pay those claims out of a pool of money comprised of funds contributed by employers and their employees.

22.     For these self-funded health plans, Aetna does not underwrite or insure the benefits being paid.  Rather, claims covered under self-funded health plans are paid directly by employers and employees using their own money.  By virtue of its agreements with these self-funded plan sponsors, Aetna is authorized to bring this action on their behalf to recoup overpayments that the self-funded health plans made as a result of the Mednax' improper and fraudulent billing scheme.

23.     Individuals who are covered by health plans provided and administered by Aetna are referred to as "members."

24.     Through its fully-insured and self-funded health plans, Aetna provides access to

5

coverage and benefits for its members pursuant to a variety of healthcare benefit plans and policies of insurance, including: (i) self-funded plans for which Aetna provides various third-party claims administrative services; (ii) fully-insured group policies issued by Aetna that are established and maintained by private employers to provide coverage to employees; (iii) plans covering federal employees; (iv) plans covering employees of state governmental entities; (v) church plans; (vi) policies issued to individuals; and (vii) Medicare.

25.     Health benefit plans provided and administered by Aetna include covered benefits for "in-network" services, which are services provided by medical providers contracted with Aetna (including affiliates, such as Aetna Healthcare, Inc., discussed below). Aetna plans generally cover (*i.e.*, pay for) only those services that are medically necessary.

26.     The physicians and physician groups that Mednax controls (the "Physician Groups") are part of Aetna's network of contracted medical providers.

### Mednax Engaged in Significant Upcoding for NICU Care

27.     Mednax submits claims (i.e., bills) to Aetna on behalf of the Physician Groups on standardized claim forms published by the Centers for Medicare and Medicaid Services ("CMS"). These forms list the codes associated with the services allegedly provided to/for each patient. These codes are referred to as "Current Procedural Terminology" or "CPT" codes, and they correspond to certain medical procedures. When submitting these claims, Mednax made false and fraudulent statements to Aetna so that Aetna would pay Mednax more money than it otherwise would have received.

28.     Mednax routinely "upcoded" on the claim forms it submits to Aetna. "Upcoding" in the healthcare industry occurs when a billing physician assigns an inaccurate billing code to a medical procedure or treatment to increase reimbursement. As detailed below, Mednax required its physicians to upcode, primarily by designating infants as being sicker than they truly were so

6

Case ID: 171101040

that it appeared as if the infants required more intensive treatment than was truly the case. Mednax thereafter submitted claims seeking reimbursement for the more intensive care, even though Mednax knew that the alleged medical care was not necessary. This is a form of upcoding that has cost Aetna and its plan sponsors tens of millions of dollars.

29.     Specifically, when a newborn is admitted to a NICU, a neonatologist will characterize that newborn as needing either "general hospital care," "intensive care," or "critical care."

30.     Each day that a newborn remains in the NICU the attending physician will assess the newborn's level of care and Mednax will code the claim based on this characterization. How the physician chooses to characterize infants in the NICU is important because the reimbursement rate from Aetna to Mednax increases as the level of care increases, with "critical care" being the level with the highest reimbursement amount.

31.     On the claim forms for its Physician Groups, Mednax characterized newborns as needing "critical care" or "intensive care" throughout their stay in the NICU far more frequently than physicians at the 50 top rated hospitals in the United States. Through a regression analysis, which is detailed below, Aetna has ruled out all factors that could explain the discrepancy other than intentional upcoding by Mednax. This conclusion is further supported by information provided by Mednax's former employees and affiliates.

32.     This conclusion is also consistent with allegations the federal government has levied against Mednax. In 2006, Mednax settled a False Claims Act lawsuit with the United States for over $25,000,000. The action was originally brought by a neonatologist who practiced in hospitals with Mednax physicians and observed the abuses first-hand. In that action, the federal government alleged many of the same allegations set forth in this Complaint: that

Mednax knowingly submitted false claims for payments using the critical care code for 1) admission, 2) subsequent days of treatment, and 3) even on discharge days when as many as a 33%, 50%, and 85% or more respectively of those infants were not in fact critically ill.  The case settled without an admission of liability by Mednax or a concession by the United States that its claims were not well-founded. Upon information and belief, the improper upcoding and billing of which Mednax was accused by the government with respect to Medicaid and CHAMPUS, continued by Mednax with respect to private payers, specifically Aetna.

