**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **AETNA INC., AETNA HEALTH, INC., AETNA HEALTH MANAGEMENT LLC, AND AETNA LIFE INSURANCE COMPANY,**<br>**Plaintiffs,**<br><br>**v.**<br><br>**MEDNAX, INC., PEDIATRIX MEDICAL GROUP, INC. AND MEDNAX SERVICES, INC.,**<br>**Defendants.** | **CIVIL ACTION**<br><br>**NO. 18-2217** |

**MEMORANDUM OPINION**

This suit concerns allegedly inflated insurance claims for healthcare services rendered in neonatal intensive care units. Plaintiffs Aetna Inc., Aetna Health, Inc., Aetna Health Management LLC, and Aetna Life Insurance Company (collectively, "Plaintiffs" or "Aetna") bring claims of fraud, negligent misrepresentation, money had and received, unjust enrichment, and civil conspiracy against Defendants Mednax, Inc., Pediatrix Medical Group, Inc., and Mednax Servcies, Inc. (collectively, "Defendants" or "Mednax") in connection with this alleged scheme. Mednax now moves to dismiss all claims or, in the alternative, stay proceedings, or transfer this suit to Florida, where Mednax has filed separate but related claims. For the reasons that follow, Mednax's motion is denied.

## I. BACKGROUND

### A. Parties

Plaintiffs are affiliated health insurance companies. Aetna, Inc. is a Pennsylvania corporation with its principal place of business in Connecticut. The remaining Plaintiffs are out-of-state corporations and operate principal places of business outside of Pennsylvania.

Defendants are affiliated companies that provide management services to physician groups that specialize in neonatal intensive care. Mednax effectively controls the financial operations, by handling billing and collection. Mednax has contractual arrangements with physician groups in 38 states, including Pennsylvania. All Defendants are Florida organizations, with principal places of business in Florida.

**B. Facts**

Aetna, as a health insurance provider, is responsible for paying Mednax for services rendered to Aetna-insured patients. Since Mednax specializes in neonatal intensive care, those patients are primarily infants with significant health needs. To receive payment, Mednax must provide paperwork to Aetna, including specific forms that detail the costs of treatment. Those forms contain codes that indicate the health status of and care received by the patient. The codes are often listed in the first instance by the treating physician, but all forms pass through Mednax before being sent on to Aetna. Once a physician passes a claim on to Mednax, the physician typically does not see or approve the claim before it is submitted to Aetna.

Aetna alleges that Mednax has engaged in a scheme to "upcode" claims since at least 2009. As set out in the complaint, Mednax routinely listed codes that exaggerated the care needed and performed "by designating infants as being sicker than they truly were so that it appeared as if the infants required more intensive treatment than was truly the case." This process allowed Mednax to submit inflated bills to Aetna, so that Aetna would reimburse Mednax for more money than was warranted. Aetna asserts that it has relied on these false statements in making payments to Mednax.

As alleged by Aetna, this "upcoding" scheme permeated Mednax's operations. Mednax trained and required physicians to engage in "upcoding," and encouraged physicians to perform

unnecessary services to support higher billing rates. Further, Mednax would sometimes inflate the codes itself, above the level indicated by physicians, before submitting the forms to Aetna.

Aetna spoke to many "former employees of Mednax" that were aware of this "upcoding" scheme. Aetna does not specifically identify any of these employees, but Aetna does allege that "a physician in Pennsylvania" noticed the "upcoding" practice when he saw that Mednax had submitted a claim to Aetna regarding one of his patients for care that had not been rendered.

Aetna also performed a statistical regression analysis that "shows a pattern of overbilling by Mednax." Aetna analyzed "tens of thousands of claims," "factor[ed] out an extensive list of possible variables," and concluded that Mednax claims exceeded those of other highly-ranked physician groups by more than 18%. Further, Aetna asserts that physician groups that are acquired by Mednax reflect a significant uptick in their billing practices once Mednax takes over. Aetna also identified certain procedures that occur at higher rates in Mednax-affiliates practices. For example, Mednax physicians bill for 255% more hearing tests than other physicians, including multiple tests on the same infant.

