# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AETNA INC., ET AL | : | CIVIL ACTION |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| MEDNAX, INC. et al | : | NO. 18-cv-02217-WB |
| Defendants. | : | |

## MEMORANDUM AND ORDER CONCERNING DOC. NOS. 56 & 64

### I. Doc. No. 56: Plaintiffs' motion to quash the subpoena to Dr. Makuch.

The plaintiffs (referred to collectively as "Aetna") have filed a motion to suppress or quash a subpoena directed to their expert witness, Dr. Makuch. Doc. No. 56. I have reviewed the parties' submissions. I have also reviewed *in camera* the engagement letter concerning Dr. Makuch's services. Dr. Makuch supplied a regression analysis of defendants' billing practices. The primary motivating purpose behind the creation of this analysis was to aid in negotiations and potential litigation with defendants. This means that Dr. Makuch's analysis is protected by the attorney work-product doctrine. *See United States v. Rockwell Intern.*, 897 F.2d 1255, 1266 (3d Cir. 1990) (file was maintained to aid in future negotiations and potential litigation with IRS). I find that Aetna has produced significant discovery concerning the regression analysis performed by Dr. Makuch. That regression analysis formed a basis for the plaintiffs' complaint, and is therefore discoverable, as discussed below. While some discovery into the data used to prepare the regression analysis is appropriate, discovery will be conducted between the parties, not by subpoena directed to Dr. Makuch. I will order that the subpoena be quashed.

## II. Doc. No. 64: Defendants' cross-motion to compel production of discovery.

The defendants (collectively referred to as "Mednax") filed a cross-motion to compel discovery pursuant to Fed. R. Civ. Pro. 37(a). Doc. No. 64. They seek information concerning Dr. Makuch's regression analysis, performed for Aetna, which forms a basis for the complaint. I have reviewed the parties' submissions, and I will grant the cross-motion in part, and deny the rest.

### A. Documents and information previously produced will be identified by Aetna.

Aetna objects that it has provided much of the information to Mednax concerning Dr. Makuch's study. Doc. No. 66 at 3-4. Additionally, Aetna objects that some of the information sought in Mednax's cross-motion has never been requested before the time of the cross-motion. Before and at the time of the meet and confer ordered below, Aetna may simply identify compliance with a particular request by supplying the specific Bates stamp number(s) where the information can be found.

### B. Dr. Makuch's analysis is subject to the attorney work-product doctrine.

I have reviewed *in camera* the retainer agreement signed by Dr. Makuch, as well as the other relevant circumstances. I find that Dr. Makuch was retained and did his analysis in "the course of preparation for possible litigation." *Haines v. Liggett Group Inc.*, 975 F.2d 81, 94 (3d Cir. 1992) (quoting *Hickman v. Taylor,* 329 U.S. 495, 505 (1947)); *see United States v. Rockwell Intern.*, 897 F.2d 1255, 1266 (3d Cir. 1990) (a file maintained to aide in future negotiations and potential litigation was protected work-product). At the time Dr. Makuch was retained there may well have been insufficient proof to justify filing a complaint alleging fraud. That does not mean his analysis cannot

be subject to the attorney work-product doctrine. This was not a routine, in-house review of records. A party can anticipate possible litigation without having a sufficient basis, then and there, to satisfy the pleading standards of Fed. R. Civ. Pro. 8, 9 and 11.

Obtaining the required factual basis to file a complaint alleging fraud may require a complex and time-consuming investigation that involves attorneys, their work, and the work of experts hired by the attorneys to assist them in the task. A complex, long-term business relationship is not like an automobile accident. Fraudulent billing may not be obvious. If it were, it likely would not be fraud, which inherently relies upon concealment and deception to succeed. Unlike an automobile accident, there may be substantial doubt at the outset of a fraud investigation about whether a fraud occurred, or whether a loss was caused by fraud. Notwithstanding the suspicions or facts that triggered the investigation, a party may conclude, after conducting such an investigation, that no fraud occurred, or that litigation alleging fraud is not warranted. The fact that litigation is not initiated, in that instance, does not mean the investigative work was not in anticipation of litigation.

