# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| AETNA INC., ET AL | : | CIVIL ACTION |
| --- | --- | --- |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| MEDNAX, INC. et al | : | NO.  18-cv-02217-WB |
| Defendants. | : | |

## MEMORANDUM CONCERNING DOC. NO. 101

Plaintiffs (collectively, "Aetna") have filed a motion for a protective order seeking to quash subpoenas issued to various witnesses, among them counsel for Aetna and consultants engaged by counsel. Doc. No. 101 ("Pl. Mem."). Defendants (collectively, "Mednax") have responded and filed a cross-motion to compel responses to their subpoenas. Doc. No. 110 ("Def. Opp."). Aetna has replied. Doc. No. 115 ("Pl. Reply"). This Memorandum addresses the motion and cross-motion.

### I. The subpoenas

Mednax has issued subpoenas to 12 people or entities, copies of which are attached to Aetna's motion. Doc. No. 101-2 to 101-13. Aetna has included a table describing the people and entities subpoenaed, at page 3 of their memorandum, which I reproduce here for convenience. The exhibit numbers in the left-hand column of the table are references to exhibits attached to Aetna's motion. *Id.*

| Subpoena Exhibit # | Category | Name | Role |
| --- | --- | --- | --- |
| 2[3] | **Counsel and Support Staff** | Howard Pierce, Esq. | Counsel of Record for Aetna |
| 3 | | Stephanie Gitlin, Esq. | Associate Attorney employed by Counsel of Record for Aetna |

| 4 |  | Caroline Johnson | Office Manager and Litigation Analyst for Counsel of Record for Aetna |
| 5 |  | Pierce, LLC | Law Firm of Counsel of Record for Aetna |
| 6 |  | Seiger Gfeller Laurie, LLP | Former Law Firm of Counsel of Record for Aetna |
| 7 | **Non-testifying expert consultants** | Daniel Sandoval | Non-testifying Expert engaged by Counsel of Record for Aetna |
| 8 |  | John Bowblis | Non-testifying expert engaged by Counsel of Record for Aetna |
| 9 |  | DPR Integrated Solutions | Former employer of Non-testifying Expert engaged by Counsel of Record for Aetna |
| 10 |  | Innovative Computer Systems | Former employer of Non-testifying Expert engaged by Counsel of Record for Aetna |
| 11 | **Investigators** | Indago Group | Employer of Investigators Retained by Counsel of Record For Aetna |
| 12 |  | Diane Schulman | Investigators Retained by Counsel of Record For Aetna |
| 13 |  | Elaine Pappas-Graber | Investigators Retained by Counsel of Record For Aetna |

Each subpoena includes document requests. The dispute between the parties concerns both the prospect of deposition and the document requests made by the subpoenas.

When the non-parties were retained by Aetna becomes important during the discussion of the protective order sought by Aetna, because there was some investigation of alleged Mednax over-billing before Aetna retained Mr. Pierce as its attorney in connection with the Mednax matter. Mr. Howard Pierce, an attorney, was retained by Aetna in connection with its potential claims against Mednax on May 30, 2012. Doc. No. 115-1 at 16 (ECF pagination) (Aetna's answers to Mednax's

interrogatories). In turn, Mr. Pierce retained Daniel Sandoval, Ph.D., in February of 2013, as an employee of Innovative Computer Services, then as an independent contractor (August 1, 2015), then as an independent contractor with DPR Integrated Solutions (January 2016). *Id.* John Bowblis was engaged for the same purpose on November 4, 2013. *Id.* Indago Group was engaged by Mr. Pierce at the time of his retention, May 30, 2012. *Id.* Ms. Stephanie Gitlin is an attorney who works at Pierce LLC and who supported Mr. Pierce in his representation of Aetna. *Id.* at 24 (letter of Howard Pierce dated June 5, 2019). Ms. Caroline Johnson is an office manager at Mr. Pierce's firm. *Id.* Diane Schulman owns Indago Group, Inc. and was retained by Howard Pierce on May 30, 2012, along with Elaine Pappas-Graber, a contractor for Indago Group. *Id.* at 29 (letter of Kathleen Dion, attorney for Ms. Schulman, dated June 5, 2019); Pl. Mem. at 4.

