# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AETNA INC., ET AL | : | CIVIL ACTION |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| MEDNAX, INC. et al | : | NO. 18-cv-02217-WB |
| Defendants. | : | |

## MEMORANDUM CONCERNING DOC. NO. 113

The plaintiffs (collectively, "Aetna") have filed a motion seeking to compel the defendants (collectively, "Mednax") to run expanded search terms against additional custodians. Doc. No. 113 ("Pl. Mot."). Mednax has opposed the motion. Doc. No. 126 ("Def. Opp."). Aetna has replied. Doc. No. 132 ("Pl. Rep."). I have considered the parties' contentions against the factors outlined in Fed. R. Civ. P. 26(b)(1).

Mednax resists Aetna's expanded search terms and proposed additional custodians as overly burdensome and disproportionate to the needs of the case. I will permit much of the additional discovery requested by Aetna, given that the issues at stake in the case are important, the amount in controversy is significant, the parties' resources are ample, Mednax has superior relative access to the information sought, and the discovery requests seem reasonably calculated to lead to relevant evidence. Fed. R. Civ. P. 26(b)(1).

I. **Discussion.**

1. **Aetna's expanded search terms.**

Aetna wants Mednax to run expanded search terms. Doc. No. 113 at 7. Mednax resists this, contending that the search strings would be overly burdensome. I do not

find the additional search terms overly burdensome, based on the factors mentioned in Fed. R. Civ. P. 26(b)(1). The number of additional "hits" that the parties' predict will be generated by the expanded search terms does not strike me as overly burdensome, given the magnitude of the case. I will order that the expanded search terms requested by Aetna be run against existing custodians and the additional custodians I will now designate.

### 2. Mednax's Chief Compliance Officer.

Mednax's Chief Compliance Officer also serves as Mednax's Chief Legal Officer. This means that its Chief Legal Officer also serves an explicit business function. Pl. Rep. at 5-7. Mixing these two functions was Mednax's choice to make, but the choice leads me to the conclusion that discovery will have to proceed document by document, rather than be avoided categorically, as in my previous Order. Doc. No. 171.

The attorney-client privilege protects "'(1) a communication (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client.'" *In re Chevron Corp.*, 650 F.3d 276, 289 (3d Cir. 2011) (quoting *In re Teleglobe Commc'ns Corp.,* 493 F.3d 345, 359 (3d Cir. 2007)). The party asserting the privilege bears the burden of demonstrating that it applies. *In re Grand Jury*, 705 F.3d 133, 160 (3d Cir. 2012). If the communication is primarily about advice on non-legal matters, the privilege does not apply. *Idenix Pharmaceuticals, Inc. v. Gilead Sciences, Inc.*, 195 F.Supp.3d 639, 644 (D. Del. 2016) (quoting *Hercules, Inc. v. Exxon Corp.*, 434 F.Supp. 136, 147 (D. Del. 1977). If the communication is primarily about legal problems, the privilege applies. *Leonen v. Johns-Manville*, 135 F.R.D. 94, 98–99 (D.N.J. 1990) (citations and internal quotation omitted).

Business and legal matters are often difficult to distinguish. *Sedco Int'l, S.A. v. Cory,* 683 F.2d 1201, 1205 (8th Cir. 1982); Just labelling the lawyer's advice "business" or "legal" does not help; that is a conclusion, not analysis. *United States v. Chen*, 99 F.3d 1495, 1502 (9th Cir. 1996). Advice does not have to be solely legal in nature to be protected. *In re General Motors LLC Ignition Switch Litigation*, 80 F.Supp.3d 521, 530 (S.D.N.Y. 2015). If getting or receiving legal advice "was one of the significant purposes of the [communication]" the privilege should apply, even if there were additional purposes, and even if the communication was mandated by government regulation. *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 758–59 (D.C. Cir. 2014).

I will permit Aetna's requested discovery concerning documents and communications involving Mednax's Chief Compliance Officer. To the extent that Mednax contends such documents and communications are privileged, or subject to work product protection, they must prepare and submit a privilege log in conformance with Fed. R. Civ. P. 26(b)(5). Simply describing the communication as "legal advice" will not suffice, in this context; more detail will have to be employed. Document descriptions in the log will have to explain why the primary purpose of the communication was the giving or receiving of legal advice, as opposed to business or other non-legal advice. In addition to the requirements of Rule 26(b)(5), the log will also identify those documents and communications that have been copied to or shared with third parties, and will explain why the privilege is not waived. *See Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1423–24 (3d Cir. 1991).

### 3. Developers of the BabySteps software.

Mednax has not complied with my direction to disclose the person or persons responsible for developing its BabySteps software. *See* Doc. No. 102, at 37-38; Pl. Mot.

at 6. Within 10 days of the date of the accompanying Order, Mednax will disclose the names of all persons responsible for the development of its BabySteps software from its inception to its current edition, together with a summary of the information about which each person has knowledge. Mednax will also identify all individuals associated with the development of its electronic medical records system, if that is something different. *See* Pl. Mem. at 3, n.4. Producing Robert C. Bryant and Darren Handler to supply some information about the software is not compliant with my Order. This should have been obvious at the time of oral argument. *See* Doc. No. 102, at 35.

A business such as Mednax, which depends upon its medical records and billing software so much that it took the trouble to develop the software itself, should be able to track down who was responsible for developing the software. Mednax mentions that the software goes back to 2004. Doc. No. 102 at 37. That is not very long ago. Mednax will comply with my directive, which has now been formalized as a written order. Mednax also will run the expanded searches designated by Aetna against these identified individuals.

### 3. Medical Directors of practice-groups.

Aetna proposes discovery directed to the Medical Directors of 20 practice-groups, to be identified by Aetna. Aetna contends that these are persons who are likely to have received relevant information about billing practices, as well as practice-group financial performance. Pl. Rep. at 8. A total of 48 practice-groups either were acquired or departed from Mednax during the last 10 years. *See* Pl. Mot. at 7. Aetna will choose Medical Directors of 16 of this set of practice-groups. Mednax will run the expanded searches proposed by Aetna for the 16 Medical Directors selected by Aetna. I find that such discovery is reasonably designed to lead to relevant information and is not

disproportionate to the needs of the case. Selection by Aetna, and production of records for one-third of the Medical Directors (16 of 48), should ensure that significant, relevant issues with billing practices and financial performance are represented adequately in the discovery. The number of "hits" is unlikely to be overwhelming, and the burden is not disproportionate, given the size and needs of the case. *See* Pl. Mot. at 13.

### 4. Coding Committee non-voting attendees.

Aetna wants to have Mednax run its expanded searches against six non-voting attendees of Mednax's coding committee. Pl. Mot. at 13. Aetna's request seems to be motivated, in part, by the dearth of information supplied by Mednax in connection with the developers of the BabySteps software program. *Id.* The request is proportionate to the needs of the litigation, and I will order it.

### 5. Financial oversight custodians.

Aetna asks that its expanded searches be run against financial oversight custodians. I find this is reasonable, in light of the factors outlined in Fed. R. Civ. P. 26(b)(1). I will direct that Mednax run Aetna's expanded search terms against CFO Jason Clemens and CAO John Pepia, as well as other financial custodians identified by Mednax on March 18, 2019. *See* Pl. Mot. at 12, n.12.

## II. Conclusion.

For the reasons explained, I will enter an order granting some of the relief sought by Aetna while denying the balance.

BY THE COURT:

*s/Richard A. Lloret*
RICHARD A. LLORET
U.S. MAGISTRATE JUDGE