IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AETNA INC., AETNA HEALTH, INC., AETNA HEALTH MANAGEMENT LLC AND AETNA LIFE INSURANCE COMPANY, | CIVIL ACTION |
| Plaintiffs, | |
| v. | No. 18-2217 |
| MEDNAX, INC., PEDIATRIX MEDICAL GROUP, INC. AND MEDNAX SERVICES, INC., | |
| Defendants. | |

## ORDER

AND NOW, this ____ day of _____, 2020, upon consideration of the motion filed by Defendants Mednax, Inc., Mednax Services, Inc., and Pediatrix Medical Group, Inc. (collectively, "Mednax") Motion to Compel 30(b)(6) Testimony and Written Discovery Relating to the Claims at Issue, Aetna's Internal Systems, and Aetna's Discovery of the Alleged Fraud (the "Motion"), it is hereby ORDERED that Defendants' Motion is GRANTED, objections raised by Plaintiffs Aetna Inc., Aetna Health, Inc., Aetna Health Management, LLC and Aetna Life Insurance Company (collectively, "Aetna") in response to Mednax's discovery requests identified below and in Mednax's Motion are OVERRULED, and Aetna is compelled to produce the following:

> a. Testimony by one or more witnesses designated by Aetna pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure to testify fully and completely on the topics identified in Mednax's November 27, 2019, Rule 30(b)(6) Deposition Notice.

i.  With respect to Topic Nos. 4, 9-11, 14-15, 17, and 19-22, Aetna has agreed to produce testimony concerning (1) Aetna's formal fraud detection and investigation processes, including any SIU investigations of Mednax, (2) the March and August regression claims data, and (3) the identity of the self-funded plans on whose behalf Aetna brought this action.  Aetna must provide testimony on those topics within 21 days of entry of this order.  The parties are directed to confer about scheduling the deposition(s) at dates, times, and locations acceptable to both parties.  Aetna must identify the witness(es) it will provide on each topic 14 days prior to the deposition(s).

ii.  With respect to the remaining aspects of Topics 4, 9-11, 14-15, 17, and 19-22 to which Aetna has objected to producing testimony, and with respect to Topic Nos. 1-3, 5-8, 12-13, 16, 18, 23-24 to which Aetna also has objected to producing any testimony, Aetna must provide testimony within 45 days of entry of this order.  The parties are directed to confer about scheduling the deposition(s) at dates, times, and locations acceptable to both parties.  Aetna must identify the witness(es) it will provide on each topic 14 days prior to the deposition(s).

b.  Supplemental responses to Mednax's Interrogatory Nos. 2, 4, 9, and 10.  Aetna's supplemental responses must fully and completely respond to all questions and subparts contained in these interrogatories.  Aetna must serve these supplemental responses no later than 14 days after entry of this order.  Aetna's existing partial

responses to these interrogatories are insufficient, and Aetna must supplement its responses as follows:

i.   In response to Interrogatory No. 2, Aetna must supplement its response to specifically identify each claim that it presently contends is an instance of Mednax overbilling, improper coding, unnecessary tests, or other misconduct during the relevant time period and, for each, must provide the information requested in subparts (a) through (h) for each instance identified.  If Aetna is presently unable to identify specific patient claims, it must identify each CPT code and each Mednax affiliate involved in the conduct at issue.  Aetna must supplement this response on an ongoing basis.

ii.   In response to Interrogatory No. 4, Aetna must supplement its response to identify any work it performed, report it prepared, or analysis it conducted during the relevant time period relating to overbilling, improper coding, fraud, or abuse relating to the Mednax claims at issue.  This discovery is not limited to "formal" investigations.  Aetna must identify all findings, results, conclusions, and outcomes generated as a result of the work, reports, or analyses identified.

iii.   In response to Interrogatory No. 9, Aetna must supplement its response to identify the "former employees" of Mednax; to state when Aetna first consulted with Attorney Howard Pierce; and to identify the dates, senders, recipients, and contents of the "further information" Aetna received "in or around November 2013."

    iv.  In response to Interrogatory No. 10, Aetna must supplement its response to state when precisely in April 2014 Aetna received the information described in its existing response; by and to whom that information was conveyed; who prepared that analysis; a general description of that "analysis"; and any other non-privileged identifying information relevant to application of the discovery rule, which Aetna invoked in response to Mednax's Motion to Dismiss.

c.  All documents responsive to Mednax's Requests for Production Nos. 32-33, 40-41, 66, 69-70, 96.  Aetna must complete production of those documents no later than 21 days after entry of this order.

d.  All documents and all written responses and objections received by Aetna in response to any subpoena issued by Aetna to a non-party in this case.  Aetna shall complete production of all documents, responses, and objections it has already received from non-parties in response to subpoenas no later than 7 days after entry of this order, including but not limited to all patient medical records Aetna has received from any subpoenaed hospitals.  Going forward, Aetna must produce all documents, responses, and objections it receives in response to a non-party subpoena within 7 days of receiving those materials from a non-party, regardless of whether that third-party expects to make further productions.

BY THE COURT:

_____
RICHARD A. LLORET
United States Magistrate Judge

4

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

AETNA INC., AETNA HEALTH, INC.,
AETNA HEALTH MANAGEMENT LLC
AND AETNA LIFE INSURANCE
COMPANY,

               Plaintiffs,

v.

MEDNAX, INC., PEDIATRIX MEDICAL
GROUP, INC. AND MEDNAX SERVICES,
INC.,

               Defendants.