33.     Upon information and belief, Mednax imposes a coding and billing regimen with each of its Practice Groups. This corporate culture has the goal of pressuring its Physician Groups and coders to code at the highest levels of care in order to obtain higher reimbursement payments from payers such as Aetna.

34.     Upon information and belief, Mednax has enforced its policy of upcoding by a variety of methods.  For example, Mednax sought to"educate" its Physician Groups on how to code at the higher levels and then support their coding in the medical charts.  Next, Mednax pressured its Physician Groups to code at those higher levels through pressure from headquarters and through its compensation structure. If a physician was not coding at a high enough reimbursement level, coders in the headquarters would initially contact the physician requesting that the level of care be increased.  If the physician did not respond to the request, the coder had authority to submit the claim for review by a Mednax physician employed at its headquarters. Upon information and belief, typically the level of severity is increased and the treating physician is neither advised of the change nor provided with the coding information submitted on the final claim to the third party payer.

35.     Upon information and belief, Mednax employed "Medical Coding Educators,"

8

.

usually registered nurses or trained coders, to go out into the field and train Mednax-affiliated

Physician Groups on the Mednax way of coding NICU admissions and evaluation/management

("E/M") codes. Mednax conducted formal internal audits that track which affiliated physicians

and Physician Groups did not meet the financial goals established by Mednax. The results of the

audits were shared with responsible parties within the company – the "offending" physician, the

Medical Director of the Physician Group, the Pediatrix Regional Manager, the Pediatrix VP of

Compliance, the Pediatrix VP or President of the Region, and the head of all coding at Pediatrix.

Physicians and/or Groups that did not meet Mednax's mandatory goals are subjected to

additional training on Mednax's policies and billing practices.

36.     Upon information and belief, Mednax pressured physicians to assess a patient at a

higher level of severity than is clinically appropriate. Internal software programs used by

Mednax automatically generated medical coding for physicians. However, coding and clinical

charting were carefully reviewed at Mednax. If Mednax disagreed with the billing code

triggered by the physician's clinical assessment, Mednax requested that physician change the

clinical assessment/code or Mednax changed it. Mednax sought to adjust the clinical chart to

support the claim submitted to the third party payers.

37.     Mednax controls compensation to the physicians in Mednax' affiliated Physician

Groups. Upon information and belief, Mednax' bonus structure is specifically designed to

incentivize physicians to perform unnecessary tests and/or improperly upcode on claims.

Bonuses were tied to reimbursements levels, thus providing the Physician Groups with the

incentive to adopt Mednax' billing policies and order unnecessary tests.

38.     Under the Mednax model, the medical director of the Physician Group, appointed

by Mednax, had the power with respect to staffing and compensation decisions. The more

9

money Mednax made over the ceiling it set for the Physician Group, the larger the bonuses to those physicians.

39.     Upon information and belief, even the compensation to coders and managers is tied to billing.  Coders and managers have performance and return on investment bonuses based on the amount billed to third party payers.

40.     Upon information and belief, physicians ordered unnecessary tests on newborn patients, for example x-rays, echocardiograms and RetCam opthamology tests, to support the severity level and to generate higher claim reimbursement amounts.

41.     The Physician Groups did not typically see or approve the submitted claims. Thus, Mednax had the ability to code and bill as it wished regardless of the physician's assessment/coding of the treatment.  For example, a physician in Pennsylvania who saw a claim that Mednax had submitted to a payer was surprised to learn after the fact that Mednax had charged the payer for critical care right up to the day of discharge when he had cared for this patient and knew that the newborn was not being treated for an acute illness or getting IV or oxygen.

**Aetna's Statistical Analysis**

42.     In addition to the information provided by former employees of Mednax and its Physician Groups, Aetna sought to undertake an extensive and thorough statistical analysis to determine if this information was supported by the claims data.

43.     Aetna conducted a statistical analysis using tens of thousands of claims submitted by Mednax to Aetna for reimbursement.  This analysis shows a pattern of overbilling by Mednax extending over a period of several years.  The analysis – which factors out an extensive list of possible variables, including variations in fee schedules – shows unequivocally that Mednax billed for services in a manner that far exceeded comparable non-Mednax physician groups.

10

44.     Over a period of at least six years, Mednax billings per episode (after accounting for differences in negotiated billing rates) of care exceed billings by non-Mednax physicians practicing in the nation's top 50 U.S. neonatology centers (as defined by U.S. News and World Report) by approximately $2,400 per episode of care or more than 18%.