Aetna also notes that Mednax has previously settled a False Claims Act suit with the federal government for submitting improperly inflated claims to government-operated health programs. That suit was initiated by a Mednax physician who observed improper billing practices, and was settled in 2006 without an admission of liability by Mednax.

**C. Procedure**

The procedural posture of this case is relatively complex, due to competing lawsuits in Florida and Texas. There are three suits: (1) the instant matter, brought by Aetna in Pennsylvania state court in April 2017; (2) a Florida suit brought by Mednax in April 2018, which remains pending in the Southern District of Florida; and (3) a third suit also brought by

Mednax in April 2018, which was filed in Texas but has been transferred to this District.

On November 10, 2017, Aetna commenced this action in the Philadelphia Court of Common Pleas, by filing a praecipe to issue a writ of summons on Mednax and dozens of its affiliates. On March 23, 2018, the state court held a conference and set a discovery schedule. The state court also entered an order directing Aetna to file and serve a complaint by April 25, 2018 or appear on that date and show cause why the case should not be dismissed.

On April 20, 2018, five days before Aetna was due to file its complaint in Pennsylvania state court, Mednax and several affiliated entities filed suit in Florida and Texas.[1] In both suits, Mednax brought nearly identical claims. In the main, both sought declarations that the statistical analysis employed by Aetna in the Pennsylvania suit is an improper means of asserting a fraud claim, and that Mednax had not committed any wrongdoing. Both suits also asserted that Aetna had breached its contractual obligations and defamed or disparaged Mednax by threatening litigation for fraudulent overbilling.

On April 25, 2018, Aetna filed its complaint in Pennsylvania state court, listing only the three captioned Mednax entities as Defendants. On May 25, 2018, Mednax removed to federal court.

In response to the Florida and Texas suits, Aetna moved to transfer those suits here to Pennsylvania. Aetna also moved to dismiss the Florida claims. Both the Florida and Texas courts examined the "first-filed rule" to decide whether Pennsylvania was indeed the proper forum—but reached opposite conclusions. On August 27, 2018, the Florida court denied Aetna's motion to transfer and held that the Florida suit was the first-filed. Nonetheless, the Florida court dismissed all of Mednax's claims, while granting Mednax an opportunity to refile the breach of

---

[1] *See* Complaint, *Pediatrix Med. Group of Florida, Inc. et al. v. Aetna, Inc. et al.*, No. 18-cv-60908, (S.D.Fl.), ECF No. 1; *see also* Notice of Removal, *Magella Med. Assocs. Billing Inc et al. v. Aetna Health Inc et al.*, Nos. 18-cv-01433 (N.D.Tx.), 18-cv-03710 (E.D.Pa.), ECF No. 1.

contract and defamation claims. By contrast, on August 29, 2018, the Texas court granted Aetna's motion and transferred its suit to the Eastern District of Pennsylvania, holding that the Pennsylvania suit was the first-filed.

Mednax now moves to dismiss all claims for want of personal jurisdiction, untimeliness, or failure to state a claim. Mednax also moves to transfer this action to the Southern District of Florida, or stay proceedings pending resolution of the Florida case.

## II. DISCUSSION

### A. Motion to Transfer or Stay

Mednax argues that this action should be stayed or transferred to the Southern District of Florida pursuant to the first-filed rule.

Under the first-filed rule, when duplicative suits arise in different federal courts, the court where the first action was filed has priority to decide the case. *See Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 929 (3d Cir. 1941) ("In all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it.") (quoting *Smith v. McIver*, 22 U.S. 532, 535 (1824) (Marshall, C.J.)). A court presented with a later-filed action has several options. It may: (1) decline to invoke the rule, and continue to hear the later-filed case; or (2) invoke the rule, and then "face the discretionary choice whether to stay the [later]-filed action, transfer it, dismiss it *without* prejudice, or dismiss it *with* prejudice, thereby permanently terminating the case." *Chavez v. Dole Food Co., Inc.*, 836 F.3d 205, 216-17 (3d Cir. 2016) (en banc) (emphasis in original). While "invocation of the rule will usually be the norm, not the exception," *E.E.O.C. v. Univ. of Pennsylvania*, 850 F.2d 969, 979 (3d Cir. 1988), *aff'd*, 493 U.S. 182 (1990), "district courts have always had discretion to retain jurisdiction given appropriate circumstances justifying departure from the first-filed rule," *id.* at 972. Accordingly, a court may decline to

invoke the rule, and continue to hear the later-filed case, where there are indications of "rare or extraordinary circumstances, inequitable conduct, bad faith, or forum shopping." *Id.* at 972.