Certainly where, as here, a complaint is filed, there should be no penalty attached to pre-suit investigation of whether there is an adequate factual basis for alleging fraud. An alternative rule would tend to encourage parties to file suit on mere suspicion, rather than proper investigation. That is not a tendency that should be encouraged. The rule Mednax suggests would force a choice between two unacceptable alternatives: violating an attorney's professional obligation to diligently represent a client by ensuring that "factual allegations have evidentiary support" (Fed. R. Civ. Pro. 11(b)(3)) or surrendering work-product protection. I find that Dr. Makuch's regression analysis was

prepared in anticipation of possible litigation and is subject to protection under the attorney work-product doctrine. That, however, is not the end of the matter.

### C. The "at issue" exception applies and requires production of some, but not all, of the information sought by Mednax.

Plaintiffs have used Dr. Makuch's regression analysis as a basis for filing their complaint, and therefore have put the regression analysis at issue. There is a compelling need for discovery, because the regression analysis and its data are within Aetna's sole possession and are the basis of Aetna's claims against Mednax. *In re Sunrise Securities Litigation*, 130 F.R.D. 560, 568–69 (E.D.Pa. 1989). Nevertheless, plaintiffs have not waived all work-product protection, only the protection that extends to the information put "at issue." *Financial Guaranty Insurance Company v. Putnam Advisory Company, LLC*, 314 F.R.D. 85, 90-91 (S.D.N.Y. 2016). Plaintiffs have conceded that the regression analysis itself must be produced, and allege they have produced it, though Mednax contends the production has been deficient in some respects. The defendants want additional information that ties the regression analysis clearly to Aetna's underlying data, so that the accuracy of the analysis can be tested against its premises.

The scope of the "at issue" waiver is committed to the sound discretion of the trial judge. *Id.* I find that the scope of the waiver is limited to needs that are "compelling," that is, information that bears directly on the reliability of the regression analysis and is within the exclusive control of the plaintiffs. *See In re Sunrise Securities Litigation*, 130 F.R.D. at 568–69; *Bird v. Penn Central Co.*, 61 F.R.D. 43, 47 (E.D.Pa. 1973) (excluding information from waiver where it did not bear directly on the legal theory put at issue by the pleadings). I have applied this standard to the information sought by Mednax and have granted discovery requests where I found that the information bears directly on the

reliability of the regression analysis. Where the information does not bear directly, I have denied discovery.

## ORDER

Accordingly, it is on this 29th day of October, 2019 ORDERED, that Mednax's motion to compel (Doc. No. 64) is **GRANTED**, in part. Within 15 days of the date of this Order the parties' counsel will meet and confer to determine which of the items listed below have been produced. To the extent not already produced, within 30 days of the date of this Order Aetna will produce the following information:

1. Aetna's original data from claim forms from which Aetna created the raw data files used by Dr. Makuch to perform the regression analysis referred to in the complaint. This data will include (but not be limited to)
    a. Each patient name;
    b. Each patient identification number as listed in Box 26 of the CMS 1500 Claim Form;
    c. Each insurance policy subscriber name;
    d. Each insurance policy subscriber number;
    e. Each claim number;
    f. Each patient's date of birth;
    g. Each date of service;
    h. Each CPT code or codes for the respective dates of service;
    i. Each provider name, with Taxpayer Identification Number;
    j. The complete regression analysis referenced by Aetna and relied upon by Aetna in its complaint;

k. All provider fee schedules used by Aetna in connection with the regression analysis.
2. The dates upon which Aetna created the raw data files from the internal system or systems.
3. The methodology used to create a) the raw data files used by Dr. Makuch, b) the regression analysis, and c) its results.

**IT IS FURTHER ORDERED**, as follows:

4. With respect to information to be supplied in conformance with this order, Aetna will comply with the court's previously entered ESI order. With respect to information already supplied, Aetna will comply with the court's ESI order if it has not already done so.
5. Aetna's motion to quash the subpoena to Dr. Makuch (Doc. No. 56) is **GRANTED,** and the subpoena is **QUASHED**. Mednax will communicate to Dr. Makuch that the subpoena has been quashed and is withdrawn.
6. Mednax's cross-motion to compel (Doc. No. 64) is otherwise **DENIED**. In particular, communications by and between counsel for Aetna and Dr. Makuch will not be produced.

BY THE COURT:

_s/Richard A. Lloret_  
RICHARD A. LLORET  
U.S. MAGISTRATE JUDGE