## II. The parties' contentions

Aetna claims the subpoenas seek information protected by attorney-client privilege and the attorney work product doctrine. Pl. Mem. at 7-10 (privilege), 10-17 (work product). Aetna argues that Mednax is not entitled to have discovery of non-testifying experts under Fed. R. Civ. P. 26(b)(4)(D). *Id.* at 17. Aetna also argues that some of the information sought by Mednax is irrelevant and beyond the scope of discovery. *Id.* at 19. Finally, Aetna contends that Mednax should be sanctioned because of the alleged impropriety of its subpoenas. *Id.* at 20-22 (citing Fed. R. Civ. P. 45(d)(1)).

Mednax contends that discovery sought by the subpoenas is relevant and not subject to protection under the attorney-client privilege or the attorney work product doctrine. Def. Mem. at 21-29. Mednax argues that Aetna, not Mednax, should be sanctioned for "obstructing discovery." *Id.* at 29 (citing Fed. R. Civ. P. 37(a)(5)(A)).

3

### III. Discussion

#### A. Legal standards.

##### 1. The attorney-client privilege.

The attorney-client privilege protects "'(1) a communication (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client.'" *In re Chevron Corp.*, 650 F.3d 276, 289 (3d Cir. 2011) (quoting *In re Teleglobe Commc'ns Corp.,* 493 F.3d 345, 359 (3d Cir. 2007) (quoting RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 68 (2000))). The privilege is construed narrowly, since its operation prevents disclosure even of relevant facts. *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1423–24 (3d Cir. 1991). Voluntary disclosure of information to a third party waives the privilege, because it is inconsistent with the elements defining the privilege. *Id.*

##### 2. The attorney work product doctrine.

The attorney work product doctrine ordinarily prevents the disclosure of documents and other tangible things "prepared in anticipation of litigation or trial." Fed. R. Civ. P. 26(b)(3); *see also In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 661 (3d Cir. 2003). The protection may be overcome if the information is otherwise discoverable and the party seeking disclosure shows "substantial need" and the inability to get equivalent information by other means without undue hardship. Fed. R. Civ. P. 26(b)(3)(A)(i)-(ii). Even if information is ordered disclosed under Rule 26(b)(3)(A)(i)-(ii), "mental impressions, conclusions, opinions, or legal theories" – sometimes called core attorney work product - should not be disclosed. Fed. R. Civ. P. 26(b)(3)(B).

### 3. Discovery from non-testifying experts.

A party may not ordinarily compel an expert retained by a party in anticipation of litigation, or for trial preparation, who is not expected to be called by the retaining party as a witness at trial, to disclose facts or opinions. Fed. R. Civ. P. 26(b)(4)(D). The application of the rule turns on the designation of the expert as non-testifying. *See R.C. Olmstead, Inc., v. CU Interface, LLC*, 606 F.3d 262, 272 (6th Cir. 2010) (witness previously identified as a testifying expert could not be deposed after he had been reclassified as a non-testifying expert).

A party may get facts and opinions from such an expert with a showing of "exceptional circumstances under which it is impracticable" to get the same facts or opinions elsewhere. Fed. R. Civ. P. 26(b)(4)(D)(ii). For instance, an expert may have had the exclusive opportunity to observe or test a phenomenon, such as a natural or man-made disaster, that has since disappeared. *Comm'r of Dep't of Planning and Nat. Res. v. Century Aluminum Co.*, 279 F.R.D. 317, 319 (D.V.I. 2012).

A different circumstance arises when a person designated as a non-testifying expert acquired information in the ordinary course of business, before he or she was retained as an expert in anticipation of litigation. In that case the bar under Fed. R. Civ. P. 26(b)(4)(D) does not apply to the information obtained before retention as an expert. *Indus. Mar. Carriers, Inc. v. PT (Persero) Inka*, 179 F.R.D. 153, 155 (E.D. Pa. 1998).

### B. Which court should hear this dispute and what type of relief can be granted?

Aetna argues that Mednax's cross-motion to compel is lodged in the wrong court, under Fed. R. Civ. P. 45. Pl. Reply. at 11. Rule 45(d)(2)(B)(i) permits the "serving party" to "move the court for the district where compliance is required for an order compelling

5

production[.]" Most of the witnesses reside in Connecticut. Mr. Bowblis resides in Ohio, while Innovative Computer Services is (apparently) located in Georgia, Ms. Schulman resides in Massachusetts, and Ms. Pappas-Graber resides in Florida.