CIVIL ACTION

No. 18-2217

## DEFENDANTS' MOTION TO COMPEL 30(b)(6) TESTIMONY AND WRITTEN DISCOVERY RELATING TO THE CLAIMS AT ISSUE, AETNA'S INTERNAL SYSTEMS, AND AETNA'S DISCOVERY OF THE ALLEGED FRAUD

Mednax moves to compel Aetna to provide discovery regarding the patient claims that Aetna contends were upcoded or fraudulent, and regarding Aetna's internal claims processing and fraud detection systems and its review or analysis of Mednax's billing during the relevant time period. Mednax also moves to compel Aetna to promptly produce a corporate representative to testify regarding the topics in Mednax's Rule 30(b)(6) deposition notice to which Aetna has agreed to provide testimony. Aetna has refused to produce the requested discovery. Aetna objects to presenting Rule 30(b)(6) testimony promptly even for topics to which it has agreed, and for most topics Aetna has refused to present any testimony at all. Aetna also objects to producing requested documents, to providing fulsome interrogatory responses, and to promptly producing documents received by Aetna in response to subpoenas to third-parties. For the reasons set out in detail in the accompanying memorandum, Aetna's objections should be overruled, and the Court should order Aetna to produce the requested discovery.

1

Respectfully submitted,

Dated: January 30, 2020             BY:    /s/ GARY A. ORSECK

ROBBINS, RUSSELL, ENGLERT, ORSECK,
    UNTEREINER & SAUBER LLP
Gary A. Orseck*
Alison C. Barnes*
Jennifer S. Windom*
2000 K St. NW, 4th Floor
Washington, D.C. 20006
Ph: (202) 775-4500
Fax: (202) 775-4510
Email: gorseck@robbinsrussell.com
        abarnes@robbinsrussell.com
        jwindom@robbinsrussell.com

LASH & GOLDBERG LLP
Martin B. Goldberg*
Jonathan E. Feuer*
100 Southeast 2nd Street
Miami, FL 33131
Ph: (305) 347-4040
Email: mgoldberg@lashgoldberg.com
        jfeuer@lashgoldberg.com

 * Admitted Pro Hac Vice

CONRAD O'BRIEN PC
Howard M. Klein (No. 33632)
Robert N. Feltoon (No. 58197)
Andrew K. Garden (No. 314708)
Centre Square West Tower
1500 Market Street, Suite 3900
Philadelphia, PA 19102-2100
Ph: (215) 864-9600
Fax: (215) 864-9620
Email: hklein@conradobrien.com
        rfeltoon@conradobrien.com
        agarden@conradobrien.com

*Attorneys for Defendants Mednax, Inc., Pediatrix
    Medical Group, Inc., and Mednax Services, Inc.*

2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| AETNA INC., AETNA HEALTH, INC., AETNA HEALTH MANAGEMENT LLC AND AETNA LIFE INSURANCE COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>MEDNAX, INC., PEDIATRIX MEDICAL GROUP, INC. AND MEDNAX SERVICES, INC.,<br><br>Defendants. | CIVIL ACTION<br><br><br>No. 18-2217 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION TO COMPEL 30(b)(6) TESTIMONY AND WRITTEN DISCOVERY**
**RELATING TO THE CLAIMS AT ISSUE, AETNA'S INTERNAL SYSTEMS,**
**AND AETNA'S DISCOVERY OF THE ALLEGED FRAUD**

## TABLE OF CONTENTS

I.   THE COURT SHOULD ORDER AETNA TO PRODUCE DISCOVERY IDENTIFYING THE PATIENT CLAIMS THAT AETNA CONTENDS WERE UPCODED OR FRAUDULENT ............................................................................ 2

II.  THE COURT SHOULD ORDER AETNA TO PRODUCE DISCOVERY REGARDING ITS CLAIMS REVIEW PROCESSES AND ANY RELEVANT ANALYSIS OR INVESTIGATION OF MEDNAX BILLING ............................................. 6

    A.   Aetna's Systems For Reviewing And Processing Claims And Detecting Anomalous Or Fraudulent Billing .................................................................... 9

    B.   Reports Generated By Aetna's Claims Processing Or Fraud-Detection Systems ......... 11

    C.   Aetna's Detection And Investigation Of Alleged Mednax Overbilling ........................ 12

    D.   Reports Analyzing Mednax's Relevant Billing Practices.............................................. 13

    E.   Timing Of Aetna's Discovery Of The Alleged Fraud ..................................................... 14

III. THE COURT SHOULD ORDER AETNA TO PROMPTLY PRODUCE A CORPORATE REPRESENTATIVE ON THE 30(b)(6) SUBJECTS ON WHICH IT HAS AGREED TO PROVIDE TESTIMONY ................................................................... 16

Defendants ("Mednax") respectfully move pursuant to Federal Rules of Civil Procedure 30, 33, 34 and 37 to compel Plaintiffs ("Aetna") to (i) provide discovery regarding the patient claims it contends were upcoded or fraudulent; (ii) provide discovery regarding Aetna's internal claims processing and fraud detection systems and its review or analysis of Mednax's claims submission and billing during the relevant time period; and (iii) promptly produce a corporate representative to testify in response to Mednax's 30(b)(6) deposition notice, on the topics for which Aetna has agreed to provide testimony.

## INTRODUCTION

"[D]iscovery rules requirements are mandatory, not optional." *In re Asbestos Prods. Liab. Litig. (No. VI)*, No. 08-90234, 2012 WL 5839023, at *4 (E.D. Pa. Nov. 16, 2012) (internal quotation marks omitted).  But Aetna continues to regard the Federal Rules of Civil Procedure as an opt-in, opt-out deal.  For more than a year, Aetna has failed to produce discovery about the most basic (yet critical) topics, including:  What claims are at issue?  Which types of claims submitted by Mednax providers does Aetna contend were upcoded or fraudulent?  What claims review and fraud detection systems does Aetna use, and how do they work?  When and how did Aetna discover the alleged fraud?