45.     Aetna also evaluated the impact of Mednax' billing policies on practice groups that Mednax acquired by comparing the practice group's billing tendencies before and after Mednax took over. In each case, there was a significant increase in billing per episode of care once the groups became affiliated with Mednax.

46.     For example, during September 2013 Mednax purchased a practice group in Texas.  From 2009 until September 2013, the physician practice group billed intensive and critical care codes representing 56% of total claims billed per episode of care at an average cost of $586 per patient per day.  From September 2013 until September 2016 Mednax billed intensive and critical care codes representing 80% of total claims billed per episode of care at an average cost of $958 per patient per day.

47.     Likewise, during April 2014 Mednax purchased a practice group in North Carolina. From 2009 until April 2014 the physician practice group billed intensive and critical care codes representing 35% of total claims billed per episode of care at an average cost of $174 per patient per day.  From April 2014 until September 2016, however, Mednax billed intensive and critical care codes representing 77% of total claims billed per episode of care at an average cost of $508 per patient per day.

48.     The disparity in between NICU billings before and after the groups joined Mednax was not limited to Aetna.  In a study of "before and after" billings in two counties in Texas, billings to Medicaid increased by more than $6,300 per episode of care after Mednax has

11

Case ID: 171101040

entered the hospital.  In the case of private payers, billings increased by more than $4,300 per episode of care.

49.    Physicians perform services based upon the level of severity of the newborn. After adjusting for the level of severity, Mednax bills critical and intensive care CPT codes on approximately 22.1% more days during the episode of care than non-Mednax physicians.  After adjusting the level of severity of the newborn, overall, Mednax physicians bill approximately 15.3% more critical and intensive care CPT codes (thereby increasing the cost per episode of care) per episode of care than non-Mednax physicians.

50.    After adjusting the level of severity of the newborn, Mednax physicians bill for procedures and order medical tests in the NICU far more frequently than non-Mednax physicians.  For example:

a.  Mednax billed for approximately 149.2% more emergency endotracheal intubations than non-Mednax physicians.

b.  Mednax billed for approximately 21.9% more delivery room resuscitations than non-Mednax physicians;

c.  Mednax billed for approximately 29.2% more often for attendance at delivery than non-Mednax physicians;

d.  Mednax billed for approximately 255% more auditory evoked portals for responsive audiometry (e.g., hearing tests) than non-Mednax physicians, frequently billing for two auditory tests before an infant leaves the hospital; (there is no medical justification--much less medical necessity – for a second hearing test so close in time to the original one);

e.  Mednax billed for  approximately 11.3% more echocardiographs (ECG) than non-Mednax physicians;

f.  Mednax billed for approximately 14.2% more catheterizations than non-Mednax physicians;

g.  Mednax billed for  approximately 37.5% more basic metabolic panels per episode than non-Mednax physicians; and

Case ID: 171101040

    h.   Mednax billed for approximately 23.8% more x-rays per episode than non-Mednax physicians

51.    Aetna's regression analysis included a variety of factors identified from peer-reviewed literature that could account for differences in per episode of care instances of coding or frequency of tests, and adjusted for or ruled out these factors.

52.    Among the factors ruled out by Aetna's regression analysis were the following:

    a.   <u>Severity of Patient's Condition</u>: Based on a series of severity indicators reported for NICU patients, Mednax patients' conditions are not more severe than non-Mednax patients, nor did Mednax patients have longer length of stay;

    b.   <u>Severity of Patient's Diagnosis</u>: There are no significant differences in the percentage of Mednax patients versus non-Mednax patients with respect to 40 of 51 possible NICU diagnoses. (As to two of the remaining eleven diagnoses, Mednax had healthier babies and none of the differences were significant);

    c.   <u>Geographic or Demographic Disparities</u>: There are no meaningful geographic or demographic disparities between Mednax patients and non-Mednax patients. The analysis was restricted only to states in which Mednax has NICU claims activity and controlled for demographics at the county level of the NICU facility;

    d.   <u>Mednax vs. other Provider Groups</u>: A comparison of Mednax claims with claims submitted by the top 10 neonatal provider groups with and without similar NICU CPT utilization patterns to Mednax showed that Mednax experienced higher total claims per episode of care;

    e.   <u>Mednax Physicians vs. Physicians in Teaching Hospitals</u>: The analysis sought to eliminate the possibility that Mednax claims were higher because Mednax physicians practiced in teaching hospitals providing a higher level of care. The analysis shows that a greater percentage of Mednax patients than non-Mednax patients are in non-teaching hospitals but still billed at higher rates than other physicians in teaching hospitals;