Thus the initial, deceptively simple question is: which suit should be considered the first-filed? The basic timeline is straightforward: Aetna filed its praecipe for a writ of summons in Pennsylvania in November 2017; Mednax and its affiliates filed complaints in Texas and Florida on April 20, 2018; and Aetna filed its complaint in Pennsylvania on April 25, 2018. Accordingly, if the Pennsylvania praecipe sufficiently initiated an action, this suit is the first filed; if not, then either the Florida or Texas suit is the first-filed.

The praecipe for a writ of summons is a basic feature of Pennsylvania civil procedure. In Pennsylvania, "[a]n action may be commenced by filing . . . (1) a praecipe for a writ of summons, or (2) a complaint." Pa. R. Civ. P. No. 1007. Unlike a complaint, the praecipe does not include detailed allegations, and local rules and practice permit a significant lag between the filing of the praecipe and the complaint. *See Lamp v. Heyman*, 366 A.2d 882, 889 (Pa. 1976).

Federal courts considering whether the filing of a praecipe suffices under the first-filed rule have reached differing results—as illustrated here by the opposing rulings from the Florida and Texas courts. The Florida court held that a praecipe does not suffice under the first-filed rule, and thus Florida is the proper forum. The Texas court took the opposing view, holding that the praecipe *does* suffice, and transferred its suit here.[2]

Despite these varied holdings, the clarity of Pennsylvania law compels the conclusion

---

[2] Interestingly, federal courts sitting in Pennsylvania have often found the praecipe insufficient under the first-filed rule, while courts sitting outside Pennsylvania have reached the contrary conclusion. *Compare Frestrec Food Processing, Equip. Int'l, LLC v. Easy Tray, LLC*, 2005 WL 3116030, at *6 n.6 (W.D. Pa. Nov. 22, 2005) ("[Although] the Plaintiff in the above-captioned action filed its action first by a praecipe for writ of summons, such action does not warrant the application of the "first filed" rule."), *and N. Am. Commc'ns, Inc. v. Homeowners Loan Corp.*, 2007 WL 184776, at *3 (W.D. Pa. Jan. 22, 2007) (finding praecipe insufficient under first-filed rule), *with Med-Tec Iowa, Inc. v. Nomos Corp.*, 76 F. Supp.2d 962, 972 (N.D. Iowa 1999) (recognizing Pennsylvania suit commenced by praecipe as first-filed, where out of state complaint was filed before Pennsylvania complaint), *and Seithel v. Feldman & Pinto, P.A.*, 2011 WL 3924179, at *8 (D.S.C. Sept. 7, 2011) (same).

that a praecipe for a writ of summons sufficiently initiates an action under the first-filed rule. Rule 1007 states plainly that an action may be "commenced by filing . . . a praecipe." As the Pennsylvania Supreme Court has observed, this rule is "clear and unambiguous," and its "underlying purpose" is "to provide certainty as to the commencement of an action." *Lamp*, 366 A.2d at 886. Pennsylvania courts have consistently reaffirmed that the date of the filing of the praecipe governs as the date that an action was initiated (and the statute of limitations tolled), absent a showing of bad faith or a delay in service that prejudices the defendant. *See McCreesh v. City of Philadelphia*, 888 A.2d 664, 674 (Pa. 2005). Accordingly, state law leaves no room to doubt that an action is properly initiated upon the filing of the praecipe.