Because Mednax's cross-motion to compel non-parties in other states to produce documents or appear for depositions is subject to Rule 45, the motion is properly brought in the "district where compliance is required," at least in the first instance. Fed. R. Civ. P. 45(d)(2)(B)(i). That proceeding may be transferred to this Court with the consent of the person subpoenaed, or if the "district where compliance is required" finds exceptional circumstances. Fed. R. Civ. P. 45(f). Mednax's cross-motion to compel would sensibly consolidate disposition of all related motions in one court, but special care must be taken with the rights and interests of non-parties, under Rule 45. The rule balances the need for discovery against concerns over personal jurisdiction and the unfairness to a non-party of requiring the non-party to travel to a far-off location to give testimony. By contrast, courts have found that the 100-mile limitation in Rule 45 does not apply to document requests that do not require a party to travel to testify. *See, e.g.*, *Crescom Bank v. Terry*, 269 F. Supp. 3d 708, 712-13 (D.S.C. 2017) (collecting and discussing cases).

I will direct the parties to meet and confer, after consideration of the dispositions made in this Memorandum and the accompanying Order, about Mednax's cross-motion to compel, to see if further litigation in other jurisdictions can be avoided. I will also direct that Mednax's counsel meet and confer with counsel for the non-parties to attempt to avoid costly litigation in multiple courts.

With respect to Aetna's motion, its caption seeks a "protective order," which is a request for relief under Fed. R. Civ. P. 26(c). Rule 26(c)(1) permits a "party or any

person from whom discovery is sought" to move for a protective order "in the court where the action is pending – or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken." The motion asks that Mednax's subpoenas be "quashed," which is relief provided under Rule 45, but not under Rule 26(c)(1). Pl. Mem. at 22. Rule 26(c)(1) does not list the quashing of a subpoena as one of its remedies but does permit the court to enter an order "forbidding the disclosure or discovery," among other remedies. *Id.* at 26(c)(1)(A)-(H). Aetna's motion for a protective order is properly filed in this district. I will rule on Aetna's motion for protective order but will not quash Mednax's subpoenas, as that is not relief afforded under Rule 26(c)(1).

### C. Aetna has no standing to assert privilege and work product claims that are not its own.

As a general matter, Aetna can seek a protective order limiting discovery under a third-party subpoena based on its own claims of attorney-client privilege and attorney work product, but not those of non-parties. *See Green v. Cosby*, 216 F. Supp. 3d 560, 563–64 (E.D. Pa. 2016); *Thomas v. Marina Assocs.*, 202 F.R.D. 433, 434 (E.D. Pa. 2001). To the extent Aetna asserts attorney-client privilege or work product claims arising before it retained Mr. Pierce in anticipation of litigation, Aetna has no standing to raise those issues. That is not to say that such claims are meritless, in the abstract, only that Aetna is not the one to assert them. Aetna cites cases for the proposition that work product developed in one case may be protected in connection with another litigation. Pl. Mem. at 9. That is true, but Aetna cites to no case approving the assertion of work product protection by one client for work product created in connection with the representation of *an entirely different client*.

7

The rule is sensible, if applied in the context in which it was adopted. "'The work product immunity is not lost, however, if the document was not prepared in anticipation of the present litigation so long as it was prepared in anticipation of some litigation *by a party* to the present litigation.'" *Serrano v. Chesapeake Appalachia, LLC*, 298 F.R.D. 271, 277 (W.D. Pa. 2014) (emphasis added by me) (quoting *Lumber v. PPG Indus., Inc.*, 168 F.R.D. 641, 645 (D. Minn. 1996)). "Moreover, even if documents were prepared for a different case, work product protection may apply as long as the cases 'are closely related in parties or subject matter.'" *Id.* (quoting *La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*, 253 F.R.D. 300, 309 (D.N.J. 2008)).

The four cases cited by Aetna (Pl. Mem. at 9) – *In Re Grand Jury Proceedings*, 604 F.2d 798, 803 (3d Cir. 1979), *Serrano*, *Sealed Air*, and *Maertin v. Armstrong World Indus., Inc.*, 172 F.R.D. 143, 150 (D.N.J. 1997) – all involved assertions of the work product protection by the party on whose behalf the work product was created, or a close successor in interest, although the actual litigation counter-party turned out to be different from the entity whose litigation threat stimulated the creation of the work product in the first place.[1] That is materially different than the circumstance Aetna faces here. Aetna was not a target of expected litigation who wound up as a defendant, over the same facts, with a different entity than the one whose litigation threat stimulated creation of the work product. Nor has Aetna alleged it is a successor in interest to the