Mednax does not bring this motion lightly; we are conscious of the burdens placed on the Court by the parties' motion practice to date.  But Aetna has made abundantly clear that it will not produce meaningful discovery unless and until the Court compels it.  After months of exchanges, the parties held another meet-and-confer call on January 23, 2020, and Aetna refused to budge, at all, on any of its prior stated positions.  Aetna's tactics have severely prejudiced Mednax to date and will continue to severely prejudice Mednax and deprive it of the ability to

prepare a defense.  Mednax therefore asks the Court to compel Aetna to provide the following discovery:

*First*, Aetna should be compelled to provide discovery identifying specific patient claims that it contends were fraudulent or upcoded.  Aetna has declined, time and again, to identify ***a single patient claim*** that it believes was improper, or even to list the CPT codes that it alleges were consistently misbilled.  Mednax cannot defend against a fraud claim where the alleged instances of fraud remain a mystery.  Mednax is entitled to this information, now.

*Second*, Aetna should be compelled to produce discovery relating to its claims review and fraud-detection systems, its analyses and investigations of Mednax's claims and billing, and related information bearing on the circumstances and timing of Aetna's "discovery" of the alleged fraud.  This information is plainly relevant, not just to Aetna's justifiable reliance (as Judge Beetlestone has already held), but also to Aetna's statute of limitations argument and the merits of its claims.

*Third*, Aetna should be required to promptly produce a corporate representative to testify to the matters on which it has ***agreed*** to provide Rule 30(b)(6) deposition testimony.  Aetna seeks to delay such a deposition until document production is completed and it decides to schedule its own depositions.  But Rule 26(d)(3) permits Mednax to proceed with the deposition now, and Aetna can hardly be heard to complain about the provision of discovery that will help the parties focus subsequent discovery on the issues actually in dispute.

## ARGUMENT

## I.    THE COURT SHOULD ORDER AETNA TO PRODUCE DISCOVERY IDENTIFYING THE PATIENT CLAIMS THAT AETNA CONTENDS WERE UPCODED OR FRAUDULENT

Nearly two years into this case, Mednax remains in the dark regarding which of the millions of patient claims its affiliates submitted to Aetna are alleged to be upcoded or

fraudulent.  More than a year ago, Mednax served an interrogatory asking Aetna to "[i]dentify each instance of overbilling, improper coding, ordering of unnecessary tests, or any other misconduct [Aetna] claimed occurred during the time covered by the Complaint" and to provide specific information for each claim identified.  *See* Mednax's First Set of Interrogatories to Aetna, No. 2 (Nov. 30, 2018), attached as Exhibit 1.  Aetna refused.  When Aetna subpoenaed twenty hospitals seeking medical records (presumably relating to claims Aetna is scrutinizing), Mednax requested copies of those documents.  Aetna refused.  In November, Mednax served a 30(b)(6) notice calling for Aetna to produce a corporate representative to testify regarding the claims Aetna alleges are fraudulent.  *See* Mednax's Notice of Rule 30(b)(6) Deposition, Topic 23 (Nov. 27, 2019), attached as Exhibit 2.  Aetna refused.

This information is plainly relevant and discoverable, and Mednax needs it to understand and perform its own analysis of the patient claims at issue.  Yet Aetna refuses, claiming that Mednax's requests are premature, and that this information is "uniquely" within the control of Mednax or third parties.  Aetna insists that its production of its original regression analysis (which it has said will not be relied upon at trial), and the large volume of claims data underlying that analysis, is sufficient.  *See* Aetna's Objs. and Resps. to Defendants' Interrogatories, Obj. to Interrogatory No. 2 (Jan. 16, 2019), attached as Exhibit 3.  But Aetna's production of 217 million lines of patient claim data—which includes non-NICU claims, non-infant claims, professional claims from non-Mednax affiliated providers, and hospital technical claims, including hospital cafeteria charges—does not provide Mednax with the information it needs to understand which patient claims are the focus of this lawsuit.

Mednax earlier raised this issue (in the context of its interrogatory request) in a February 2019 letter to Judge Beetlestone.  *See* Dkt. 76-2, at 4-5.  Mednax then again raised it in a letter to

this Court in May 2019 (*see* Dkt. 94), to which Aetna responded.  *See* Dkt. 100.  The Court has not yet resolved the issue presented by Mednax's submissions.[1]

Mednax incorporates by reference its prior filings, but wishes to amplify two points. First, Aetna argues that it cannot possibly identify "***the universe*** of systematically inflated claims" until later in the case.  Dkt. 100, at 2 (emphasis added).  But Interrogatory No. 2 simply asks Aetna to identify the medical claims that it ***presently claims*** were fraudulent.  This is hardly an unreasonable request.  Aetna's complaint (filed in April 2018) accused Mednax of a multimillion-dollar fraud.  If Aetna has identified discrete claims that it believes were fraudulent, either before it filed its complaint or in the nearly two years since, Mednax is surely entitled to know what they are.  *See San Francisco Bay Area Rapid Transit Dist. v. Spencer*, No. 04-cv-04632, 2007 WL 421336, at *4 (N.D. Cal. Feb. 5, 2007) (requiring plaintiff to identify "nature and number of the false claims" because "[w]ithout this information, it would be difficult, if not impossible, for defendants to adequately and efficiently prepare their defense").[2]  And, if Aetna has not yet identified any such claims, then Mednax is entitled to know that, too.  Similarly, Aetna should be required to produce a witness who can testify about the claims (if any) that Aetna presently contends were fraudulent.[3]

---

[1] Aetna has previously argued that Judge Beetlestone denied Mednax's request for this information at a March 4, 2019 discovery hearing.  Dkt. 100, at 2.  That is not true, as Mednax explained in its May 30, 2019 letter to the Court.  *See, e.g.*, Dkt. 94, at 1 n.1.  Judge Beetlestone's order following the March discovery hearing (Dkt. 62) is silent on the issue.