    f.   <u>Mednax Physicians vs. Physicians in Nationally Ranked Neonatal Centers</u>: Aetna's study compared claims by Mednax physicians with claims by non-Mednax physicians at the top 50 nationally ranked neonatal centers, as reported by the U.S. News & World Report. Mednax patients consistently had higher claim payment amounts (after allowing for differences in billing rates) as compared with non-Mednax physicians at top 50 nationally ranked hospitals;

    g.   <u>Outcomes</u>: Mednax's overtreatment of patients has not resulted in better outcomes for patients: Aetna's study showed that Mednax actually has a higher

rate of relapse to the NICU and no better rate of re-admission to the hospital than non-Mednax patients.

53.     Since at least 2009, and likely well before then, Mednax has submitted to Aetna claims on behalf of its affiliated physicians, knowing that a significant portion of the claims were upcoded and/or inflated with chargers for medically unnecessary services and tests.

54.     In submitting these claims, Mednax falsely represented that the claims were for covered services that were medically necessary.  Mednax concealed from Aetna the fact that a substantial portion of the services was not medically necessary.  Mednax's practice of knowingly submitting claims for medically unnecessary treatment constitutes a scheme or artifice to defraud Aetna.

55.     Aetna reasonably relied on representations by Mednax that the services for which it was submitted claims were medically necessary.

56.     Upcoding and billing  of unnecessary tests by Mednax resulted not only in excessive payments to Mednax, but also in inflated payments to hospitals in which tests were performed and NICUs were housed and other providers.

57.     In addition to the above statistically significant evidence, Aetna's claims that Mednax physicians billed for upcoded and unnecessary procedures, all at the urging or insistence of Mednax, are based upon information provided by former employees of Mednax groups and/or Mednax. Aetna believes that additional former employees and current Mednax group members and employees will confirm these conclusions.

## FIRST CAUSE OF ACTION
### (Fraud Against All Defendants)

58.     Aetna repeats and realleges all prior paragraphs of the Complaint as if set forth in full here.

Case ID: 171101040

59.     Since at least 2009, the Defendants have submitted, or caused to be submitted, thousands of claims to Aetna despite knowing that the claims were fraudulently inflated to include medically unnecessary tests and coding that did not reflect the true and honest condition of the patients.

60.     Defendants made material and false representations to Aetna when submitting or causing to be submitted thousands of claims containing improperly inflated charges.

61.     When submitting these claims, Defendants omitted the fact that the claim forms contained charges for services that were not necessary and coding that did not reflect the honest condition of its patients, and thereby concealed this information from Aetna.

62.     Defendants submitted the claims knowing that Aetna would rely on these misrepresentations in issuing payment to Defendants.

63.     Reasonably relying on the purported truth and accuracy of these bills, Aetna issued payment for the excessive and medically unnecessary services provided or allegedly provided by Defendants' affiliated physicians and physicians groups.

64.     As a result of the Defendants' wanton and malicious fraudulent actions, Aetna and the employers and employees whose health plans Aetna administers have been damaged.

WHEREFORE, Aetna respectfully requests that this Court enter judgment in its favor and against Defendants and award Aetna the following relief:

(a)   Actual damages in excess of $50,000,000 exclusive of interest and costs;

(b)   Punitive damages;

(c)   Attorneys' fees; and

(d)   Such other and further relief as this Court may deem just and equitable.

Case ID: 171101040

## SECOND CAUSE OF ACTION
### (Negligent Misrepresentation Against All Defendants)

65.     Aetna repeats and realleges all prior paragraphs of the Petition as if set forth in full here.

66.     By submitting, or causing the submission of, claims to Aetna that were improperly inflated with unnecessary medically tests and coding that did not reflect the true and honest condition of the patients, Defendants supplied false information to Aetna in the course of the Defendants' business.

67.     Defendants failed to exercise reasonable care or competence in making such representations to Aetna.

68.     Aetna justifiably relied on the Defendants' misrepresentations in issuing payment for services provided or allegedly provided by Defendants' affiliated physicians and physicians groups.

69.     Defendants' negligent misrepresentations proximately caused Aetna, and the employers and employees whose health plans Aetna administers, to suffer damages.