Thus Aetna's Pennsylvania suit is the first-filed, takes priority over the competing Florida action, and shall not be stayed.[3]

**B. Motion to Dismiss**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Twombly*, 550 U.S. at 556-57) (internal quotation marks omitted). The court must "construe the

---

[3] Even if the Pennsylvania suit were not the first-filed, the Court would exercise its discretion and decline to cede priority to the Florida case because of signs of forum shopping by Mednax. Mednax (1) filed the Texas and Florida actions just days before Aetna was due to file its Pennsylvania complaint; (2) brought claims for declaratory relief, which plainly sought to undermine Aetna's fraud claims in the instant action by declaring those claims invalid; and (3) may be attempting to circumvent an unfavorable Third Circuit ruling regarding pleading requirements for fraud, *compare Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 155 (3d Cir. 2014) (holding that plaintiff alleging fraudulent scheme need not plead representative sample of fraud), *with U.S. ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1312 (11th Cir. 2002) (requiring representative sample), *and U.S. ex rel. Bennett v. Boston Sci. Corp.*, 2011 WL 1231577, at *17 (S.D. Tex. Mar. 31, 2011) (requiring representative sample in most instances). These circumstances counsel against transfer to Florida. *See E.E.O.C.* 850 F.2d at 977; *see also see Honeywell Int'l Inc. v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am.*, 502 F. App'x 201, 206 (3d Cir. 2012) (declaratory relief actions are disfavored under first-filed rule).

complaint in the light most favorable to plaintiff." *Warren Gen. Hosp. v. Amgen, Inc.*, 643 F.3d 77, 84 (3d Cir. 2011).

**i. Personal Jurisdiction**

Mednax first argues that the complaint should be dismissed for lack of personal jurisdiction. Aetna counters that (1) at least one of the Mednax Defendants consented to general jurisdiction by registering to do business in Pennsylvania, that the others are subject to personal jurisdiction by having conspired with the registered entity, and (2) specific jurisdiction over all three Defendants is appropriate because at least a portion of the claims arise from conduct taking place within Pennsylvania. Because a plaintiff need not conclusively establish personal jurisdiction at the pleadings stage, the Court concludes that Aetna's allegations are sufficiently indicative of personal jurisdiction to preclude dismissal.

"Once challenged, the plaintiff bears the burden of establishing personal jurisdiction." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007). "Although the plaintiff bears the burden of demonstrating facts that support personal jurisdiction, courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is clearly frivolous." *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) (internal citations and quotation marks omitted).

Federal courts analyze whether personal jurisdiction is authorized by the law of the forum state, and whether such jurisdiction comports with due process. *See* Fed. R. Civ. P. 4(k)(1)(A); *see also Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 63 (3d Cir. 1984). Pennsylvania's personal jurisdiction requirements are set out at 42 Pa. Cons. Stat. § 5322(b), and "the reach of the Pennsylvania statute is coextensive with the due process clause of the United States Constitution." *Time Share Vacation Club*, 735 F.2d at 63. Accordingly, the sole question

is whether due process permits the exercise of personal jurisdiction over Mednax.

Under the due process clause, there are two types of personal jurisdiction: general jurisdiction and specific jurisdiction. *Bristol-Myers Squibb Co. v. Superior Court of Ca., San Francisco Cty.*, 137 S. Ct. 1773, 1779 (2017). "A court with general jurisdiction may hear any claim against that defendant, even if all the incidents underlying the claim occurred in a different State." *Id.* (quoting *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "Specific jurisdiction is very different. In order for a state court to exercise specific jurisdiction, 'the suit' must 'aris[e] out of or relat[e] to the defendant's contacts with the forum.'" *Id.* (alterations in original) (quoting *Daimler AG v. Bauman*, 134 S. Ct. 746, 749 (2014)). To determine whether personal jurisdiction exists, "a court must consider a variety of interests," including the plaintiff's interest in proceeding in the chosen forum, the interests of the forum state in adjudicating the action, and the burden on the defendant. *Id.* at 1780.

Mednax argues that there are no allegations in the complaint to support personal jurisdiction. However, at least one of the Defendants, Mednax Services, Inc., is registered to do business in Pennsylvania.[4] Further, in the complaint, Aetna alleges that (1) Mednax operates throughout the country, including in Pennsylvania, (2) Mednax holds contracts with Pennsylvania-based physician groups, (3) Mednax "carried on a continuous and systematic part of their general business" in Pennsylvania, (4) a physician in Pennsylvania observed that Mednax had submitted a claim for care that he knew was not warranted or performed on one of his patients, and (5) one Aetna plaintiff is a Pennsylvania corporation.