---

[1] In *In Re Grand Jury Proceedings,* 604 F.2d at 803, the target of a grand jury subpoena resisted turning over its own work product, created before the grand jury investigation in anticipation of EPA administrative proceedings. *Sealed Air*, 253 F.R.D. at 309 involved the successor corporation to an asbestos manufacturer who resisted producing work product prepared for the original manufacturer in anticipation of asbestos litigation. In *Serrano*, 298 F.R.D. at 275, a non-litigant employer of a worker who died in a work-related accident resisted a subpoena from the worker's estate to produce the employer's work product for use in litigation between the worker's estate and another entity. *Maertin,* 172 F.R.D. at 150, involved a ceiling tile manufacturer who resisted individual plaintiffs' subpoenas for its investigative files that had been prepared in anticipation of action by a state administrative agency involving the same claims of exposure to contaminants.

entities for whom Mr. Pierce created work product in anticipation of litigation with Mednax.

Work product protection is not freely transferrable, via an attorney, from one unrelated client to another. Mr. Pierce may have developed information on behalf of another client in anticipation of that client's affirmative litigation against Mednax, and he may not have, but he will have to prove that claim, not Aetna. *See In re Student Fin. Corp.*, No. 02-11620, 2006 WL 3484387, at *10 (E.D. Pa. Nov. 29, 2006) (permitting assertion of the work product doctrine by non-parties from whom discovery is sought through subpoena). In the record as it currently exists, there is no adequate showing that a privilege or work product protection, assertable by Aetna, attaches to information Mr. Pierce acquired before being retained by Aetna. Therefore, I will deny Aetna's request for a protective order prohibiting inquiry into information acquired by Mr. Pierce (or Ms. Gitlin or Ms. Johnson) before Mr. Pierce was retained by Aetna on May 30, 2012.

For similar reasons, Aetna cannot assert work product or attorney-client protection for documents or information relating to Mednax obtained by investigators or experts before they were retained by Aetna's counsel. *See Indus. Mar. Carriers, Inc.*, 179 F.R.D. at 155. That is not to say that these individuals, or the clients they served, may not have privilege or other grounds for resisting Mednax's requests, only that Aetna is not the one to argue them. Thus, I will deny Aetna's motion for a protective order as to information sought from

- Daniel Sandoval, Ph.D., before February of 2013;
- Innovative Computer Services, before February 2013 and after August 1, 2015;
- DPR Integrated Solutions, before January 2016;

9

- John Bowblis, before November 4, 2013;

- Indago Group, before May 30, 2012;

- Diane Schulman, before May 30, 2012;

- Elaine Pappas-Graber, before May 30, 2012.

  **D. Mednax's requests do not seek irrelevant information.**

Aetna argues that three categories of information sought by Mednax are "patently irrelevant" because they did not serve as a "basis for Aetna's claims in this matter." Pl. Mem. at 19. As a result, Aetna continues, inquiry into these categories should be forbidden. *Id.*

Evidence is defined in Fed. R. Evid. 401 as relevant if it has any tendency to make a fact of consequence to the determination of the action more or less likely. Fed. R. Civ. P. 26(b)(1) allows discovery of any non-privileged matter that is "relevant" to "any party's claim or defense and proportional to the needs of the case." Aetna does not make a proportionality argument, but a simple relevance argument.

The three categories of information mentioned by Aetna are 1) documents relating to a "report generated by Indago Group for the U.S. Attorney's office" (in Maryland); 2) documents relating to an analysis generated by Indago Group and referenced in interview notes; 3) documents relating to investigations and retentions predating Aetna's engagement of counsel, experts, and consultants. *Id.*

Whether the information served as a basis for Aetna's claims is not the only possible basis for relevance. Mednax makes creditable arguments that the information it seeks is relevant to its defenses. For instance, the first category - investigative findings shared by Indago Group with the U.S. Attorney's office - "may contain exculpatory evidence for Mednax or may be relevant to its statute of limitations claims." Def. Opp. at

10

22. That seems obviously true. Claims of fraud or over-billing shared with the U.S. Attorney's office may be used to test the accuracy and timeliness of Aetna's own allegations. If the information shared with the U.S. Attorney does not match information relied upon in making Aetna's claims, it may be a basis to challenge the credibility of Indago Group's (or Aetna's) investigation. If it does match, it may be relevant to Mednax's statute of limitations defense, depending on the time when the shared information was developed by Indago Group. The same line of reasoning applies to Mr. Pierce's communications with other health care insurers regarding Mednax. *Id.* at 23.