[2] *Accord U.S. ex rel. Lusby v. Rolls-Royce Corp.*, No. 1:03-cv-680, 2011 WL 4387293, at *4 (S.D. Ind. Sept. 20, 2011) (requiring identification of "which part numbers are alleged to be nonconforming" and related documents).

[3] Aetna objects to several noticed deposition topics on the grounds that it cannot presently identify the "***claims at issue***," including topics relating to how Aetna reviews NICU claims for upcoding, and any attempts by Aetna to recoup payment from Mednax for its claims.  *See* Aetna's Objs. to Mednax's Notice of Rule 30(b)(6) Deposition, Objs. to Topics 2-3, 5-6, 8-9, 11-13 (Dec. 20, 2019), attached as Exhibit 4 (emphasis added).  Yet these topics seek clearly relevant and discoverable information.  At the same time, Aetna objects that certain noticed

At a minimum, Aetna should provide Mednax with a list of the CPT codes and Mednax affiliates involved in the alleged upcoding scheme.  Aetna could supplement this information later in discovery if it identifies additional claims.  *See, e.g.*, *Keepers, Inc. v. City of Milford*, 807 F.3d 24, 35-36 (2d Cir. 2015) (permitting supplementation of Rule 30(b)(6) deposition testimony).  That Aetna's own "investigation" supposedly remains ongoing does not absolve it of its obligation to share with Mednax this basic information, now.

Second, the prejudice caused by Aetna's refusal to provide this information is compounded by its decision to withhold documents that it has received in response to third-party subpoenas to hospitals.  At least some of the twenty subpoenaed hospitals have already produced discovery to Aetna in response to those subpoenas.  *See* Dkt. 136-2, at Exhibit 1 (attaching excerpt from Moses Taylor hospital production).  Yet Aetna refuses to provide Mednax with timely access to those productions (including patient medical records), insisting that it will do so only once those productions are "complete" (whenever that is, and if they ever are).[4]  That is gamesmanship.  Mednax needs immediate access to third-party hospital productions, because those records provide insight into the claims Aetna is pursuing.  *See* Fed. R. Civ. P. 45, advisory committee notes (2013) (party serving subpoena "should . . . make reasonable provision for prompt access" to produced materials).

It is long past time that Aetna answer these basic questions so that Mednax can prepare its defense.  *See*, *e.g.*, *Prosonic Corp. v. Stafford*, No. 2:07-cv-0803, 2008 WL 2323528, at *2

---

topics improperly seek "information **unrelated to the claims at issue**."  *See*, *e.g.*, *id.* (Obj. to Topic 12) (emphasis added).  In other words, Aetna says it does not know (or will not tell us) which claims **are** at issue, while at the same time, it complains that Mednax seeks discovery about claims outside that undefined, unknowable universe.

[4] Aetna has shared with Mednax the subpoena production of only one third-party hospital, Texas Health Presbyterian, presumably because it deemed that production "complete."

(S.D. Ohio June 2, 2008) (explaining that the Federal Rules of Civil Procedure are designed to allow timely access to information needed for a party to prepare to meet claims or defenses at trial). Aetna should be compelled to respond to Interrogatory No. 2, to produce a 30(b)(6) witness on Topic 23, and to provide copies of all third-party document productions on an ongoing basis.

## II. THE COURT SHOULD ORDER AETNA TO PRODUCE DISCOVERY REGARDING ITS CLAIMS REVIEW PROCESSES AND ANY RELEVANT ANALYSIS OR INVESTIGATION OF MEDNAX BILLING

For well over a year, Aetna has refused to provide complete discovery explaining (i) how its claims review and fraud-detection processes work; (ii) how it analyzed Mednax's claims and billing during the years in question; and, relatedly (iii) how and when it discovered the supposed fraud. As this Court has recognized, the production of claims review and payment policies is "not particularly burdensome," and any determination by Aetna that Mednax's claims were "okay to pay" "would be a solid basis from which to argue to the jury that there was no fraud committed." Dkt. 77 (Apr. 26, 2019 Hr'g Tr.) at 82:15-83:1, 88:19-20. Judge Beetlestone likewise recognized the relevance of this material, observing that "Aetna is a sophisticated entity with access to documents that might have revealed the alleged fraud," and that whether "Aetna often investigates claims or denies coverage in such a way as [to] render its reliance on Mednax's [claim] forms unjustifiable . . . . turns on issues of fact[.]" Dkt. 40, at 15-16; *see also* Dkt. 62, at 3 (ordering Aetna to produce "[d]ocuments concerning any investigation conducted by Aetna of Mednax regarding overbilling and improper coding from 2010 to the present, including any policies and procedures that governed any such investigations").