WHEREFORE, Aetna respectfully requests that this Court enter judgment in its favor and against Defendants and award Aetna the following relief:

(a)  Actual damages in excess of $50,000,000 exclusive of interest and costs; and

(b)  Such other and further relief as this Court may deem just and equitable.

## THIRD CAUSE OF ACTION
### (Money Had and Received Against All Defendants)

70.     Aetna repeats and realleges all prior paragraphs of the Complaint as if set forth in full here.

71.     By submitting, or causing the submission of, false claims to Aetna despite

Case ID: 171101040

knowing that the claims were inflated with medically unnecessary tests and procedure coding that did not reflect the true and honest condition of the patients.

72.    Defendants have received money which in equity and good conscience belongs to Aetna and the employers and employees whose health plans Aetna administers.

73.    As a result of Defendants' actions, Aetna, and the employers and employees whose health plans Aetna administers, have suffered damages.

WHEREFORE, Aetna respectfully requests that this Court enter judgment in its favor and against Defendants and award Aetna the following relief:

(a)  Actual damages in excess of $50,000, 000 exclusive of interest and costs; and

(b)  Such other and further relief as this Court may deem just and equitable.

**FOURTH CAUSE OF ACTION**
**(Unjust Enrichment Against All Defendants)**

74.    Aetna repeats and realleges all prior paragraphs of the Complaint as if set forth in full here.

75.    Defendants submitted, or caused to be submitted, thousands of claims to Aetna despite knowing that the claims were improperly inflated with medically unnecessary tests and procedure coding that did not reflect the true and honest condition of the patients.

76.    Aetna, relying on Defendants' representations that the services had been performed, that the services were medically necessary, and that the services were appropriately coded, issued payment for services provided or allegedly provided by Defendants' affiliated physicians and physicians groups.

77.    Defendants have wrongfully obtained the payments issued by Aetna.

78.    Because of Defendants' fraudulent conduct, it is unconscionable for Defendants to retain the payments.

17

79.     As a result of Defendants' actions, Aetna, as well as the employers and employees whose health plans Aetna administers, have been damaged.

WHEREFORE, Aetna respectfully requests that this Court enter judgment in its favor and against Defendants and award Aetna the following relief:

(a)  Actual damages in excess of $50,000,000 exclusive of interest and costs; and

(b)  Such other and further relief as this Court may deem just and equitable.

### FIFTH CAUSE OF ACTION
#### (Civil Conspiracy Against All Defendants)

80.     Aetna repeats and realleges all prior paragraphs of the Complaint as if set forth in full here.

81.     Defendants agreed and conspired with their affiliated physician practice groups in a course of conduct to commit fraud against Aetna and the employers and employees whose health plans Aetna administers by submitting, or causing the submission of, claim forms to Aetna inflated with medically unnecessary tests and procedure coding that did not reflect the true and honest condition of the patients.

82.     As a result of Defendants' wanton and malicious actions, Aetna, as well as the employers and employees whose health plans Aetna administers, have suffered damages.

WHEREFORE, Aetna respectfully requests that this Court enter judgment in its favor and against Defendants and award Aetna the following relief:

(a)  Actual damages in excess of $50,000,000 exclusive of interest and costs;

(b)  Punitive damages; and

(c)  Such other and further relief as this Court may deem just and equitable.

18

Case ID: 171101040

ELLIOTT GREENLEAF, P.C.   Respectfully submitted,

             /s/ *Frederick P. Santarelli*
             John M. Elliott (PA 04414)
             Frederick P. Santarelli (PA 53901)
             Gregory S. Voshell (PA 208566)
             Thomas B. Helbig, Jr. (PA 321470)
             Union Meeting Corporate Center
             925 Harvest Drive
             Blue Bell, PA  19422
DATED: April 25, 2018     (215) 977-1000

19

Case ID: 171101040

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing Complaint has been served on all Defendants via U.S. certified mail, return receipt required, at the Defendants listed registered agent, as set forth below:

Mednax, Inc.,
c/o CT Corporation System
1200 South Pine Island Road
Plantation, Fl 33324

Pediatrix Medical Group, Inc.
c/o CT Corporation System
1200 South Pine Island Road
Plantation, Fl 33324

Mednax Services, Inc.
c/o CT Corporation System
1200 South Pine Island Road
Plantation, Fl 33324

/s/ *Frederick P. Santarelli*

Date: April 25, 2018                                    FREDERICK P. SANTARELLI

Case ID: 171101040