First, general jurisdiction is appropriate over any of the Defendants that are registered to do business in Pennsylvania. The Pennsylvania registration statute specifically provides that

[4] The parties disagree as to whether Pediatrix Medical Group, Inc. is also registered in Pennsylvania. Mednax, Inc. is not registered in Pennsylvania.

"qualification as a foreign corporation" will "enable the tribunals of this Commonwealth to exercise general personal jurisdiction" over the registrant. 42 Pa. C.S.A. § 5301. In light of this language, courts historically have held that "such registration by a foreign corporation carries with it consent to be sued in Pennsylvania courts." *Bane v. Netlink, Inc.*, 925 F.2d 637, 640 (3d Cir. 1991). Recent Supreme Court decisions, particularly *Daimler*, 571 U.S. 117, have significantly curtailed the scope of general jurisdiction over corporate defendants, prompting some courts to question the continuing validity of consent-by-registration as a means of establishing general jurisdiction. *See, e.g.*, *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 640-41 (2d Cir. 2016) (declining to reach the "difficult constitutional question about the validity of such consent after *Daimler*"). However, *Daimler* did not purport to address consent, and instead analyzed "when general jurisdiction [may be] appropriately exercised over a foreign corporation that has not consented to suit in the forum." *Daimler*, 571 U.S. at 129. Accordingly, as many Pennsylvania courts have held, *Daimler* did not overturn the longstanding rule that "a corporation that applies for and receives a certificate of authority to do business in Pennsylvania consents to the general jurisdiction of state and federal courts in Pennsylvania." *Webb-Benjamin, LLC v. Int'l Rug Grp., LLC*, 2018 Pa. Super. 187 (Pa. Super. 2018); *see also Bors v. Johnson & Johnson*, 208 F. Supp.3d 648, 655 (E.D. Pa. 2016) (same).

Second, the Complaints' allegations provide authority for the Court to exercise specific jurisdiction over all the Defendants, regardless of whether they are registered in Pennsylvania. "Jurisdiction is proper . . . where the contacts proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985). Here, where Aetna has alleged with reasonable particularity the existence of contractual relationships between Defendants and Pennsylvania

physician groups, a statistical analysis showing a general practice of upcoding throughout the Mednax system and the occurrence of at least one specific instance of "upcoding" related to the scheme within Pennsylvania, as well as harm suffered by Aetna in Pennsylvania as a result, jurisdiction is proper.

**ii. Statute of Limitations**

Mednax next argues that Aetna's claims must be dismissed as time-barred by the statute of limitations. Aetna counters that its claims are timely under the continuing violations doctrine and the discovery rule. This argument must be evaluated in the light of the general rule that, "a complaint need not anticipate or overcome affirmative defenses," such as a statute of limitations, *Schmidt v. Skolas*, 770 F.3d 241, 248 (3d Cir. 2014), and, accordingly, "[a] complaint is subject to dismissal for failure to state a claim on statute of limitations grounds only when the statute of limitations defense is apparent on the face of the complaint." *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017).

In Pennsylvania,[5] Plaintiff's claims are governed by a two year statute of limitations. 42 Pa. C.S.A. § 5524(7) (providing two year limitations period for actions "founded on negligent, intentional, or otherwise tortious conduct . . . including deceit or fraud"); *see also Kingston Coal Co. v. Felton Min. Co., Inc.*, 690 A.2d 284, 287 n.1 (Pa. Super. 1997) ("It is well-settled that the statute of limitations for [civil] conspiracy is the same as that for the underlying action which forms the basis of the conspiracy."). "[A] cause of action accrues when the plaintiff could have first maintained the action to a successful conclusion," *Fine v. Checcio*, 870 A.2d 850, 857 (Pa. 2005), though a fraud claim does not accrue until "the fraud has been discovered by the exercise of due diligence." *J.J. DeLuca Co. v. Toll Naval Assocs.*, 56 A.3d 402, 412 (Pa. Super. 2012)

[5] The parties both have applied Pennsylvania law in their briefing, but each has noted that the law of other states may in fact govern this dispute. For purposes of this motion, the Court similarly assumes that Pennsylvania law applies.