Though it does not affect the more fundamental question of relevance, it seems unlikely that Aetna can reconcile the sharing of information with a third-party, such as the United States or other insurance companies, with a viable continuing claim of attorney-client privilege. *See Westinghouse Elec. Corp.* 951 F.2d at 1428 ("A disclosure to a third party waives the attorney-client privilege unless the disclosure is necessary to further the goal of enabling the client to seek informed legal assistance."). By contrast, a disclosure to a non-adversarial third-party need not have waived a claim of work product protection; it depends on the extent to which the disclosure will result in an adversary coming into possession of the work product. *Id.*

The second category – an analysis by Indago Group referred to in a witness interview – is discoverable if created before Indago Group was retained by Aetna or its counsel, but subject to work product protection if created after that date. I will permit Mednax to seek any analysis created before Indago Group was retained by Aetna or its counsel, subject to claims of privilege or work product protection that might be asserted by Indago Group.

As to the third category – retentions and investigations preceding the witnesses' work for Aetna – this line of discovery is reasonably likely to produce relevant information, for much the same reasons as disclosure of investigative information to the U.S. Attorney's office would. If there are privilege issues concerning such investigations and retentions, they are not Aetna's to champion.

I reject Aetna's argument that Mednax's requests for these three categories of information seek irrelevant information. I will permit Mednax to seek this discovery for certain periods of time and subject to other constraints.

### E. Witness agreements should be produced.

If Aetna entered into "confidential paid consulting and non-disclosure agreement[s]" with former Mednax employees, *see* Def. Opp. at 23, Aetna must produce the witness agreements, as they bear on the witnesses' credibility. Witness credibility, and payments or other consideration offered to witnesses, are "relevant." Fed. R. Evid. 401; *see United States v. Abel*, 469 U.S. 45, 52 (1984) (witness bias is almost always relevant and provable by extrinsic evidence, in contrast to less favored forms of impeachment); *United States v. Shabazz*, No. 05-113, 2007 WL 9724554, at *11 (E.D. Pa. Oct. 23, 2007) (payments to confidential informant were relevant to show bias).

Aetna is not aware of "agreements with potential witnesses," other than its consulting and expert witnesses. Pl. Reply. at 21. Aetna says it has "retained experts and consultants who may testify at trial and those agreements are protected from production." *Id*. I disagree. Witness agreements for those consultants and expert witnesses who "may testify at trial" must be produced.

It is not clear who Aetna is talking about when it speaks of "experts and consultants who may testify at trial." *Id*. Aetna has elsewhere identified Dr. Bowblis, Dr.

Sandoval, Innovative Computer Systems, and DPR Integrated Solutions as "non-testifying experts." Pl. Mem. at 18. Aetna has identified Indago Group, Ms. Schulman and Ms. Pappas-Graber as "investigators," without saying whether they are expected to testify or not. *Id.* at 3.

Aetna has a choice to make: reserve the right to call its consultants or experts as trial witnesses or categorize them as non-testifying and be precluded from calling them at trial. The choice is Aetna's to make, but the Court has a say in when and how the election is made. It would be procedurally unfair to allow Aetna to wait until a few days or weeks before trial to announce that a previously "non-testifying" consultant, expert, or investigator will be redesignated and called to testify at trial. As a precaution, I will set a deadline for Aetna to identify those among the subpoenaed witnesses who may be called to testify at trial, and direct that Aetna produce all witness agreements for any of the subpoenaed witnesses so identified. Once its election is made, Aetna will be precluded from calling any of the subpoenaed witnesses who have been identified as non-testifying experts or consultants.

Because it is unclear whether Aetna is aware of witness agreements involving anyone else besides the subpoenaed witnesses, and as a precaution to ensure the issue does not fall through the cracks, I will order that witness agreements and the like, if they exist, be turned over as to other persons having knowledge of the facts concerning Aetna's claims against Mednax and Mednax's defenses.

### F. I will forbid discovery of subpoenaed witnesses after the dates listed in section C of this opinion, with narrow exceptions.

Having resolved questions about discovery that will not be forbidden to Mednax, at least not in the absence of claims of privilege or other grounds of resistance asserted

13

by the witnesses who have been subpoenaed, I will generally forbid Mednax from seeking discovery from the persons and entities listed in section C, above, on and after the dates listed for each person, with certain exceptions. Fed. R. Civ. P. 26(c)(1)(A).

The general prohibition on discovery following retention by Aetna is based on a pragmatic assessment that claims of attorney-client privilege and work product protection for these individuals, after they were retained by Aetna, are obvious and well founded. I will not require that a privilege log be prepared for every communication and every shred of data gathered by Aetna's attorneys, experts, and consultants in anticipation of litigation with Mednax. The burdens of such a process, in terms of time and money spent in a laborious privilege review, would far exceed any likely benefit, in terms of relevant documents that for some reason escape privilege or work product protection.