In addition, the ***timing and circumstances*** of Aetna's discovery of the alleged fraud is highly relevant, but remain largely a mystery to Mednax. Aetna has argued that Pennsylvania's two-year statute of limitations was tolled because it was "'reasonably unaware' of the injury"

until 2014.  Dkt. 26, at 14-15; Dkt. 143, at 14-15.  Mednax is entitled to test that premise.  *Foley v. Juron Assocs.*, No. 82-cv-0519, 1986 WL 5557, at *3 (E.D. Pa. May 13, 1986) ("[I]n order for the defendant to be able to adequately prepare a defense based upon the statute of limitations, it must know what facts were actually revealed to the plaintiffs, at that time, that the plaintiffs were not aware of beforehand."); *accord Grant Heilman Photography, Inc. v. Pearson Educ., Inc*., No. 11-cv-4649, 2012 WL 12897914, at *1 (E.D. Pa. July 27, 2012).  Aetna says it "first obtained facts that gave it a reason to suspect that Defendants were engaged in intentional overbilling" in April 2014 (Dkt. 143-1 (Aetna's Supp. Objs. & Resp. to Interrogatories, Resp. to Interrogatory No. 10)), but it has produced a handful of documents indicating that it investigated at least some aspects of Mednax's billing in 2012.  And one of Aetna's investigators contacted a former Mednax employee in 2009.  Mednax is entitled to discover facts that shed light on whether Aetna should have discovered—or in fact did discover—the alleged fraud before April 2014.

On a succession of grounds, Aetna nevertheless refuses to provide responsive information.  At times, Aetna has suggested that these subjects are better suited for deposition.[5] But when Mednax served its 30(b)(6) notice seeking such testimony, Aetna objected to those topics, save for testimony regarding formal Special Investigations Unit ("SIU") fraud investigations.  *See* Ex. 4; *see also* Ltr. from Aetna Counsel to Mednax Counsel (Dec. 19, 2019), attached as Exhibit 5, at 2 (refusing to produce documents outside of SIU "investigations of fraud relating to Mednax").  Thus, Aetna persists in its categorical refusal to provide discovery

---

[5] *See* Dkt. 79, at 6 ("[I]f Mednax has questions about any investigations—how they were initiated, handled, completed, etc.—Mednax will presumably depose an Aetna witness and have all of its questions answered in that setting."); *id.* at 7 ("Mednax is going to depose someone on this topic, and it will be through this '**interactive process** of question and answer' where Mednax will obtain information about Aetna's method of fraud detection.") (internal citations omitted).

concerning any other type of review it conducts for "overbilling, overpayment, improper coding, and unnecessary medical care." Ex. 4, at 9.

Aetna also suggests that one of the Court's recent orders (Dkt. 172) bars this discovery, which Aetna characterizes as relating to "routine claims processing." *See, e.g.*, Ex. 5, at 2; Dkt. 201, at 11. That order says no such thing. The order merely denied as moot Mednax's motion to compel Aetna to identify individual employees involved in investigating and auditing Mednax claims. In any event, by these requests, Mednax does ***not*** seek routine claim adjustment documents or communications between Aetna and Mednax about individual patient claims. Rather, Mednax seeks information about Aetna's ***internal*** claim investigation and coverage denial processes—including how, if at all, Mednax's claims touched those processes—to determine whether Aetna should have identified or did in fact identify any alleged billing anomalies with Mednax's claims. This discovery is neither "massive" nor "disproportionate to the needs of this litigation," and it is most certainly not already in Mednax's "possession." Dkt. 172, at 2. It is likely to lead to discoverable information regarding Aetna's justifiable reliance (or lack thereof). *See also City of Philadelphia v. Lead Indus. Ass'n*, No. 90-cv-7064, 1992 WL 98482, at *3 n.4 (E.D. Pa. Apr. 23, 1992) ("Plaintiffs' knowledge is relevant to the discussion of dismissing the fraud count, however, since that knowledge negates the affirmative element of reliance which plaintiffs must adequately (and specifically) plead in order to avoid dismissal of the count.").

The requested discovery should be produced forthwith. Below, we address the outstanding individual discovery requests that seek this information.

## A.     Aetna's Systems For Reviewing And Processing Claims And Detecting Anomalous Or Fraudulent Billing

Mednax has requested discovery regarding Aetna's internal systems for reviewing and processing the types of claims at issue in this lawsuit, and for detecting anomalous or fraudulent billing patterns in those claims.  This includes requests for written claim processing policies and procedures (Ex. 8 (RFP Nos. 32, 33)); policies, procedures, and manuals for Aetna's fraud detection systems (Ex. 1 (Interrogatory No. 3), Ex. 6 (RFP No. 69)), and deposition testimony concerning Aetna's claims review and payment processes (Ex. 2 (30(b)(6) Topics 1-4)), clinical review of claims and coding audit process (Ex. 2 (30(b)(6) Topics 5-8)), and fraud or overbilling detection process (Ex. 2 (30(b)(6) Topics 9-12)).[6]  Mednax is entitled to understand the processes that Aetna uses to screen provider claims and what billing patterns it contemporaneously observed or anticipated in Mednax's claims.  Conversely, if Aetna's processes never revealed improper billing by Mednax, then that fact may well refute Aetna's allegations that improper billing occurred.

This Court has already acknowledged the relevance of Aetna's internal policies, procedures, and manuals, and that production of such material would not be unduly burdensome. *See* Dkt. 77 (Apr. 26, 2019 Hr'g Tr.) at 82:15-83:1; *id.* at 88:17-24 (noting Aetna should "just turn over the policies and procedures," since it is a "prime example of something that's not

---

[6] Mednax also seeks information regarding the location(s) where these functions are performed (Ex. 2 (Topics 3, 12)), which is relevant to the choice-of-law analysis.  *See* Dkt. 40, at 11 n.5. Aetna has repeatedly refused to provide even the most basic information, such as identifying where its claims processing and analysis work is done.  Ex. 4 (Aetna's Objs. to Topics 3, 12); Aetna's Response to Mednax's Sixth Requests for Production, RFP No. 99 (Jan. 9, 2020), attached as Exhibit 16, at 1.

particularly burdensome"). And Aetna's counsel said it was willing to produce them.[7] Aetna should be ordered to promptly produce such documents.