(quoting *Rothman v. Fillette*, 469 A.2d 543, 546 n.3 (Pa. 1983)). However, "[t]here are exceptions that act to toll the running of a statute of limitations." *Fine*, 870 A.2d at 858. "The continuing violations doctrine is an equitable exception to the timely filing requirement." *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001) (internal quotation marks omitted). Under the doctrine, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred." *Id.* (internal quotation marks omitted). Similarly, the discovery rule "exclude[s] from the running of the statute of limitations that period of time during which a party who has not suffered an immediately ascertainable injury is reasonably unaware he has been injured." *Fine*, 870 A.2d at 858.

As alleged, the "upcoding" scheme began in 2009 and continued through at least September 2016. This suit was initiated in November 2017—accordingly, any wrongful acts that took place in 2016 fall within the two year limitations period. Nevertheless, because Aetna has alleged an ongoing scheme that persisting into the limitations period, it is not appropriate to resolve at the pleadings stage whether the continuing violations doctrine allows Aetna to maintain suit for actions that occurred prior to the limitations period. Further, because Mednax allegedly concealed the falsity of its claims, it is possible that the discovery rule applies as well. In short, it is not "apparent on the face of the complaint" that the statute of limitations bars Aetna's claims. *Wisniewski*, 857 F.3d at 157. Accordingly, Aetna's claims shall not be dismissed as untimely.

**iii. Rule 9(b) Pleading Requirements for Fraud Claims**

Mednax next asserts that Aetna has failed to adequately set out the facts of the alleged

fraud, as required by Federal Rule of Civil Procedure 9(b). The main thrust of Mednax's argument is that Aetna's allegations—that (unnamed) Mednax physicians described the "upcoding" fraud, and that its statistical analysis indicated an "upcoding" practice—are insufficient because Aetna does not provide a "representative sample" of any particular claim that was "upcoded" by Mednax. Aetna counters that the Third Circuit does not require "representative samples" in fraud pleadings, and that its allegations suffice. Though Aetna's complaint would certainly benefit from additional detail, it has sufficiently stated its claims under Rule 9(b).

Federal Rule of Civil Procedure 9(b) requires that a party "state with particularity the circumstances constituting fraud." "Plaintiffs may satisfy [Rule 9(b)'s] requirement by pleading the date, place or time of the fraud, or through alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir. 2004), *abrogated on other grounds by Twombly*, 550 U.S. at 557)) (internal quotation marks omitted). Accordingly, a plaintiff may satisfy Rule 9(b)'s pleading requirement by providing details of a representative sample of the alleged fraud, or by "injecting precision" into its allegations through "alternative means." *Id.* In *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 155-56 (3d Cir. 2014), the Third Circuit squarely considered and rejected the contention that a plaintiff alleging a large fraudulent scheme must provide a representative sample in order to satisfy Rule 9(b).

Specifically, in *Foglia*, the plaintiff alleged that a healthcare company had violated the False Claims Act ("FCA") by submitting inflated claims to Medicare. The plaintiff detailed the practices that the healthcare company employed to commit the fraud—namely, by billing as though it used full vials of a particular medicine, even though the company only used a portion

of the vial. *Id.* at 157-58. However, the allegations did not include any specific example of a particular falsified claim. The circuit court reasoned that, under Rule 9(b), such a "representative sample" was not necessary to state a claim because "requiring this sort of detail at the pleading stage would be one small step shy of requiring production of actual documentation with the complaint, a level of proof not demanded to win at trial and *significantly more than any federal pleading rule contemplates*." *Id.* at 156 (emphasis added). The court also found that allegations of "representative samples" were not required by the FCA, because the text of the statute did not require such specificity, and the purpose of the FCA would be undercut by such a standard. *Id.* Accordingly, the court held that the complaint "provided sufficient facts to meet the requirements under Rule 9(b)." *Id.* at 158.