Against this general prohibition, I will not forbid certain limited discovery by Mednax from the subpoenaed witnesses, although I will require some of the discovery to be turned over by Aetna in the first instance before Mednax has recourse to the subpoenaed witnesses.

First, Mednax may proceed with discovery under the subpoenas for the time period before the dates listed in section C, above. Fed. R. Civ. P. 26(c)(1)(A)-(D). Aetna has no standing to claim privilege or work product protection before those dates. The subpoenaed witnesses may have grounds for resisting the subpoenas, but as Aetna itself points out, those claims will have to be sorted out individually, either by Mednax and the witnesses, by the district court in the district where compliance is sought (*see* Fed. R. Civ. P. 45(d)(2)(B)(i)(motion to compel) and 45(d)(3)(motion to quash)), or by this Court, if the subpoena litigation is transferred under Fed. R. Civ. P. 45(f).

14

Second, for the period January 1, 2011, to the present, Mednax is permitted to insist that Aetna and the subpoenaed witnesses turn over copies of all communications and information exchanged between Aetna or the subpoenaed witnesses, on the one hand, and third parties such as the U.S. Attorney's office and other health insurers, on the other hand, concerning the investigation of allegations that Mednax overbilled Aetna. Fed. R. Civ. P. 26(c)(1)(A)-(D). This information is likely to be relevant to Mednax's defenses, while claims of attorney-client privilege or work product protection are not as simple or obvious in the context of third-party disclosures. In addition, Mednax may be able to show grounds for overcoming work product protection. *See* Fed. R. Civ. P. 26(b)(3)(A).

Aetna will be directed to turn over this information to Mednax within 21 days. If Aetna claims privilege or work product protection for these communications, it must prepare and submit a detailed privilege log in compliance with Fed. R. Civ. P. 26(b)(5) within the same time period. The privilege log will also explain (for each claim of privilege or work product protection) why the privilege or work product claim is not waived by communication with a third-party. Mednax will be forbidden from initiating proceedings against the subpoenaed witnesses for this information until Aetna produces documents and a privilege log, counsel for Aetna and Mednax meet and confer over any differences they have, the parties have litigated any remaining concerns before this Court, and the Court has resolved those remaining concerns. Fed. R. Civ. P. 26(c)(1)(A)-(D). At that point Mednax may apply for leave from this Court to pursue subpoenaed witnesses for this information.

Third, witness agreements and the like may be discovered as discussed in section E, above.

**G. Sanctions are denied.**

The parties have both requested sanctions. I will deny the requests. This is a complex case, and this was a complex discovery dispute. In the end I have permitted, postponed and prohibited discovery of different kinds, as to different sources, for different reasons. This is an indication that the parties' various positions, taken in the aggregate, were "substantially justified," if they were not vindicated in every particular. *See* Fed. R. Civ. P. 37(a)(5) (incorporated by reference in Rule 26(c)(3)). "Substantially justified" has not been defined by the Third Circuit,[2] but if it means that reasonable people could differ whether a party was (or was not) required to comply with the discovery requests, or whether a genuine dispute exists whether the request (or compliance) was appropriate, *see Grider*, 580 F.3d at 140 n.23, that standard has been met.

---

[2] The Court of Appeals had this to say, in *Grider v. Keystone Health Plan Cent., Inc.*:
> we note that in *Tolerico v. Home Depot*, Chief Judge Vanaskie, of the United States District Court for the Middle District of Pennsylvania, stated:
>> "Substantial justification" for the failure to make a required disclosure has been regarded as justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request. The test of substantial justification is satisfied if there exists a genuine dispute concerning compliance.
>
> 205 F.R.D. 169, 175–76 (M.D.Pa.2002) (internal citation and quotations omitted); *see also* 6 Moore's Federal Practice, § 26.154[2][a] ("An objective standard is applied in determining whether sanctions are to be applied under Rule 26(g).... [T]he issue is whether the attorney or party who signed the certification conducted a reasonable inquiry into the facts supporting the disclosure or discovery document.").

580 F.3d 119, 140 n.23 (3d Cir. 2009).

## IV. Conclusion.

An Order consistent with this Memorandum will be entered.

BY THE COURT:

_s/Richard A. Lloret_
RICHARD A. LLORET
U.S. MAGISTRATE JUDGE