Mednax also asks Aetna to produce policies or manuals associated with the software or other tools it uses to detect billing fraud.[8] Aetna identified five such tools, and agreed to "produce written policies and procedures sufficient to describe" those programs. *See* Aetna's Objs. and Supp. Resp. to Mednax's Interrogatories, Resp. to Interrogatory No. 3 (May 31, 2019), attached as Exhibit 7, at 2.; *see also* Dkt. 142-1, at 2. Aetna has not produced those documents and, in response to Mednax's follow-up inquiries, Aetna stated that "to the extent these are addressed in writing, they are addressed in the SIU manuals that have been produced." *See* Ex. 5, at 1. The SIU manuals, however, make only scant reference to some (but not all) of these systems. Aetna must have user manuals, reference guides, and other written documents for these software systems that describe how they function, the scope of their review, the types of reports they generate, and how those reports are to be interpreted. Aetna should produce them.

Aetna likewise refuses to produce a corporate representative to testify about its claims processing and payment processes, including "information related to recoupment of overbilling, overpayment, improper coding, and unnecessary medical care" and the departments involved in those tasks. *See* Ex. 4 (Objs. to Topics 1-4, 7, 9-11). Providing such testimony is not unduly burdensome, nor is it foreclosed by this Court's prior discovery rulings, as explained above.

---

[7] Aetna's counsel stated that it was "willing to produce policies and procedures that would typically apply to a NICU claim if they want us to dump the universe of all policies and procedures on them and Your Honor thinks that's appropriate." Dkt. 77, at 86:7-11. While Mednax does not seek a "dump" of Aetna's entire "universe of all policies and procedures," it is entitled to review those policies and procedures that specify how claims like those at issue are processed, reviewed, and identified for anomalous billing or fraud. *See also* Dkt. 106 (June 21, 2019 Aetna Ltr. to Court) at 2 (agreeing to produce "unpublished policies Aetna might maintain as to payment of neonatal intensive care claims").

[8] *See* Ex. 1 (Interrogatory No. 3); Mednax's Third Set of Requests for Production, No. 69 (Apr. 22, 2019), attached as Exhibit 6, at 8.

Aetna should be required to produce a corporate representative on these topics, which will permit Mednax to understand what systems Aetna used when reviewing Mednax's claims. If Aetna provides a witness to explain its processes, Mednax expects that it will be able to proceed with discovery more efficiently.

### B. Reports Generated By Aetna's Claims Processing Or Fraud-Detection Systems

Mednax likewise is entitled to reports generated by Aetna's claims processing and fraud-detection systems, including any reports addressing the conduct alleged in the Complaint or otherwise analyzing NICU claims submitted to Aetna by Mednax. Mednax served document requests for reports "generated by [Aetna's] claims processing software or fraud detection software . . . identifying or referencing any of the alleged conduct described in the Complaint . . ." (Ex. 8 (RFP No. 40)), as well as reports "that examined or analyzed Defendants' or Defendants' affiliates' billing behavior." *Id.* (RFP No. 41). Aetna was unwilling to produce these reports, and motion practice ensued. *See, e.g.*, Dkt. 77 (Apr. 26, 2019 Hr'g Tr.) at 69:15-70:6; Dkt. 102 (June 3, 2019 Hr'g Tr.) at 57:19-59:12. This discovery dispute remains unresolved.

Mednax has since served more targeted document requests, including requests for "[a]ll Documents concerning outlier reports relating to Mednax or the medical claims or billing practices at issue in this Action" (*see* Ex. 9 (Aetna's Response to Third Set of Requests for Production, RFP No. 66)), and "any data analytics reports generated by [Aetna] that analyze Mednax's billing practices or behavior." *Id.* (RFP No. 70). Again, Aetna objected. *Id.* Mednax also has sought Rule 30(b)(6) testimony on these topics so that a knowledgeable corporate representative can explain what information Aetna maintained about Mednax's billing and coding during the relevant time. *See* Ex. 2 (Topic 14) (seeking testimony on internal reports,

11

profiles, or analyses of Mednax's billing or coding practices).  Aetna objected to providing a witness as to any reports, except those created by or used by its SIU for the investigation of fraud.  Ex. 4 (Obj. to Topic 14).

Mednax asked about these requests again on December 4, 2019.  *See* Ltr. From Mednax Counsel to Aetna Counsel (Dec. 4, 2019), attached as Exhibit 10, at 3.  Aetna responded on December 19 (with respect to Request Nos. 66 and 70), stating that "[n]o such documents, other than those produced in our recent document productions, exist with regard to ***investigations of fraud*** relating to Mednax."  *See* Ex. 5, at 2 (emphasis added).  Aetna provided a similarly crabbed response to Mednax's 30(b)(6) notice.  *See* Ex. 4, at 13 (objecting, except as to reports "created by or used by Aetna's SIU department or otherwise for the ***investigation of fraud***") (emphasis added).  But Mednax's requests are not confined to reports prepared as part of, or culminating in, an "investigation of fraud."  To be sure, reports that did not precipitate an investigation of fraud—that is, reports reflecting that Mednax's claims were reviewed and found to be unobjectionable—are every bit as probative as those that sounded alarms.  Aetna cannot cherry-pick for production only those documents it regards to be helpful.  Aetna should be ordered to produce all responsive analyses and reports—whether or not they precipitated a fraud investigation—responsive to Request Nos. 40, 41, 66, and 70, and to produce a corporate representative who can testify regarding 30(b)(6) Topic 14.