Applying *Foglia* here, it is clear that Aetna's allegations are sufficient under Rule 9(b). Here as in *Foglia*, Plaintiffs describe a large healthcare billing fraud, but omit allegations of a specific, fraudulent claim. The descriptions of the scheme's operations are at least as specific here as there: just as the *Foglia* plaintiff outlined the means of overbilling for partially used vials of medicine, Aetna here sets out the forms that Mednax is required to submit, and the specific types of "upcoding" that allegedly occur—for example, listing an infant as requiring "critical care" rather than "general hospital care." Aetna also "inject[s] precision and some measure of substantiation into their allegations of fraud" through its statistical analysis, the results of which are detailed in the complaint. *Lum*, 361 F.3d at 224. Though the "hypothesis" of fraudulent activity put forward by Aetna "could be challenged"—and, indeed, ultimately shown to be unfounded—the allegations setting forth the tortious practices "certainly suffice[] to give [the defendant] notice of the charges against it, as is required by Rule 9(b)." *Id.* at 158. Accordingly, here as in *Foglia,* such pleadings are sufficient.

Mednax's argument that *Foglia* is "strictly limited" to FCA claims is unavailing. To be sure, the *Foglia* court analyzed Rule 9(b) in the context of an FCA claim. But there is no basis to conclude that *Foglia* is as narrow a decision as Mednax asserts. The ruling was grounded in Rule 9(b)'s requirements as applied to the *type of factual pattern raised* by an FCA claim: the decision clearly and repeatedly found that the allegations regarding a large fraudulent billing scheme were sufficient "to meet the requirements under Rule 9(b)." *Id.* at 158. Similarly, Aetna's allegations satisfy the requirements of Rule 9(b).

**iv. Justifiable Reliance**

Mednax asserts that "[t]he Complaint should be dismissed" in toto for want of adequate allegations of justifiable reliance because Aetna (1) included only conclusory allegations that it justifiably relied on the "upcoded" forms, and (2) bears an increased burden in pleading justifiable reliance, which it has not met, because Aetna is a sophisticated entity with access to documents that might have revealed the alleged fraud. Aetna counters that its allegations are not conclusory, and that justifiable reliance is a question of fact properly reserved for the jury. As a preliminary matter, several of Aetna's claims do not require justifiable reliance. *See iRecycleNow.com v. Starr Indem. & Liab. Co.*, 674 F. App'x 161, 162 (3d Cir. 2017) (listing elements of unjust enrichment, which do not include justifiable reliance); *Springfield Twp. v. Mellon PSFS Bank*, 889 A.2d 1184, 1186 n.1 (Pa. 2005) (same - money had and received); *Tegg Corp. v. Beckstrom Elec. Co.*, 650 F. Supp.2d 413, 425-26 (W.D. Pa. 2008) (same - civil conspiracy). Accordingly, even if allegations of justifiable reliance were wanting, there would be no basis to dismiss the complaint outright.

Justifiable reliance is, however, "an element of both fraudulent representation and negligent misrepresentation causes of action in Pennsylvania." *Tran v. Metro. Life Ins. Co.*, 408

F.3d 130, 135 (3d Cir. 2005). "[J]ustifiable reliance is typically a question of fact for the fact-finder to decide, and requires a consideration of the parties, their relationship, and the circumstances surrounding their transaction." *Toy v. Metro. Life Ins. Co.*, 928 A.2d 186, 208 (Pa. 2007).

Aetna alleges that it processed payments by reference to forms submitted by Mednax, and that Mednax made false statements in those forms. Because the law generally provides that "[t]he recipient of a fraudulent misrepresentation of fact is justified in relying upon its truth," Restatement (Second) of Torts § 540 (1977), these allegations are sufficient to plead justifiable reliance. It may be shown, as Mednax asserts, that Aetna had access to certain documents regarding Mednax's claims, and that Aetna often investigates claims or denies coverage in such a way as render its reliance on Mednax's forms unjustifiable. But that question turns on issues of fact—such as Aetna's access to documentation underlying each claim—and is not appropriately resolved on a motion to dismiss. Accordingly, Aetna has adequately pled justifiable reliance.

For the reasons given, Mednax's motion to dismiss or alternatively stay or transfer is denied.

An appropriate order follows.

**BY THE COURT:**

**/s/Wendy Beetlestone, J.**

**WENDY BEETLESTONE, J.**