### C.    Aetna's Detection And Investigation Of Alleged Mednax Overbilling

Aetna has failed to provide complete responses to Mednax's requests for information regarding the detection or investigation of any alleged overbilling, improper coding, or fraud by Mednax.  Interrogatory No. 4 asks Aetna to:

> Identify every instance in which overbilling, improper coding, fraud, or abuse was detected by the software, written policies and procedures, training materials, data analytic tools, or audit tools described in response to Interrogatory No. 3.  For

each such instance, identify any work papers, findings, results, and internal or external conclusions generated as a result of all such discoveries, whether any such instance resulted in cases being opened or assigned to a Special Investigations Unit investigator, and, if so, what the outcome of those investigations were.

*See* Ex. 1 (Interrogatory No. 4).  More than nine months after Aetna stated that it would "supplement [its] response to Interrogatory No. 4 to identify all investigations of Mednax," *see* Email from Aetna Counsel (Apr. 2, 2019), attached as Exhibit 11, it finally supplemented its response last week.  *See* Aetna's Supplemental Responses to Mednax's Fourth Interrogatory (Jan. 24, 2020), attached as Exhibit 12.  But Aetna's response remains deficient because, among other reasons, it appears limited to what Aetna chooses to characterize as "formal" investigations of Mednax and, even for those investigations, it does not identify any findings, results, or conclusions.  Aetna should be compelled to provide a complete response to Interrogatory No. 4.

### D.    Reports Analyzing Mednax's Relevant Billing Practices

Mednax has requested that Aetna produce reports discussing or referencing Mednax's billing practices, including reports comparing Mednax-affiliated providers to non-Mednax NICU providers.  *See* Mednax's Fifth Set of Requests for Production, No. 96 (Sept. 10, 2019), attached as Exhibit 13, at 13.  Aetna objected to producing any non-SIU investigative reports as "not relevant to the parties' claims or defenses."  Aetna's Responses to Mednax's Fifth Set of Requests for Production (Oct. 24, 2019), attached as Exhibit 14, at 6-7.

Nonsense.  Aetna has accused Mednax of perpetrating a $50 million fraud based on a regression analysis—prepared by an outside expert—that purports to compare Mednax's billing practices to the billing practices of non-Mednax providers.  Discovery demonstrating how Aetna ***contemporaneously*** analyzed and forecasted Mednax's billing or costs, including internal

13

analysis done independent of the litigation—is highly probative and discoverable.[9]   Aetna's

internal analyses are relevant, whether they contradict or support its regression analysis.

> ### E.      Timing Of Aetna's Discovery Of The Alleged Fraud

Finally, Aetna has refused to provide complete responses to two interrogatories (Nos. 9

and 10) seeking information about the state of Aetna's knowledge prior to 2014, when it claims

to have discovered the alleged fraud.   Aetna also objects to producing a witness to testify

regarding these topics.   *See* Ex. 4 (Objs. to Topics 18, 19).   This discovery is directly relevant to

Mednax's statute of limitations defense.

Interrogatory No. 9 asks Aetna to:

> Identify the date(s) on which The Indago Group, Howard Pierce or any other
> Person first transmitted to You (orally or in writing) the "information . . . received
> from Defendants' former employees" (Dkt. 66 at 3), including copies of the
> investigative memoranda or notes contained in Aetna 000002 – 034 [Dkt. 80-1],
> and Identify all Documents concerning such transmission.

Dkt. 143-1, at 1.  Aetna initially refused to answer this interrogatory, but ultimately amended its

response to state, in pertinent part, as follows:

> [I]nformation obtained from Defendants' former employees was first conveyed to
> Aetna's in-house counsel at or around the time Aetna first consulted with
> Attorney Pierce. Aetna received this information orally. In or around November
> 2013, Aetna was provided further information obtained from Defendants' former
> employees. Aetna received this information orally and in a written memorandum
> provided to Aetna's counsel. Any documents relating to the transmission of such
> information are subject to the work product doctrine and/or attorney client
> privilege.

*Id.* at 1-2.

Aetna's amended answer is insufficient.   Aetna does not identify the former Mednax

employees or when this unidentified "information" was "first conveyed."   Aetna characterizes

---

[9] If Aetna is concerned that these reports contain "competitive information," Ex. 14 at 6, then it
can seek heightened protection for those documents under the protective order.

the timeframe as when "Aetna first consulted with Attorney Pierce[,]" but Aetna has never told

Mednax when Aetna first consulted with Pierce.[10]  Aetna also fails to identify particular dates,

senders, recipients, or a general description of the "further information" provided "[i]n or around

November 2013."  Aetna should be ordered to provide this information.  If Aetna contends these

communications are privileged, that information should be identified on a privilege log.  Fed. R.

Civ. P. 26(b)(5).  Without that additional detail, Mednax lacks important information that bears

on the timeliness of Aetna's claims.

> Similarly, Interrogatory No. 10 asks Aetna:

> Apart from the "information . . . received from Defendants' former employees"
> (Dkt. 66 at 3), Identify the date that Aetna became aware of any other alleged
> facts that gave You "reason to suspect that Defendants were engaged in
> intentional overbilling" (*id*.) and the sources for such information (e.g., internal
> detection or investigation, or through external sources), and Identify all
> Documents concerning the foregoing.

*See* Dkt 143-1, at 2.  Aetna's supplemental response states, in pertinent part, that:

> Aetna first obtained facts that gave it a reason to suspect that Defendants were
> engaged in intentional overbilling in or about April 2014, when it first received
> the preliminary results of an analysis. Any documents relating to this preliminary
> analysis, including any communications about it, are subject to the work product
> doctrine and/or attorney client privilege.

*Id.*

> As with Interrogatory No. 9, Aetna's response is deficient.  It does not identify: (i) when

in April 2014 this information was conveyed, (ii) by or to whom it was conveyed, (iii) who

prepared the analysis or what its preliminary results purportedly were, or (iv) any other

information that would allow Mednax to test Aetna's contention that this specific information

purportedly caused Aetna to become "reasonably aware" of its alleged injury for purposes of the

---

[10] ***When*** Mr. Pierce conveyed information to Aetna also bears on Aetna's claims of privilege.  As
the Court has held, Aetna cannot claim privilege with regard to information Mr. Pierce acquired
***before*** being retained by Aetna.  Dkt. 170, at 9.

discovery rule.  Aetna should be ordered to produce (or log) this information, or it should be estopped from relying on these facts to overcome Mednax's statute of limitations defense at the summary judgment stage and at trial.

### III.  THE COURT SHOULD ORDER AETNA TO PROMPTLY PRODUCE A CORPORATE REPRESENTATIVE ON THE 30(b)(6) SUBJECTS ON WHICH IT HAS AGREED TO PROVIDE TESTIMONY

While Aetna objected to the majority of the subjects addressed by Mednax's 30(b)(6) deposition notice, it did agree to produce a witness on three matters: (1) Aetna's formal fraud detection and investigation processes, including any SIU investigations of Mednax; (2) the data sources for the March and August regression claims data; and (3) the identity of the self-funded plans on whose behalf Aetna brought this action.  *See* Ex. 4.  Mednax counsel requested dates for a deposition on these matters.  *See* Ltr. from Mednax Counsel to Aetna Counsel (Jan. 13, 2020), attached as Exhibit 15.  Aetna failed to provide any.

During the parties' recent meet-and-confer, Aetna's counsel announced that it would ***not*** produce a corporate representative on ***any*** topic—even those topics for which it had agreed to make a witness available—until it is ready to take its own depositions, at some unidentified future date.  But it is for Mednax—not Aetna—to decide when it wishes to take its discovery. *See* Fed. R. Civ. P. 26(d)(3) ("Unless the parties stipulate or the court orders otherwise . . . (A) methods of discovery may be used in any sequence; and (B) discovery by one party does not require any other party to delay its discovery."); *see also Sexual Sin De Un Adbul Blue v. City of River Rouge*, No. 16-cv-10526, 2017 WL 2438789, at *2 (E.D. Mich. June 6, 2017) ("The Federal Rules of Civil Procedure do not permit one party to make unilateral decisions regarding the timing and sequence of depositions during the discovery phase of civil litigation.").

There is good reason for Mednax to take this 30(b)(6) deposition soon.  By deposing an Aetna representative on the topics to which Aetna has agreed, Mednax can gain a better

understanding of important facts, including Aetna's internal fraud detection processes, Aetna's March and August regression claims data, and the identities of the third parties on whose behalf Aetna brings this lawsuit.  Having this information will help Mednax focus its remaining written discovery efforts and be more efficient with fact witness depositions.  There is no reason to delay.  Mednax should be permitted to take this deposition as soon as possible.[11]

## CONCLUSION

For the reasons stated above, Aetna must provide the requested discovery.  A detailed proposed order is submitted with this brief.

---

[11] Aetna's surreply addressing its regression claims data (Dkt. 201) demonstrates the need for deposition testimony to provide clarity on the subject.  That brief reported new information about Aetna's claims data and the process by which it was generated, some of which contradicts information Aetna has previously provided.  Mednax faces a mishmash of assertions from Aetna's counsel on this issue, and a deposition should provide clarity.

Respectfully submitted,

Dated: January 30, 2020              BY:    /s/ GARY A. ORSECK

ROBBINS, RUSSELL, ENGLERT, ORSECK,
   UNTEREINER & SAUBER LLP
Gary A. Orseck*
Alison C. Barnes*
Jennifer S. Windom*
2000 K St. NW, 4th Floor
Washington, D.C. 20006
Ph: (202) 775-4500
Fax: (202) 775-4510
Email: gorseck@robbinsrussell.com
        abarnes@robbinsrussell.com
        jwindom@robbinsrussell.com

LASH & GOLDBERG LLP
Martin B. Goldberg*
Jonathan E. Feuer*
100 Southeast 2nd Street
Miami, FL 33131
Ph: (305) 347-4040
Email: mgoldberg@lashgoldberg.com
        jfeuer@lashgoldberg.com

  * Admitted Pro Hac Vice

CONRAD O'BRIEN PC
Howard M. Klein (No. 33632)
Robert N. Feltoon (No. 58197)
Andrew K. Garden (No. 314708)
Centre Square West Tower
1500 Market Street, Suite 3900
Philadelphia, PA 19102-2100
Ph: (215) 864-9600
Fax: (215) 864-9620
Email: hklein@conradobrien.com
        rfeltoon@conradobrien.com
        agarden@conradobrien.com

*Attorneys for Defendants Mednax, Inc., Pediatrix
   Medical Group, Inc., and Mednax Services, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was served upon all counsel of record via the Court's electronic filing system.

Dated: January 30, 2020                    BY:   /s/ GARY A. ORSECK

ROBBINS, RUSSELL, ENGLERT, ORSECK,
  UNTEREINER & SAUBER LLP
Gary A. Orseck*
2000 K St. NW, 4th Floor
Washington, D.C. 20006
Ph: (202) 775-4500
Fax: (202) 775-4510
Email: gorseck@robbinsrussell.com

* Admitted Pro Hac Vice

*Attorney for Defendants Mednax, Inc., Pediatrix Medical Group, Inc., and Mednax Services, Inc.*