# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

AETNA INC., AETNA HEALTH, INC.,
AETNA HEALTH MANAGEMENT LLC
AND AETNA LIFE INSURANCE
COMPANY,

                Plaintiffs,

v.

MEDNAX, INC., PEDIATRIX MEDICAL
GROUP, INC. AND MEDNAX SERVICES,
INC.,

                Defendants.

CIVIL ACTION

No. 18-2217

## DEFENDANTS' FIRST SET OF INTERROGATORIES TO AETNA INC., AETNA HEALTH, INC., AETNA HEALTH MANAGEMENT, LLC, AND AETNA LIFE INSURANCE CO.

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Pediatrix Medical Group, Inc., MEDNAX Services, Inc., and MEDNAX, Inc., ("Defendants"), by and through their undersigned counsel, hereby request and demand that Plaintiffs Aetna Inc., Aetna Health, Inc., Aetna Health Management, LLC, and Aetna Life Insurance Company ("Plaintiffs") answer the following interrogatories (the "Interrogatories" and each an "Interrogatory") within 30 days, in writing and under oath, based upon all information and knowledge reasonably available to Plaintiffs and under their care, custody or control, and that Plaintiffs supplement their answers up to the date of trial if any further information is acquired. The Interrogatories are to be answered according to the definitions and instructions herein.

## DEFINITIONS

The following definitions are to be considered applicable to all of these interrogatories:

1.      Each reference to a corporation, partnership, limited liability company, unincorporated association, government agency or other fictitious person shall be deemed to include each and all of its current and former parents, owners, subsidiaries, affiliates, divisions, predecessors, successors, employees, managers, officers, directors, shareholders, partners, general partners, limited partners, members, agents, representatives, attorneys, accountants, consultants, independent contractors or any other person or entity acting, or purporting to act, with or on behalf of any of the foregoing.

2.      Each reference to a natural person shall be deemed to include that person's relatives, employees, partners, agents, representatives, attorneys, accountants, consultants, independent contractors or any other Person (as defined below) or entity acting, or purporting to act, with or on behalf of any of the foregoing.

3.      "Action" means the litigation captioned above.

4.      "Aetna" means Plaintiffs Aetna Inc., Aetna Health, Inc., Aetna Health Management, LLC, and Aetna Life Insurance Company and each and all of their current and former parents, owners, subsidiaries, affiliates, divisions, predecessors, successors, employees, managers, officers, directors, shareholders, partners, general partners, limited partners, members, agents, representatives, attorneys, accountants, consultants, independent contractors or any other person or entity acting, or purporting to act, with or on behalf of any of the foregoing, as well as all employer-established health plans that Plaintiffs administer.

5.      "Complaint" means the Complaint filed by Aetna Inc., Aetna Health, Inc., Aetna Health Management LLC, and Aetna Life Insurance Company on April 25, 2018 in the Court of

Common Pleas of Pennsylvania, First Judicial District, Philadelphia County.  Compl., *Aetna Inc. v. MEDNAX, Inc.*, No. 171101040, 2018 WL 1998596 (Pa. Ct. Com. Pl. Apr. 25, 2018).

6.      "Communication" means the transmission of information of any kind, in any form and by any means, including but not limited to, and by way of example only, any admission, denial, agreement, contract, conversation, discussion, inquiry, meeting, memorandum, minutes, negotiation, notes (handwritten, typed or otherwise), report, statement, submission, talking points, understanding or any other direct or indirect disclosure in any form, including but not limited to audio, video, digital, electronic, Social Media (whether through postings or private messaging functions), oral or paper form, and any draft communication in such form, whether or not the communication was ever disclosed, sent or transmitted.

7.      "Social Media," in addition to its customary and usual meaning, includes, but is not limited to, Facebook, LinkedIn, Twitter, Instagram, Reddit, Imgur, YouTube, Snapchat, Twitch, WeChat, Skype, WhatsApp, message boards (whether through postings or private messaging functions) and any other internet- based mechanism through which the public communicates.

8.      "Relating to," "Related to," "Concerning" and/or "Regarding," in addition to their customary and usual meanings, shall mean directly or indirectly, in whole or in part, relating to, referring to, concerning, discussing, evidencing, containing, constituting, reflecting, mentioning, assessing, characterizing, recording, describing, touching upon, summarizing, commenting on, showing, disclosing, supporting, explaining, recording, stating, memorializing, noting, analyzing, contradicting, disputing, or in any way legally, logically or factually dealing with connected to the subject matter described.

9.      "Document" is used in its broadest sense and means, without limitation, written, typed, printed, electronic, graphic or otherwise recorded material of any kind, however produced

or reproduced, whether different because of notes made thereon or otherwise, including but not limited to, and by way of example only, any advertisement, agreement, analysis, book, brochure, calendar, chart, check (front and back) or check stub, checklist, contract, cost sheet, database information, diary, electronic file, email, facsimile, filing, financial report, graph, guideline, handbook, index, instant message, invoice, ledger, letter or other correspondence, license, log, memorandum, microfilm, minutes, motion picture film, notebook, notes (handwritten, typed or otherwise), opinion, pamphlet, paper, picture, photograph, plan, policy, procedure, press release, purchase order, receipt, recording, report, statement, study, submission, summary, tabulation, talking points, tape recording, task list, telegram, telephone call record, text message, thing, timesheet, transcript of a telephone conversation, transcript of testimony, travel record, video, voice message or recording, work paper, data compilation, including but not limited to computer data stored on a USB drive, external hard drive, compact disc, computer disk or other memory unit containing such data from which information can be obtained or translated into usable form, translations or summaries of foreign language documents and all similar recorded material. Each non-identical document is a distinct document, including every such original, copy, draft and version of a document, whether or not any form of the document in question is ever disclosed, sent or transmitted. A Document further includes any enclosure, exhibit, annex, appendix, schedule or other attachment, whether by staple, clip, rubber band, binding or other means, and all appended or embedded links or files.

10.     "Person" means, without limitation, any individual, corporation, business trust, estate, trust, partnership, limited liability company, association, joint venture, public corporation, group, organization or any other legal or commercial entity, including each and all of its current and former parents, owners, subsidiaries, affiliates, divisions, predecessors, successors,

employees, managers, officers, directors, shareholders, partners, general partners, limited partners, members, agents, representatives, attorneys, accountants, consultants, independent contractors or any other person or entity acting, or purporting to act, with or on behalf of any of the foregoing, including but not limited to, and by way of example only, persons residing, conducting business, established or incorporated in Mexico or the United States.

11.     "Defendants" means Pediatrix Medical Group, Inc., MEDNAX Services, Inc., and MEDNAX, Inc., including each and all of their current and former parents, owners, subsidiaries, affiliates, divisions, predecessors, successors, employees, managers, officers, directors, shareholders, partners, general partners, limited partners, members, agents, representatives, attorneys, accountants, consultants, independent contractors or any other person or entity acting, or purporting to act, with or on behalf of any of the foregoing.

12.     "You" or "Your" means the subject(s) responding to each Interrogatory, including each Plaintiff and any entity or individual encompassed in the preceding definition of the term "Aetna."

13.     The terms "all," "any" and "each" shall be construed broadly and mean all, any and each as necessary so as to bring within the scope of an Interrogatory all responses that otherwise could be construed to be outside of its scope.

14.     The terms "and" and "or" shall be construed either disjunctively or conjunctively as necessary so as to bring within the scope of an Interrogatory all responses that might otherwise be construed to be outside of its scope.

15.     "Including" means "including, without limitation" or "including, but not limiting to."

16.     "Identify" (with respect to Documents) means to give, to the extent known, the

(i) type of Document; (ii) general subject matter; (iii) date of the Document and (iv) author(s), addressee(s) and recipient(s).

17.     "Identify" (with respect to natural persons) means to give, to the extent known,  the person's full name and present or last known address.

18.     "Identify" (with respect to entities) means to give, to the extent known, its full legal name, the address of its primary place of business, the state where it is registered, incorporated, or was otherwise formed, and the name and address of its registered agent for service.

19.     The use of the singular of any word includes the plural and vice versa as necessary so as to bring within the scope of an Interrogatory all responses that might otherwise be construed to be outside of its scope.

20.     The use of the past tense includes the present tense unless otherwise explicitly delimited.

21.     The use of defined terms in these Interrogatories apply whether or not they are capitalized.

## INSTRUCTIONS

1.     In answering the Interrogatories, You are requested to furnish all information known or available to You, and within your care, custody, or control, regardless of whether this information is possessed directly by You, Your agents, or Your representatives.

2.     If any of the Interrogatories cannot be answered in full, answer to the extent possible, specifying the reasons for Your inability to answer the remainder.

3.     If any Interrogatory is only partially answered, You should state whatever information, knowledge, or belief You do have concerning the unanswered portion.

4.      The Interrogatories are continuing in nature.  If, after answering the Interrogatories, You obtain or become aware of any further responsive information, You are required to make a supplemental answer to the Interrogatory.

5.      If any information requested by the Interrogatory is claimed to be immune from discovery on the grounds of privilege, the basis of the privilege should be specified to the extent and in the manner required by the Federal Rules of Civil Procedure.

6.      If the information provided in an Interrogatory answer is not within the personal knowledge of the affiant, state the name of each person to whom the information is a matter of personal knowledge, if known.

## **INTERROGATORIES**

### INTERROGATORY NO. 1

In addition to those identified in Defendants' or Plaintiffs' Initial Rule 26 Disclosures, Identify each Person that may have knowledge of, or who may be in possession of Documents or Communications relevant to, the allegations in the Complaint.  For each individual or entity identified, provide a brief summary of the facts which they may have knowledge of or the subject matter of the Documents or Communications they may possess, and specifically indicate whether Persons identified:

    a.      may have knowledge of or may possess Documents or Communications concerning the preparation or interpretation of any regression or statistical analyses regarding (whether supporting, rebutting, or contradicting) the allegations in the Complaint;

    b.      were involved in any internal Aetna discussions regarding Defendants' billing practices or related misconduct alleged in the Complaint;

    c.      were employed by You to investigate the Defendants in connection with the allegations in the Complaint, including by identifying and/or contacting any of Defendants' or their former or current affiliated practice groups' current or former employees;

d.      which individuals and, if applicable, the entities they were employed, retained by, or associated with, who first discovered any of the misconduct alleged in the Complaint.

INTERROGATORY NO. 2

Identify each instance of overbilling, improper coding, ordering of unnecessary tests, or any other misconduct You claimed occurred during the time covered by the Complaint, and for each identify:

a. the date the claim was submitted;
b. the Aetna entity or employer self-funded, employer established health plan the claim was submitted to;
c. the date the care was provided;
d. the patient, provider, and physician group associated with the claim;
e. the reason the claim was allegedly improper;
f. the amount by which the claim was allegedly overbilled;
g. the manner by which and amount each claim should have been billed according to Aetna;
h. how Aetna determined the claim was improper.

INTERROGATORY NO. 3

Identify all software (including, but not limited to, the Fraud and Abuse Management System or Aetna Standard Table), written policies and procedures, training materials, data analytic tools, and audit tools utilized by Aetna to analyze, identify, or detect overbilling, improper coding, fraud, or abuse for the time period at issue in Aetna's Complaint.

INTERROGATORY NO. 4

Identify every instance in which overbilling, improper coding, fraud, or abuse was detected by the software, written policies and procedures, training materials, data analytic tools, or audit tools described in response to Interrogatory No. 3.  For each such instance, identify any work papers, findings, results, and internal or external conclusions generated as a result of all such discoveries, whether any such instance resulted in cases being opened or assigned to a Special Investigations Unit investigator, and, if so, what the outcome of those investigations were.

INTERROGATORY NO. 5

Identify any current or former employees of Defendants, or of their current or former affiliates or physician groups, including the "physician in Pennsylvania" referenced in paragraph 41 of the Complaint, who Aetna, or any entity or Person acting on Aetna's behalf, communicated with concerning any matter alleged in the Complaint.  For each such individual , describe the date, time, manner (whether verbal or written), and substance of any such Communications, Identify the name of the individual acting on Aetna's behalf who participated in the communication,  describe any information provided to Aetna concerning any matter alleged in the Complaint, and Identify any Documents exchanged between Aetna and such Person.

INTERROGATORY NO. 6

Between 2006 and present, state whether you, or anyone acting on your behalf, has accused any Persons, entities, or companies (including, but not limited to, physicians, pharmacies, laboratories, hospitals, medical clinics, and any other healthcare providers) of intentionally overbilling, ordering unnecessary testing, fraud, or any other misconduct similar to that alleged in the Complaint.  For each instance, state when the accusation was made, whether a litigation and/or settlement of the dispute occurred (and the caption of any litigation, and the date, terms, and amount of any settlement), Identify the Persons, entities, or companies involved, and which, if any, Aetna considers to be Defendants' competitors, and state whether the accusations were discovered or supported by any regression analyses or statistical analyses.

DATED:  November 30, 2018

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**


By:  __*/s/* Luke Nikas_____

LUKE NIKAS
lukenikas@quinnemanuel.com
MICHAEL B. CARLINSKY
michaelcarlinsky@quinnemanuel.com

51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849 7000
Fax: (212) 849 7100


**CONRAD O'BRIEN PC**
HOWARD M. KLEIN
Pennsylvania Bar No. 33632
hklein@conradobrien.com
ROBERT N. FELTOON
Pennsylvania Bar No. 58197
rfeltoon@conradobrien.com
ANDREW K. GARDEN
Pennsylvania Bar No. 314708
agarden@conradobrien.com

Centre Square West Tower
1500 Market Street, Suite 3900
Philadelphia, PA 19102-2100
Telephone: (215) 864-9600
Fax: (215) 864-9620


*Attorneys for Defendants Pediatrix Medical Group, Inc.,*
*MEDNAX Services, Inc., and MEDNAX, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on this 30th day of November, 2018, the foregoing was served on all counsel of record via email and, in addition, was also sent to counsel for Plaintiffs via overnight delivery service.

*/s/* Michael Pemstein

# EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| AETNA INC., AETNA HEALTH, INC., AETNA HEALTH MANAGEMENT LLC AND AETNA LIFE INSURANCE COMPANY, | |
| Plaintiffs, | CIVIL ACTION |
| v. | |
| MEDNAX, INC., PEDIATRIX MEDICAL GROUP, INC. AND MEDNAX SERVICES, INC., | No. 18-2217 |
| Defendants. | |

**DEFENDANTS' NOTICE OF RULE 30(b)(6) DEPOSITION OF AETNA PLAINTIFFS**

PLEASE TAKE NOTICE THAT, pursuant to Rules 26 and 30(b)(6) of the Federal Rules of Civil Procedure, Defendants shall take the deposition upon oral examination of Plaintiffs Aetna Inc., Aetna Health, Inc., Aetna Health Management, LLC, and Aetna Life Insurance Company (collectively, the "Aetna Plaintiffs"). As required by Rule 30(b)(6), the Aetna Plaintiffs shall designate one or more officers, director, agents, employees, or other persons to testify concerning the topics identified in Schedule A. The deposition(s) will be recorded by stenographic and videographic means and take place at a mutually agreeable time at Conrad O'Brien PC, Centre Square West, 1500 Market Street, Suite 3900, Philadelphia, PA 19102.

PLEASE TAKE FURTHER NOTICE THAT, the Aetna Plaintiffs shall provide the name(s) and title(s) of the designee(s) at least ten (10) business days prior to the deposition and shall identify the topic(s) on which the designee(s) will testify.

Dated:   November 27, 2019

 /s/ Gary A. Orseck

ROBBINS, RUSSELL, ENGLERT, ORSECK,
    UNTEREINER & SAUBER
Gary A. Orseck*
Alison C. Barnes*
Jennifer S. Windom*
William J. Trunk*
2000 K St., NW, 4th Floor
Washington, D.C. 20006
Ph: (202) 775-4500
Fax: (202) 775-4510
Email: gorseck@robbinsrussell.com
        abarnes@robbinsrussell.com
        jwindom@robbinsrussell.com
        wtrunk@robbinsrussell.com

LASH & GOLDBERG LLP
Martin B. Goldberg*
Lorelei J. Van Wey*
Jonathan E. Feuer*
100 Southeast 2nd Street
Miami, FL 33131
Ph: (305) 347-4040
Email: mgoldberg@lashgoldberg.com
        lvanwey@lashgoldberg.com
        jfeuer@lashgoldberg.com

 * Admitted Pro Hac Vice

*Attorneys for Defendants Mednax, Inc.,
Pediatrix Medical Group, Inc., and Mednax
Services, Inc.*

CONRAD O'BRIEN PC
Howard M. Klein (No. 33632)
Robert N. Feltoon (No. 58197)
Andrew K. Garden (No. 314708)
Centre Square West Tower
1500 Market Street, Suite 3900
Philadelphia, PA 19102-2100
Ph: (215) 864-9600
Fax: (215) 864-9620
Email: hklein@conradobrien.com
        rfeltoon@conradobrien.com
        agarden@conradobrien.com

**SCHEDULE A**

**DEFINITIONS**

1.      "Action" means the above-captioned matter.

2.      "Aetna" or "Plaintiffs" mean the plaintiffs in this Action and each and all of their current and former parents, owners, subsidiaries, affiliates, divisions, predecessors, successors, employees, managers, officers, directors, shareholders, partners, general partners, limited partners, members, agents, representatives, attorneys, accountants, consultants, independent contractors or any other Person or entity acting, or purporting to act, with or on behalf of any of the foregoing, as well as all employer-established health plans administered by Plaintiffs.

3.      "August Data Production" refers to the information contained in AETNA17648-17652, and produced by Aetna in this Action on August 6, 2019.

4.      "Complaint" means the Complaint filed by Aetna on April 25, 2018 and subsequently removed to the United States District Court for the Eastern District of Pennsylvania, captioned *Aetna, Inc. et al. v. MEDNAX, Inc., et al.*, Civil Action No. 18-2217.

5.      "Communication" means the transmission of information of any kind, in any form and by any means, including but not limited to, and by way of example only, any admission, denial, agreement, contract, conversation, discussion, inquiry, meeting, memorandum, minutes, negotiation, notes (handwritten, typed or otherwise), report, statement, submission, talking points, understanding or any other direct or indirect disclosure in any form, including but not limited to audio, video, digital, electronic, social media (whether through postings or private messaging functions), oral or paper form, and any draft communication in such form, whether or not the communication was ever disclosed, sent or transmitted.

3

6.      "Defendants" or "Mednax" means MEDNAX, Inc., MEDNAX Services, Inc., and Pediatrix Medical Group, Inc., including each and all of their current and former parents, owners, subsidiaries, affiliates, divisions, predecessors, successors, employees, managers, officers, directors, shareholders, partners, general partners, limited partners, members, agents, representatives, attorneys, accountants, consultants, independent contractors or any other Person or entity acting, or purporting to act, with or on behalf of any of the foregoing.

7.      "Document" or "Documentation" is used in its broadest sense and means, without limitation, written, typed, printed, electronic graphic or otherwise recorded material of any kind, however produced or reproduced, whether different because of notes made thereon or otherwise, including but not limited to, and by way of example only, any advertisement, agreement, analysis, book, brochure, calendar, chart, check (front and back) or check stub, checklist, contract, cost sheet, database information, diary, electronic file, email, facsimile, filing, financial report, graph, guideline, handbook, index, instant message, invoice, ledger, letter or other correspondence, license, log, memorandum, microfilm, minutes, motion picture film, notebook, notes (handwritten, typed or otherwise), opinion, pamphlet, paper, picture, photograph, plan, policy, procedure, press release, purchase order, receipt, recording, report, statement, study, submission, summary, tabulation, talking points, tape recording, task list, telegram, telephone call record, text message, thing, timesheet, transcript of a telephone conversation, transcript of testimony, travel record, video, voice message or recording, work paper, data compilation, including but not limited to computer data stored on a USB drive, external hard drive, compact disc, computer disk or other memory unit containing such data from which information can be obtained or translated into usable form, translations or summaries of foreign language documents and all similar recorded material. Each non-identical document is a distinct document, including every such original, copy, draft and

4

version of a document, whether or not any form of the document in question is ever disclosed, sent or transmitted. A Document further includes any enclosure, exhibit, annex, appendix, schedule or other attachment, whether by staple, clip, rubber band, binding or other means, and all appended or embedded links or files.

8.      "Including" means "including, without limitation" or "including, but not limited to."

9.      "Identity" (with respect to persons) means, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment.

10.     "Identity" (with respect to software, systems, processes, tools, and other content) means, to the extent known, the name of the content, the date and method of release or publication, the geographic extent of availability, and the associated system platform(s).

11.     "March Data Production" refers to the information contained in AETNA000001, and produced by Aetna in this Action on March 18, 2019.

12.     "NICU" means neonatal intensive care unit.

13.     "Person" means any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

14.     "Relating to," "Related to," "Concerning," and/or "Regarding," in addition to their customary and usual meanings, shall mean directly or indirectly, in whole or in part, relating to, referring to, concerning, discussing, evidencing, containing, constituting, reflecting, mentioning, assessing, characterizing, recording, describing, touching upon, summarizing, commenting on, showing, disclosing, supporting, explaining, recording, stating, memorializing, noting, analyzing, contradicting, disputing, or in any way legally, logically, or factually dealing with or connected to the subject matter described.

15.     "SIU" means Aetna's Special Investigations Unit.

16.     The terms "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the deposition all responses that might otherwise be construed to be outside of its scope.

17.     The terms "all," "any," and "each" shall each be construed as encompassing any and all.

18.     Wherever appropriate, verb tenses shall be interpreted to include past, present, and future tenses.

19.     References to a gender shall be interpreted to include the masculine, feminine, and neuter.

20.     The use of the singular form of any word includes the plural and vice versa.

21.     The use of defined terms in this Notice apply whether or not they are capitalized.

22.     The timeframe for each of the below Topics shall be between January 1, 2010, through November 9, 2017, unless otherwise specified.

## TOPICS

1.      Aetna's claims handling, review, and payment policies, practices, and procedures applicable to the claims at issue in this Action and to NICU claims generally.

2.      The identity and operation of all Aetna departments, business units, committees, employees, and independent contractors involved in Aetna's handling, review, and payment of the claims at issue in this Action.

3.      The location(s) where Aetna's procedures with respect to claims handling, review, and payment are performed.  To the extent those procedures are performed in different locations, the focus of this Topic is on the claims at issue in this Action.

4.      The identity and operation of the software systems Aetna uses to process, authorize, adjudicate, and pay claims; validate the necessity of medical treatment; flag medical providers rendering inappropriate or unnecessary care; conduct utilization review; and implement front-end edits to avoid overpayments, overbilling, and fraud with respect to medical claims.  This Topic includes but is not limited to ClaimsXten, ClaimFacts (Automatic Claim Adjudication System), ClaimCheck, Aetna Standard Table, MedQuery, and ActiveHealth.

5.      The standards, policies, and procedures applicable to any clinical review by Aetna of the claims at issue in this Action, and of NICU claims generally, including the software or databases used to conduct or manage such reviews, and any documentation generated as part of such reviews.

6.      The identity and operation of all Aetna departments, business units, committees, employees, and independent contractors involved in any clinical review of the claims at issue in this Action, and of NICU claims generally.  This Topic includes but is not limited to the Clinical

Claim Review unit, Claim Quality unit, Quality Management unit, and utilization management and review.

7.     The standards, policies, and procedures applicable to Aetna's review of any provider's medical records or other clinical data to determine the propriety of a provider's CPT coding, including the Aetna personnel, software, and databases, if any, that are utilized to conduct or manage these reviews.

8.     A description of Aetna's coding audit process and any documentation generated during that process, including but not limited to audit workpapers and audit findings, concerning the claims at issue in this Action and NICU claims generally.

9.     Aetna's policies, practices, and procedures relating to the detection, identification, investigation, prevention, and recoupment of overbilling, overpayment, improper coding, unnecessary medical care, or fraud by providers, applicable to the claims at issue in this Action and to NICU claims generally.

10.     The identity and operation of all software, systems, processes, and tools, and all programs and metrics that Aetna uses or has used to detect, identify, investigate, prevent, and recoup overbilling, overpayment, improper coding, unnecessary medical care, or fraud with respect to medical claims.  This Topic includes but is not limited to the Fraud and Abuse Management System, Aetna Data Science, Microsoft SQL Server Management and SAS for Windows, SAP Business Objects Crystal reports, Universal Web Information Delivery, and the product provided by Verisk Health referenced in Plaintiffs' Objections and Supplemental Responses to Defendants' Interrogatories, dated May 31, 2019.

8

11.     The identity and operation of all Aetna departments, business units, committees, employees, and independent contractors involved in the detection of improper coding, unnecessary medical care, or fraud with respect to the claims at issue in this Action, and NICU claims generally.

12.     The location(s) where Aetna's procedures with respect to the detection of improper coding, unnecessary medical care, or fraud with respect to the claims at issue in this Action, and NICU claims generally, are performed.  This includes but is not limited to the location(s) of Aetna's SIU.

13.     Any efforts that Aetna has made, outside of this lawsuit, to recoup payments made to Mednax or any of its affiliated entities or employees relating to the claims at issue in this Action.

14.     Any reports, profiles, or analyses of Mednax's billing practices, coding, or billing profile created or reviewed by Aetna, including but not limited to Aetna's SIU and Medical Cost Analytics unit.

15.     All SIU cases and informal inquiries concerning Mednax or Mednax-affiliated providers conducted by Aetna from 2010 – 2018.

16.     The identity and operation of all Aetna departments, business units, committees, employees, and independent contractors involved in negotiating contracts or reimbursement rates with Mednax.

17.     The identity of any person with whom Aetna, including its counsel, investigators, or any other representative, has spoken about this Action, Mednax's NICU billing practices, or any of the allegations in the Complaint.  This includes but is not limited to current and former Mednax employees, current and former Mednax affiliates, and the Office of Inspector General or other governmental agencies.

18.     The April 2014 analysis referenced in Aetna's response to Mednax's Interrogatory No. 10, including the type of analysis, the data upon which the analysis was based, the identity of the preparer of the analysis, the reason(s) the analysis was prepared, the date on which the analysis was communicated to Aetna, the identity of the person(s) at Aetna to whom it was communicated, and the means of that communication.

19.     The date(s) on which Aetna claims to have discovered the alleged fraud referenced in the Complaint, and all facts which led to the purported discovery.

20.     The data source(s) for the March Data Production, including but not limited to the data collection methodology, the queries run on the data source(s), the individuals involved in the process of data collection and analysis, and how the source database(s) function.

21.     The data source(s) for the August Data Production, including but not limited to the data collection methodology, the queries run on the data source(s), the individuals involved in the process of data collection and analysis, and how the source database(s) function.

22.     The identity of the self-funded plans on whose behalf Aetna alleges (including at Paragraph 22 of the Complaint) that it is authorized to bring this Action.

23.     The particular claims that Aetna alleges in this Action are fraudulent, including the number of claims for each year at issue in this Action, the total dollar amount of claims for each year at issue in this Action, and the allocation of those claims between claims paid by Aetna directly and claims paid by self-funded plans.

24.     The calculation of the "approximately $2,400 per episode of care" by which Aetna alleges Mednax billings exceed non-Mednax billings (Complaint ¶ 44) and the "[a]ctual damages in excess of $50,000,000" that Aetna claims (Complaint p. 15; Plaintiffs' Rule 26(a)(1)(A)(i) Initial Disclosures (July 27, 2018) p. 4).  This Topic includes but is not limited to the method for

calculating those amounts, whether and how Aetna's claimed damages are allocated across the years at issue in this Action, whether and how Aetna's calculation of its claimed damages has changed since the filing of the Complaint, and whether and how Aetna's claimed damages are allocated across various Mednax affiliate providers.

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 27th day of November, 2019, the foregoing was served on all counsel of record via email and, in addition, was also sent to counsel for Plaintiffs via overnight delivery service.

*/s/* Jennifer S.Windom

# EXHIBIT 3

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **AETNA INC.,** *et al*., | **CIVIL ACTION** |
| **Plaintiffs,** | **No. 18-2217** |
| **v.** | |
| **MEDNAX, INC.,** *et al*., | |
| **Defendants.** | |

**PLAINTIFF'S OBJECTIONS AND RESPONSES TO DEFENDANTS'
<u>INTERROGATORIES</u>**

Plaintiffs Aetna, Inc., Aetna Health, Inc., Aetna Health Management LLC and Aetna Life Insurance Company (together, "Aetna"), by and through undersigned counsel, hereby responds to the Interrogatories issued by Defendants Mednax, Inc., and Mednax Services, Inc., formerly Pediatrix Medical Group, Inc. (together, "Mednax" or "Defendants").  Aetna incorporates as if set forth fully herein the objections and reservations set forth in Exhibit 1 attached hereto.

**INTERROGATORIES**

**INTERROGATORY NO. 1**

In addition to those identified in Defendants' or Plaintiffs' Initial Rule 26 Disclosures, Identify each Person that may have knowledge of, or who may be in possession of Documents or Communications relevant to, the allegations in the Complaint. For each individual or entity identified, provide a brief summary of the facts which they may have knowledge of or the subject matter of the Documents or Communications they may possess, and specifically indicate whether Persons identified:
    a. may have knowledge of or may possess Documents or Communications concerning the preparation or interpretation of any regression or statistical analyses regarding (whether supporting, rebutting, or contradicting) the allegations in the Complaint;
    b. were involved in any internal Aetna discussions regarding Defendants' billing practices or related misconduct alleged in the Complaint;
    c. were employed by You to investigate the Defendants in connection with the allegations in the Complaint, including by identifying and/or contacting any of Defendants' or their former or current affiliated practice groups' current or former employees;

**d. which individuals and, if applicable, the entities they were employed, retained by, or associated with, who first discovered any of the misconduct alleged in the Complaint.**

**RESPONSE:** Aetna objects to this Interrogatory as including discrete subparts, such that it actually comprises five interrogatories. Aetna objects to this interrogatory as overly broad and unduly burdensome, and not proportionate to the needs of the case. Aetna further objects to the extent this interrogatory seeks the disclosure of attorney client or work product information.

Aetna objects to the request, at sub-part (b), that Aetna identify those involved in internal discussions, as seeking the disclosure of attorney client or work product information. Aetna additionally objects to the request, at sub-part (c), that Aetna identify those employed by it to investigate Defendants, as seeking the disclosure of attorney client or work product information and as seeking information that is not relevant to the parties claims or defenses. Aetna further objects to the extent that this sub-part seeks the disclosure of consultants who need not be identified under Rule 26(a) and of potential experts, whose disclosures are not yet required under Rule 26(a)(2).

Subject to and as limited by the foregoing general and specific objections, Aetna's expert witness(es) have knowledge regarding the preparation and interpretation of its statistical analysis. Aetna will identify and produce information regarding its testifying expert(s) consistent with the Court's Scheduling Order and the Rules of Civil Procedure. By way of further response, Aetna's expert, Dr. Makuch and other individuals working at his direction were involved in the discovery of the misconduct alleged in the Complaint through the results of their analysis.

**INTERROGATORY NO. 2**

**Identify each instance of overbilling, improper coding, ordering of unnecessary tests, or any other misconduct You claimed occurred during the time covered by the Complaint, and for each identify:**
**a. the date the claim was submitted;**
**b. the Aetna entity or employer self-funded, employer established health plan the claim was submitted to;**
**c. the date the care was provided;**
**d. the patient, provider, and physician group associated with the claim;**
**e. the reason the claim was allegedly improper;**
**f. the amount by which the claim was allegedly overbilled;**
**g. the manner by which and amount each claim should have been billed according to Aetna;**
**h. how Aetna determined the claim was improper.**

**RESPONSE:** Aetna objects to this Interrogatory as overly broad and unduly burdensome, and not proportionate to the needs of the case, including because the claims data sought in this Interrogatory will be contained in/on voluminous documents and need not be sought as part of a burdensome Interrogatory. Aetna further objects to this Interrogatory as seeking the production of information that is uniquely within the control of the Defendants and/or third parties, which Aetna is actively seeking in discovery.  For instance, Aetna alleges that the claims submitted by Defendants were improperly inflated, and Defendants possess information concerning their own claims and how they are generated.  Moreover, Defendants have taken the position that much of the information they seek in this Interrogatory is within the possession or control of third party hospitals.

Subject to and as limited by the foregoing general and specific objections, Aetna will be producing the claims data underlying its statistical analysis, as well as its statistical analysis.

**INTERROGATORY NO. 3**

**Identify all software (including, but not limited to, the Fraud and Abuse Management System or Aetna Standard Table), written policies and procedures, training materials, data analytic tools, and audit tools utilized by Aetna to analyze, identify, or detect overbilling, improper coding, fraud, or abuse for the time period at issue in Aetna's Complaint.**

**RESPONSE:** Aetna objects to this Interrogatory as overly broad and unduly burdensome, and not proportionate to the needs of the case. Aetna objects to this request as seeking the production of information that is not relevant to the parties' claims and defenses, as Aetna did not detect the misconduct perpetuated by Mednax and described in Aetna's Complaint through the use of fraud-detecting software. The identity of any software used by Aetna in contexts outside of this matter, if any, and/or as applied to providers other than Mednax, is not relevant to the parties' claims and defenses.

**INTERROGATORY NO. 4**

**Identify every instance in which overbilling, improper coding, fraud, or abuse was detected by the software, written policies and procedures, training materials, data analytic tools, or audit tools described in response to Interrogatory No. 3. For each such instance, identify any work papers, findings, results, and internal or external conclusions generated as a result of all such discoveries, whether any such instance resulted in cases being opened or assigned to a Special Investigations Unit investigator, and, if so, what the outcome of those investigations were.**

**RESPONSE:** Aetna incorporates its objections to Interrogatory No. 3 herein, as if set forth at length.  Aetna further objects to this Interrogatory to the extent it seeks information relating to many different types of suspected overbilling, improper

coding, fraud or abuse involving providers other than Mednax, because such conduct or misconduct of third parties is not relevant to the parties' claims and defenses in this case. The production of such information would further be disproportionate to the needs of the case. Furthermore, by implicating the protected health information ("PHI") of patients other than Mednax whose PHI is not relevant to this case, the production of such information by Aetna would violates Aetna's obligations under HIPAA, including its obligations under the minimum necessary standard.

**INTERROGATORY NO. 5**

**Identify any current or former employees of Defendants, or of their current or former affiliates or physician groups, including the "physician in Pennsylvania" referenced in paragraph 41 of the Complaint, who Aetna, or any entity or Person acting on Aetna's behalf, communicated with concerning any matter alleged in the Complaint. For each such individual, describe the date, time, manner (whether verbal or written), and substance of any such Communications, Identify the name of the individual acting on Aetna's behalf who participated in the communication, describe any information provided to Aetna concerning any matter alleged in the Complaint, and Identify any Documents exchanged between Aetna and such Person.**

**RESPONSE:** Aetna objects to this Interrogatory as overly broad and unduly burdensome, and not proportionate to the needs of the case. Aetna objects to this request as seeking the production of information that is not relevant to the parties claims and defenses. Aetna further objects to this request as seeking the disclosure of attorney work product information.

Subject to and as limited by the foregoing general and specific objections, Aetna will identify, under appropriate conditions of confidentiality, any current or former employees of Mednax or its affiliate/former affiliate practices with whom Aetna communicated regarding the matters alleged in the Complaint, and will produce any documents exchanged between that person and Aetna, if any.

**INTERROGATORY NO. 6**

**Between 2006 and present, state whether you, or anyone acting on your behalf, has accused any Persons, entities, or companies (including, but not limited to, physicians, pharmacies, laboratories, hospitals, medical clinics, and any other healthcare providers) of intentionally overbilling, ordering unnecessary testing, fraud, or any other misconduct similar to that alleged in the Complaint. For each instance, state when the accusation was made, whether a litigation and/or settlement of the dispute occurred (and the caption of any litigation, and the date, terms, and amount of any settlement), Identify the Persons, entities, or companies involved, and which, if any, Aetna considers to be Defendants' competitors, and state whether the accusations were discovered or supported by any regression analyses or statistical analyses.**

4

**Response:**     Aetna objects to this interrogatory as overly broad and unduly burdensome, and not proportionate to the needs of the case. Aetna objects to this request as seeking the production of information that is not relevant to the parties' claims and defenses. Any overbilling, ordering of unnecessary tests, fraud, or other misconduct perpetuated by providers other than Mednax is not relevant to the parties' claims and defenses. Aetna further objects to the timeframe of this request as overly burdensome, disproportionate to the needs of the case, and as seeking the production of information that is not relevant to the parties' claims and defenses. Aetna further objects because the manner in which Mednax inflates claims is presently the subject of discovery directed by Aetna to Mednax.

*/s/ Gregory S. Voshell*
Mark J. Schwemler
Gregory S. Voshell
Aimee L. Kumer
Thomas B. Helbig
ELLIOTT GREENLEAF P.C.
925 Harvest Drive, Suite 300
Blue Bell, Pennsylvania 19422

DATED:    JANUARY 16, 2019

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on January 16, 2019, I served the foregoing on all counsel of record via email.

*/s/ Gregory S. Voshell*
Gregory S. Voshell

## EXHIBIT 1
## RESERVATIONS AND OBJECTIONS

Aetna, Inc., Aetna Health, Inc., Aetna Health Management LLC and Aetna Life Insurance Company's ("Aetna") responses and objections are made without in any way waiving or intending to waive, but on the contrary preserving and intending to preserve:

The right at any time to revise, correct, supplement, clarify, or amend these responses and objections to Defendants' interrogatories;

The right to object on any ground at any time to a demand for further information, further production and/or other discovery proceedings involving or relating to the subject matter of any of the individual interrogatories;

All questions as to competency, relevancy, materiality, privilege and admissibility of evidence for any purpose in any subsequent proceedings or the trial of this or any other action;

The right to object to the use of any documents or evidence by Defendants in any subsequent proceedings or the trial of this or any other action on any ground;

The right to object on any ground to the use and/or admissibility of this response (or any part thereof) at any trial, hearing or other proceeding in this or any other action;

The right to further supplement and/or amend these responses based upon the discovery of additional information or documents.

The attorney-client, work-product and expert privileges and, accordingly, any subsequent response or production shall not constitute a waiver of said privileges;

All questions as to competency, relevancy, materiality, privilege and admissibility of evidence for any purpose in any subsequent proceedings or the trial of this or any other action.

## GENERAL OBJECTIONS

Aetna will respond to the specific interrogatory by giving the language to each interrogatory its reasonable, ordinary meaning, subject to the other objections set forth herein.

Aetna objects to each of Defendants' interrogatories to the extent that they seek discovery beyond that permitted by the Federal Rules of Civil Procedure or information or documents otherwise not discoverable under the Federal Rules.

Aetna objects to the introductory material insofar as they purport to alter, expand or otherwise modify the party's obligations under applicable Federal Rules.

Aetna objects to each of Defendants' interrogatories to the extent they seek information already in Defendants' possession, custody or control.

Aetna objects to each of Defendants' interrogatories to the extent it seeks (a) attorney work product; (b) privileged information, including, but not limited to, information or documents which are subject to the attorney-client privilege; (c) confidential and proprietary information, including trade secrets, of Aetna; and (d) privileged and confidential information relating to employee records.

Aetna objects to each of Defendants' interrogatories to the extent that the information sought is not relevant to the subject matter involved in this litigation or reasonably calculated to lead to discovery of admissible evidence.

Aetna objects to each of Defendants' interrogatories to the extent that it is overly broad, vague and ambiguous.

Aetna objects to each of Defendants' interrogatories to the extent that it is unduly burdensome, intentionally harassing and oppressive and seeks information which is within the knowledge, control and/or custody of Defendants.

Aetna objects to each of Defendants' interrogatories on the grounds that it seeks in bad faith to cause unreasonable annoyance, embarrassment, oppression, burden and expense to Aetna.

Aetna objects each of Defendants' interrogatories because additional responsive information may be determined during or after discovery.

Aetna objects to each of Defendants' interrogatories without a temporal limitation as overbroad.

Aetna objects each of Defendants' interrogatories because discovery is continuing and additional information responsive to these interrogatories may be determined during or after discovery.

## <u>RESERVATION OF RIGHT TO SUPPLEMENT</u>

Because discovery relating to the issues raised by these interrogatories is still ongoing, Aetna specifically reserves the right to supplement its responses and objections from time to time.

# EXHIBIT 4

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **AETNA, INC., *et al.*,** | : | |
| **Plaintiff,** | : | **Civil action** |
| | : | |
| **v.** | : | **No. 18-2217** |
| | : | |
| **MEDNAX, INC., *et al.*,** | : | |
| **Defendants.** | : | |
| | : | |

**AETNA'S OBJECTIONS TO MEDNAX'S NOTICE OF RULE 30(B)(6) DEPOSITION**

Plaintiffs Aetna Inc., Aetna Health, Inc., Aetna Health Management, LLC and Aetna Life Insurance Company, through counsel, submit the following objections to Defendants' Notice of Rule 30(b)(6) Deposition of Aetna Plaintiffs, and the topics for testimony therein as follows:

**RECURRING OBJECTIONS TO NOTICE**

1.      Aetna objects to the Rule 30(b)(6) Notice in its entirety, and to each category of examination included therein, to the extent the location set forth in the Rule 30(b)(6) Notice is inconvenient, burdensome, oppressive, annoying, harassing and/or improper given the work location of the likely witness who would be designated to testify on behalf of Aetna.  Aetna is willing to meet and confer with the Mednax about the location of the deposition.

2.      Aetna objects to the Rule 30(b)(6) Notice in its entirety, and to each category of examination included therein, on the grounds that each fails to set forth with reasonable particularity the matters for examination as required under Fed. R. Civ. P. 30(b)(6).

3.      Aetna objects to the Rule 30(b)(6) Notice in its entirety, and to each category of examination included therein, to the extent that each seeks to impose discovery obligations upon the deponent that are broader than, or inconsistent with, the Federal Rules of Civil Procedure,

the Local Rules of the Eastern District of Pennsylvania, and/or any other applicable state, federal or local court rules.

4.      Aetna objects to the Rule 30(b)(6) Notice in its entirety, and to each category of examination included therein, to the extent that each calls for the disclosure of information protected by the attorney-client privilege and/or attorney work product doctrine and/or any other applicable privilege or immunity.

5.      Aetna objects to the Rule 30(b)(6) Notice in its entirety, and to each category of examination included therein, to the extent that each seeks information that is private, personal, confidential, sensitive or proprietary or that constitutes a trade secret. Aetna further objects to the Rule 30(b)(6) Notice in its entirety, and to each category of examination included therein, to the extent that each seeks protected health information. If such information is provided, it will be subject to the protective order that has been entered in this case.

6.      Aetna objects to the Rule 30(b)(6) Notice in its entirety, and to each category of examination included therein, to the extent that each calls for the disclosure of information the release of which would be a violation of any right of privacy under the United States Constitution, Article I or any other constitutional, statutory, or common law right of privacy.

7.      Aetna objects to the Rule 30(b)(6) Notice in its entirety, and to each category of examination included therein, to the extent it seeks the personal and private information of Aetna's present and former employees and/or third parties which is protected by a right to privacy under applicable state and/or federal law, which Aetna is not authorized to waive, there is no reason to compel the disclosure of such irrelevant and immaterial information when weighed against the interests of Aetna and other parties, and Mednax have not made any showing establishing a right to obtain such information.

2

8.      Aetna objects to the Rule 30(b)(6) Notice in its entirety, and to each category of examination included therein, to the extent that each calls for information that is not relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

9.      Aetna objects to the Rule 30(b)(6) Notice in its entirety, and to each category of examination included therein, to the extent that each purports to require Aetna or the deponent to obtain information outside of their possession, custody, or control.

10.     Aetna objects to the Rule 30(b)(6) Notice in its entirety, and to each category of examination included therein, to the extent that each seeks to require Aetna or the deponent to testify about information that is not reasonably available.

11.     Aetna objects to the Rule 30(b)(6) Notice in its entirety, and to each category of examination included therein, to the extent that each is argumentative, lacks foundation, and assumes facts not in evidence.

12.     Aetna objects to the Rule 30(b)(6) Notice in its entirety, and to each category of examination included therein, to the extent that each is vague, ambiguous, compound and does not describe the material sought with sufficient particularity.

13.     Aetna objects to the Rule 30(b)(6) Notice in its entirety, and to each category of examination included therein, to the extent that each calls for information that is publicly available or equally available to Mednax.

14.     Aetna objects to the Rule 30(b)(6) Notice in its entirety, and to each category of examination included therein, to the extent that each is overbroad, unduly burdensome, oppressive, and harassing.

15.     Aetna objects to the Rule 30(b)(6) Notice in its entirety, and to each category of examination included therein, to the extent they are overbroad in time and scope and/or seek information that is neither relevant to the subject matter of the litigation nor reasonably calculated to lead to the discovery of admissible evidence.

Aetna has not yet completed its investigation of the facts, and the Parties have not yet completed discovery. Consequently, the foregoing objections are given without prejudice to Aetna's right to amend these objections and/or to further object to the Notice, and each category included therein.

## SPECIFIC OBJECTIONS TO AREAS OF EXAMINATION

**Topic 1:  Aetna's claims handling, review, and payment policies, practices, and procedures applicable to the claims at issue in this Action and to NICU claims generally.**

RESPONSE:  In addition to Aetna's Recurring Objections set forth above, which are incorporated herein by reference as though set forth in full herein, Aetna objects to this topic on grounds that it is unduly burdensome, overbroad, oppressive, harassing, seeks information that is not relevant and/or not proportionate to the needs of the case, and fails to designate with reasonable particularity the matters on which examination is requested.  Aetna objects to this topic as seeking information from expert witnesses protected from disclosure under Federal Rule of Civil Procedure 26(b).  Aetna objects to this topic as seeking information which the Court has already found irrelevant and/or not discoverable.

**Topic 2:  The identity and operation of all Aetna departments, business units, committees, employees, and independent contractors involved in Aetna's handling, review, and payment of the claims at issue in this Action.**

4

RESPONSE:  In addition to Aetna's Recurring Objections set forth above, which are incorporated herein by reference as though set forth in full herein, Aetna objects to this topic on grounds that it is unduly burdensome, overbroad, oppressive, harassing, seeks information that is not relevant and/or not proportionate to the needs of the case, and fails to designate with reasonable particularity the matters on which examination is requested.  For instance, Mednax's request a designee identify "all Aetna departments, business units, committees, employees, and independent contractors" involved in "handling, review, and payment" of claims is over burdensome and overbroad and not relevant and/or not proportionate to the needs of the case. Aetna objects to this topic as seeking information "relating to the claims at issue in this Action," as such claims can only be identified after Defendants have complied with existing court orders, the parties have completed discovery, and through the opinions or testimony of expert witnesses, which is currently protected from disclosure under Federal Rule of Civil Procedure 26(b).  Aetna objects to this topic as seeking information which the Court has already found irrelevant and/or not discoverable.

**Topic 3:  The location(s) where Aetna's procedures with respect to claims handling, review, and payment are performed. To the extent those procedures are performed in different locations, the focus of this Topic is on the claims at issue in this Action.**

RESPONSE:  In addition to Aetna's Recurring Objections set forth above, which are incorporated herein by reference as though set forth in full herein, Aetna objects to this topic on grounds that it is unduly burdensome, overbroad, oppressive, harassing, seeks information that is not relevant and/or not proportionate to the needs of the case, and fails to designate with reasonable particularity the matters on which examination is requested.  For instance, requiring a corporate designee identify all physical locations of where Aetna performs its "claims handling, review, and payment" is not relevant to this matter and/or not proportionate to the needs of the

case. Aetna objects to this topic as seeking information "relating to the claims at issue in this Action," as such claims can only be identified after Defendants have complied with existing court orders, the parties have completed discovery, and through the opinions or testimony of expert witnesses, which is currently protected from disclosure under Federal Rule of Civil Procedure 26(b). Aetna objects to this topic as seeking information which the Court has already found irrelevant and/or not discoverable.

**Topic 4: The identity and operation of the software systems Aetna uses to process, authorize, adjudicate, and pay claims; validate the necessity of medical treatment; flag medical providers rendering inappropriate or unnecessary care; conduct utilization review; and implement front-end edits to avoid overpayments, overbilling, and fraud with respect to medical claims. This Topic includes but is not limited to ClaimsXten, ClaimFacts (Automatic Claim Adjudication System), ClaimCheck, Aetna Standard Table, MedQuery, and ActiveHealth.**

RESPONSE: In addition to Aetna's Recurring Objections set forth above, which are incorporated herein by reference as though set forth in full herein, Aetna objects to this topic on grounds that it is unduly burdensome, overbroad, oppressive, harassing, seeks information that is not relevant and/or not proportionate to the needs of the case, and fails to designate with reasonable particularity the matters on which examination is requested. Aetna's software systems used to analyze claims unrelated to the claims at issue is not relevant and/or not proportionate to the needs of the case. Aetna further objects to this topic as seeking information which the Court has already found irrelevant and/or undiscoverable. Aetna's processes and software relating to routine claims processing and payment, utilization review, routine medical necessity review, and detecting routine overpayments or overbilling is not relevant to this matter.

Subject to and as limited by the foregoing general and specific objections, Aetna will produce a witness to testify regarding the software systems it uses to detect fraud with respect to medical claims.

6

**Topic 5:  The standards, policies, and procedures applicable to any clinical review by Aetna of the claims at issue in this Action, and of NICU claims generally, including the software or databases used to conduct or manage such reviews, and any documentation generated as part of such reviews.**

RESPONSE:  In addition to Aetna's Recurring Objections set forth above, which are incorporated herein by reference as though set forth in full herein, Aetna objects to this topic on grounds that it is unduly burdensome, overbroad, oppressive, harassing, seeks information that is not relevant and/or not proportionate to the needs of the case, and fails to designate with reasonable particularity the matters on which examination is requested.  Aetna's clinical review of claims at issue in this Action and of NICU claims generally is not at issue and this topic of information is not relevant and/or not proportionate to the needs of the case. Aetna objects to this topic as seeking information "relating to the claims at issue in this Action," as such claims can only be identified after Defendants have complied with existing court orders, the parties have completed discovery, and through the opinions or testimony of expert witnesses, which is currently protected from disclosure under Federal Rule of Civil Procedure 26(b).

**Topic 6:  The identity and operation of all Aetna departments, business units, committees, employees, and independent contractors involved in any clinical review of the claims at issue in this Action, and of NICU claims generally. This Topic includes but is not limited to the Clinical Claim Review unit, Claim Quality unit, Quality Management unit, and utilization management and review.**

RESPONSE:  In addition to Aetna's Recurring Objections set forth above, which are incorporated herein by reference as though set forth in full herein, Aetna objects to this topic on grounds that it is unduly burdensome, overbroad, oppressive, harassing, seeks information that is not relevant and/or not proportionate to the needs of the case, and fails to designate with reasonable particularity the matters on which examination is requested.  Aetna's clinical review of "claims at issue in this Action" and of NICU claims generally is not at issue and this topic of information is not relevant and/or not proportionate to the needs of the case. Aetna objects to this

7

topic as seeking information "relating to the claims at issue in this Action," as such claims can only be identified after Defendants have complied with existing court orders, the parties have completed discovery, and through the opinions or testimony of expert witnesses, which is currently protected from disclosure under Federal Rule of Civil Procedure 26(b).

**Topic 7: The standards, policies, and procedures applicable to Aetna's review of any provider's medical records or other clinical data to determine the propriety of a provider's CPT coding, including the Aetna personnel, software, and databases, if any, that are utilized to conduct or manage these reviews.**

RESPONSE: In addition to Aetna's Recurring Objections set forth above, which are incorporated herein by reference as though set forth in full herein, Aetna objects to this topic on grounds that it is unduly burdensome, overbroad, oppressive, harassing, seeks information that is not relevant and/or not proportionate to the needs of the case, and fails to designate with reasonable particularity the matters on which examination is requested. Aetna's "standards, policies, and procedures" relating to its review "of any provider's medical records or other clinical data" is overbroad, oppressive, not relevant to this case, and not proportionate to the needs of the case. Aetna objects to this topic as seeking information which the Court has already found irrelevant and/or not discoverable.

**Topic 8: A description of Aetna's coding audit process and any documentation generated during that process, including but not limited to audit workpapers and audit findings, concerning the claims at issue in this Action and NICU claims generally.**

RESPONSE: In addition to Aetna's Recurring Objections set forth above, which are incorporated herein by reference as though set forth in full herein, Aetna objects to this topic on grounds that it is unduly burdensome, overbroad, oppressive, harassing, seeks information that is not relevant and/or not proportionate to the needs of the case, and fails to designate with reasonable particularity the matters on which examination is requested. Aetna objects to this topic as seeking information "relating to the claims at issue in this Action," as such claims can

8

only be identified after Defendants have complied with existing court orders, the parties have completed discovery, and through the opinions or testimony of expert witnesses, which is currently protected from disclosure under Federal Rule of Civil Procedure 26(b).

**Topic 9:   Aetna's policies, practices, and procedures relating to the detection, identification, investigation, prevention, and recoupment of overbilling, overpayment, improper coding, unnecessary medical care, or fraud by providers, applicable to the claims at issue in this Action and to NICU claims generally.**

RESPONSE:  In addition to Aetna's Recurring Objections set forth above, which are incorporated herein by reference as though set forth in full herein, Aetna objects to this topic on grounds that it is unduly burdensome, overbroad, oppressive, harassing, seeks information that is not relevant and/or not proportionate to the needs of the case, and fails to designate with reasonable particularity the matters on which examination is requested.  Aetna objects to this topic to the extent it seeks information unrelated to the claims at issue in this case. Aetna objects to this topic as seeking information "relating to the claims at issue in this Action," as such claims can only be identified after Defendants have complied with existing court orders, the parties have completed discovery, and through the opinions or testimony of expert witnesses, which is currently protected from disclosure under Federal Rule of Civil Procedure 26(b). Aetna objects to the request for information related to recoupment of overbilling, overpayment, improper coding, and unnecessary medical care, as nothing more than discovery regarding routine claims processing and routine overpayments.  Aetna objects to this topic as seeking information which the Court has already found irrelevant and/or undiscoverable.

Subject to and as limited by the foregoing general and specific objections, Aetna will produce a witness to testify regarding its policies, practices and procedures relating to the detection and investigation of fraud by providers.

**Topic 10:  The identity and operation of all software, systems, processes, and tools, and all programs and metrics that Aetna uses or has used to detect, identify, investigate, prevent, and recoup overbilling, overpayment, improper coding, unnecessary medical care, or fraud with respect to medical claims. This Topic includes but is not limited to the Fraud and Abuse Management System, Aetna Data Science, Microsoft SQL Server Management and SAS for Windows. SAP Business Objects Crystal reports, Universal Web Information Delivery, and the product provided by Verisk Health referenced in Plaintiffs' Objections and Supplemental Responses to Defendants' Interrogatories, dated May 31, 2019.**

RESPONSE:  In addition to Aetna's Recurring Objections set forth above, which are incorporated herein by reference as though set forth in full herein, Aetna objects to this topic on grounds that it is unduly burdensome, overbroad, oppressive, harassing, seeks information that is not relevant and/or not proportionate to the needs of the case, and fails to designate with reasonable particularity the matters on which examination is requested.  Aetna objects to this topic to the extent it seeks information unrelated to the claims at issue in this case.  This topic is overbroad and oppressive in seeking Aetna's "software, systems, processes, and tools, and all programs and metrics" Aetna "used or has used" to detect, investigate and prevent overbilling, unnecessary, or improper billing.  Aetna objects to this topic as seeking information which the Court has already found irrelevant and/or undiscoverable.

Subject to and as limited by the foregoing general and specific objections, Aetna will produce a witness to testify regarding its software, systems, processes, tools, programs and metrics used to detect and investigate prevent fraud by providers.

**Topic 11:  The identity and operation of all Aetna departments, business units, committees, employees, and independent contractors involved in the detection of improper coding, unnecessary medical care, or fraud with respect to the claims at issue in this Action, and NICU claims generally.**

RESPONSE:  In addition to Aetna's Recurring Objections set forth above, which are incorporated herein by reference as though set forth in full herein, Aetna objects to this topic on grounds that it is unduly burdensome, overbroad, oppressive, harassing, seeks information that is

not relevant and/or not proportionate to the needs of the case, and fails to designate with reasonable particularity the matters on which examination is requested.  Aetna objects to this topic to the extent it seeks information unrelated to the claims at issue in this case. Aetna objects to this topic as seeking information "relating to the claims at issue in this Action," as such claims can only be identified after Defendants have complied with existing court orders, the parties have completed discovery, and through the opinions or testimony of expert witnesses, which is currently protected from disclosure under Federal Rule of Civil Procedure 26(b).   Aetna objects to this topic as seeking information which the Court has already found irrelevant and/or undiscoverable.

Subject to and as limited by the foregoing general and specific objections, Aetna will produce a witness to testify regarding its department/business unit involved in the detection of fraud.

**Topic 12:  The location(s) where Aetna's procedures with respect to the detection of improper coding, unnecessary medical care, or fraud with respect to the claims at issue in this Action, and NICU claims generally, are performed. This includes but is not limited to the location(s) of Aetna's SIU.**

RESPONSE:  In addition to Aetna's Recurring Objections set forth above, which are incorporated herein by reference as though set forth in full herein, Aetna objects to this topic on grounds that it is unduly burdensome, overbroad, oppressive, harassing, seeks information that is not relevant and/or not proportionate to the needs of the case, and fails to designate with reasonable particularity the matters on which examination is requested.  For instance, requiring a corporate designee identify all physical locations of where Aetna performs its procedures relating to "detection of improper coding, unnecessary medical care or fraud" is not relevant to this matter and/or not proportionate to the needs of the case.  Aetna objects to this topic to the extent it seeks information unrelated to the claims at issue in this case. Aetna objects to this topic as

11

seeking information "relating to the claims at issue in this Action," as such claims can only be identified after Defendants have complied with existing court orders, the parties have completed discovery, and through the opinions or testimony of expert witnesses, which is currently protected from disclosure under Federal Rule of Civil Procedure 26(b).  Aetna objects to this topic as seeking information which the Court has already found irrelevant and/or undiscoverable.

**Topic 13:   Any efforts that Aetna has made, outside of this lawsuit, to recoup payments made to Mednax or any of its affiliated entities or employees relating to the claims at issue in this Action.**

RESPONSE:  In addition to Aetna's Recurring Objections set forth above, which are incorporated herein by reference as though set forth in full herein, Aetna objects to this topic on grounds that it is unduly burdensome, overbroad, oppressive, harassing, seeks information that is not relevant and/or not proportionate to the needs of the case, and fails to designate with reasonable particularity the matters on which examination is requested.  Aetna objects to this topic as seeking information "relating to the claims at issue in this Action," as such claims can only be identified after Defendants have complied with existing court orders, the parties have completed discovery, and through the opinions or testimony of expert witnesses, which is currently protected from disclosure under Federal Rule of Civil Procedure 26(b).  Aetna objects to this topic as seeking information which the Court has already found irrelevant and/or undiscoverable.

**Topic 14:  Any reports, profiles, or analyses of Mednax's billing practices, coding, or billing profile created or reviewed by Aetna, including but not limited to Aetna's SIU and Medical Cost Analytics unit.**

RESPONSE:  In addition to Aetna's Recurring Objections set forth above, which are incorporated herein by reference as though set forth in full herein, Aetna objects to this topic on grounds that it is unduly burdensome, overbroad, oppressive, harassing, seeks information that is

12

not relevant and/or not proportionate to the needs of the case, and fails to designate with reasonable particularity the matters on which examination is requested.  Aetna further objects to this topic as seeking information that is protected from disclosure by the attorney-client privilege and/or attorney work product doctrine.  Aetna objects to this topic as seeking information from expert witnesses protected from disclosure under Federal Rule of Civil Procedure 26(b).  Aetna objects to this topic as seeking information which the Court has already found irrelevant and/or undiscoverable.

Subject to and as limited by the foregoing general and specific objections, Aetna will produce a witness to testify regarding reports, profiles or analyses of Mednax, created by or used by Aetna's SIU department or otherwise for the investigation of fraud, excluding such documents that are protected by the attorney client or work product privileges.

**Topic 15:  All SIU cases and informal inquiries concerning Mednax or Mednax-affiliated providers conducted by Aetna from 2010 — 2018.**

RESPONSE:  In addition to Aetna's Recurring Objections set forth above, which are incorporated herein by reference as though set forth in full herein, Aetna objects to this topic on grounds that it is unduly burdensome, overbroad, oppressive, harassing, seeks information that is not relevant and/or not proportionate to the needs of the case, and fails to designate with reasonable particularity the matters on which examination is requested.  Aetna objects to this topic because "informal inquiries" and "Mednax-affiliated providers" are vague and undefined. Aetna further objects to this topic as seeking information that is protected from disclosure by the attorney-client privilege and/or attorney work product doctrine.

Subject to and as limited by the foregoing general and specific objections, Aetna will produce a witness to testify regarding SIU cases or informal inquiries regarding Mednax or Mednax affiliated providers conducted from 2010 to 2018.

**Topic 16:  The identity and operation of all Aetna departments, business units, committees, employees, and independent contractors involved in negotiating contracts or reimbursement rates with Mednax.**

RESPONSE:  In addition to Aetna's Recurring Objections set forth above, which are incorporated herein by reference as though set forth in full herein, Aetna objects to this topic on grounds that it is unduly burdensome, overbroad, oppressive, harassing, seeks information that is not relevant and/or not proportionate to the needs of the case, and fails to designate with reasonable particularity the matters on which examination is requested.  For instance, Mednax's request a designee identify "all Aetna departments, business units, committees, employees, and independent contractors" involved in "negotiating contracts or reimbursement rates" is over burdensome and overbroad and not relevant and/or not proportionate to the needs of the case.

**Topic 17:  The identity of any person with whom Aetna, including its counsel, investigators, or any other representative, has spoken about this Action, Mednax's NICU billing practices, or any of the allegations in the Complaint. This includes but is not limited to current and former Mednax employees, current and former Mednax affiliates, and the Office of Inspector General or other governmental agencies.**

RESPONSE:  In addition to Aetna's Recurring Objections set forth above, which are incorporated herein by reference as though set forth in full herein, Aetna objects to this topic on grounds that it is unduly burdensome, overbroad, oppressive, harassing, seeks information that is not relevant and/or not proportionate to the needs of the case, and fails to designate with reasonable particularity the matters on which examination is requested.  Aetna further objects to this topic as seeking information that is protected from disclosure by the attorney-client privilege and/or attorney work product doctrine.  Aetna has already identified those former Mednax employees with whom its counsel or investigators have spoken regarding Mednax on Aetna's behalf that have been placed at issue in this case; any other information on this topic in the possession of its counsel or investigators has been held by the Court to be protected by the work

product privilege. Aetna further objects to this request as seeking the disclosure of the identities of officers of the Office of Inspector General and other federal officers, which Mednax has agreed may be withheld from discovery at the request of those agencies.

Subject to and as limited by the foregoing general and specific objections, Aetna will produce a witness to testify regarding the identity of government agencies with which it has communicated regarding Mednax.

**Topic 18:   The April 2014 analysis referenced in Aetna's response to Mednax's Interrogatory No. 10, including the type of analysis, the data upon which the analysis was based, the identity of the preparer of the analysis, the reason(s) the analysis was prepared, the date on which the analysis was communicated to Aetna, the identity of the person(s) at Aetna to whom it was communicated, and the means of that communication.**

RESPONSE:  In addition to Aetna's Recurring Objections set forth above, which are incorporated herein by reference as though set forth in full herein, Aetna objects to this topic on grounds that it is unduly burdensome, overbroad, oppressive, harassing, seeks information that is not relevant and/or not proportionate to the needs of the case, and fails to designate with reasonable particularity the matters on which examination is requested.  Aetna further objects to this topic as seeking information that is protected from disclosure by the attorney-client privilege and/or attorney work product doctrine.

**Topic 19:   The date(s) on which Aetna claims to have discovered the alleged fraud referenced in the Complaint, and all facts which led to the purported discovery.**

RESPONSE:  In addition to Aetna's Recurring Objections set forth above, which are incorporated herein by reference as though set forth in full herein, Aetna objects to this topic on grounds that it is unduly burdensome, overbroad, oppressive, harassing, seeks information that is not relevant and/or not proportionate to the needs of the case, and fails to designate with reasonable particularity the matters on which examination is requested.  Aetna further objects to

this topic as seeking information that is protected from disclosure by the attorney-client privilege and/or attorney work product doctrine.

Subject to and as limited by the foregoing general and specific objections, Aetna will produce a witness to testify regarding the date on which Aetna discovered the fraud referenced in the Complaint.

**Topic 20:  The data source(s) for the March Data Production, including but not limited to the data collection methodology, the queries run on the data source(s), the individuals involved in the process of data collection and analysis, and how the source database(s) function.**

RESPONSE:  In addition to Aetna's Recurring Objections set forth above, which are incorporated herein by reference as though set forth in full herein, Aetna objects to this topic on grounds that it is unduly burdensome, overbroad, oppressive, harassing, seeks information that is not relevant and/or not proportionate to the needs of the case, and fails to designate with reasonable particularity the matters on which examination is requested.

Subject to and as limited by the foregoing general and specific objections, Aetna will produce a witness to testify regarding the data sources for the March Data Production, the methodology and queries used, and the individuals involved in the process.

**Topic 21:  The data source(s) for the August Data Production, including but not limited to the data collection methodology, the queries run on the data source(s), the individuals involved in the process of data collection and analysis, and how the source database(s) function.**

In addition to Aetna's Recurring Objections set forth above, which are incorporated herein by reference as though set forth in full herein, Aetna objects to this topic on grounds that it is unduly burdensome, overbroad, oppressive, harassing, seeks information that is not relevant and/or not proportionate to the needs of the case, and fails to designate with reasonable particularity the matters on which examination is requested.  Aetna further objects to this topic as

seeking information that is protected from disclosure by the attorney-client privilege and/or attorney work product doctrine.  Aetna objects to this topic as seeking information from expert witnesses protected from disclosure under Federal Rule of Civil Procedure 26(b).

Subject to and as limited by the foregoing general and specific objections, Aetna will produce a witness to testify regarding the data sources for the August Data Production, the methodology and queries used, and the individuals involved in the process.

**Topic 22:   The identity of the self-funded plans on whose behalf Aetna alleges (including at Paragraph 22 of the Complaint) that it is authorized to bring this Action.**

RESPONSE:  In addition to Aetna's Recurring Objections set forth above, which are incorporated herein by reference as though set forth in full herein, Aetna objects to this topic on grounds that it is unduly burdensome, overbroad, oppressive, harassing, seeks information that is not relevant and/or not proportionate to the needs of the case, and fails to designate with reasonable particularity the matters on which examination is requested.

Subject to and as limited by the foregoing general and specific objections, Aetna will produce a witness to testify regarding self-funded plans.

**Topic 23:   The particular claims that Aetna alleges in this Action are fraudulent. including the number of claims for each year at issue in this Action, the total dollar amount of claims for each year at issue in this Action, and the allocation of those claims between claims paid by Aetna directly and claims paid by self-funded plans.**

RESPONSE:  In addition to Aetna's Recurring Objections set forth above, which are incorporated herein by reference as though set forth in full herein, Aetna objects to this topic on grounds that it is unduly burdensome, overbroad, oppressive, harassing, seeks information that is not relevant and/or not proportionate to the needs of the case, and fails to designate with reasonable particularity the matters on which examination is requested.  Aetna objects to this topic to the extent that it is still discovering the scope of Mednax's fraudulent scheme to overbill.

17

Aetna objects to this topic to the extent it seeks information organized by year, and allocation between self-funded plans and claims paid by Aetna as that information is not relevant and/or not proportionate to the needs of the case.  Aetna objects to this topic as seeking information "relating to the claims at issue in this Action," as such claims can only be identified after Defendants have complied with existing court orders, the parties have completed discovery, and through the opinions or testimony of expert witnesses, which is currently protected from disclosure under Federal Rule of Civil Procedure 26(b).

**Topic 24:  The calculation of the "approximately $2,400 per episode of care" by which Aetna alleges Mednax billings exceed non-Mednax billings (Complaint ¶ 44) and the "[a]ctual damages in excess of $50,000,000" that Aetna claims (Complaint p. 15; Plaintiffs' Rule 26(a)(1)(A)(i) Initial Disclosures (July 27, 2018) p. 4). This Topic includes but is not limited to the method for calculating those amounts, whether and how Aetna's claimed damages are allocated across the years at issue in this Action, whether and how Aetna's calculation of its claimed damages has changed since the filing of the Complaint, and whether and how Aetna's claimed damages are allocated across various Mednax affiliate providers.**

RESPONSE:  In addition to Aetna's Recurring Objections set forth above, which are incorporated herein by reference as though set forth in full herein, Aetna objects to this topic on grounds that it is unduly burdensome, overbroad, oppressive, harassing, seeks information that is not relevant and/or not proportionate to the needs of the case, and fails to designate with reasonable particularity the matters on which examination is requested.  Aetna objects to this topic to the extent it seeks information "allocated across the years at issue" as this information is not relevant and/or not proportionate to the needs of the case.  Aetna further objects to this topic as seeking information that is protected from disclosure by the attorney-client privilege and/or attorney work product doctrine.  Aetna objects to this topic as seeking information from expert witnesses protected from disclosure under Federal Rule of Civil Procedure 26(b).

Respectfully submitted,


/s/ Mark J. Schwemler
MARK J. SCHWEMLER
GREGORY S. VOSHELL
AIMEE L. KUMER
ELLIOTT GREENLEAF P.C.
925 Harvest Drive, Suite 300
Blue Bell, Pennsylvania 19422

Dated:   December 20, 2019

HOWARD PIERCE, *pro hac vice*
PIERCE LLC
433 S. Main Street, Suite 228
West Hartford, CT 06110

*Counsel for Plaintiffs*

19

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was served upon counsel of record via electronic mail.


December 20, 2019                                   */s/ Mark J. Schwemler*
                                                   MARK J. SCHWEMLER

# EXHIBIT 5



**Elliott Greenleaf**

A Professional Corporation

925 Harvest Drive · Suite 300
Blue Bell, Pennsylvania 19422
Phone: (215) 977-1000 · Fax: (215) 977-1099
www.elliottgreenleaf.com

MARK J. SCHWEMLER
DIRECT DIAL: 215-977-1051
EMAIL: MJS@ELLIOTTGREENLEAF.COM

December 19, 2019

***VIA ELECTRONIC MAIL***

Jennifer Windom, Esq.
Robbins Russell
2000 K Street NW, 4th Floor
Washington DC 20006

RE:    Aetna v. Mednax, E.D. Pa. Civil No. 18-2217

Dear Jennifer:

I write in response to your letter of December 4, 2019. While we disagree with your characterizations of past communications and events, I address the items identified in your letter in the order set forth therein.

With regard to items Aetna has agreed to produce:

1.  **SIU policy manuals:** these have been produced.

2.  **Documents exchanged with OIG:** these have been produced. Further, in response to your subsequent email of December 18, Aetna has also produced all documents referring to previously unidentified government agencies in compliance with the Court's order, Docket No. 171.

3.  **Written policies, procedures and manuals regarding Aetna's fraud detection systems:** to the extent these are addressed in writing, they are addressed in the SIU manuals that have been produced.

4.  **Aetna's contracts with self-funded plans:** Aetna previously informed Mednax it would be producing a sampling of these documents, which Aetna will attest are representative of the plans at issue. In response, Mednax requested a tally of the total number of plan documents implicated in the case. Aetna is in the process of collecting this information and will produce it once it is available.

5.  **SIU-related documents:** these have been produced, with the exception of the documents relating to Mr. Petree's investigation. Those are being prepared for production and will be produced shortly.

Jennifer Windom, Esq.
December 19, 2019
Page 2

6. **Supplement to Interrogatory 4:** Aetna is in the process of supplementing this response and will produce it shortly.

7. **Supplement to Interrogatory 11:** Your letter of December 4 mischaracterizes Aetna's prior offer regarding this interrogatory. We stated we would confirm that no audits were undertaken regarding the fraud at issue, and that "[w]e believe that no flags, claim processing edits or watch lists were deployed with respect to the fraud at issue in this case, but will confirm this; to the extent Mednax seeks such information with regard to Mednax in general, we object to that request as overly broad, burdensome and irrelevant." We can confirm that no audits were undertaken no flags, edits or watchlists deployed regarding the fraud at issue.

With regard to additional discovery items regarding which Aetna agreed to update its position:

1. **Internal claims processing policies and procedures:** Your December 4 letter mischaracterizes Aetna's prior statements. Aetna does not maintain unpublished payment policies regarding the processing or payment of NICU claims. When Aetna informed Mednax of this fact, Mednax shifted its request to a new request for policies and procedures used to process claims at issue in this case, without regard to whether they are specific to NICU claims. Aetna has already produced to Mednax its claims payment policies – they are available on Aetna's Navinet, to which Mednax has a log-in and password. As Judge Lloret's recent orders have made clear, this case is focused on fraud, not routine claims processing, a procedure with which Mednax is well-acquainted. Accordingly, Aetna is not willing to produce further documents in response to this request, which it views as overly burdensome, and disproportionate to the needs of the case, as the information sought is of no relevance.

2. **Periodic/Activity Reports Regarding Claims/Billing Practices at Issue:** There are no such reports concerning the medical claims or billing practices at issue in this case.

3. **Anti-Fraud and Compliance Plans:** In our prior communications we stated we would determine whether there exist anti-fraud and compliance plans that implicate the Mednax claims at issue (rather than such plans in general). We have found that there are no anti-fraud or compliance plans relating to detecting or identifying upcoding of claims by providers.

4. **Outlier Reports, Data Mining or Data Analytics Reports:** No such documents, other than those produced in our recent document productions, exist with regard to investigations of fraud relating to Mednax.

5. **Audits:** Aetna has produced those documents it has been able to locate, following a reasonably diligent search, regarding audits performed of Mednax. Given that Mednax was a recipient of any requests for audits, to the extent Mednax is aware of audits beyond those regarding which Aetna has located and produced documents, we reiterate our prior requests that Mednax identify such audits to us, in order to facilitate the production of any additional documents Aetna may have.

Jennifer Windom, Esq.
December 19, 2019
Page 3

With regard to Mednax's additional discovery disputes:

1. **Responses to Interrogatories 9 and 10:** Aetna disagrees with Mednax's assessment of its supplemental responses. Aetna has not identified "senders" or "recipients" of the communications in question because they were oral communications; Aetna has identified the parties to the communications as in-house counsel and Mr. Pierce. Aetna would not be obligated to provide further information in a privilege log and will not agree to do so in response to these interrogatories. Aetna will supplement with specific dates to the extent it is able to do so.

2. **Productions from Non-Parties:** Aetna has previously stated its position on this topic, and it remains unchanged. In particular, Aetna is awaiting the court's approval of a stipulated order so that the subpoenaed hospitals can produce medical records and complete compliance with subpoenas.

3. **Vendors/Subcontractors:** Aetna does not use any vendors or subcontractors in connection with fraud detection.

4. **Reports regarding Mednax or its billing practices:** Aetna stands on its objections. Reports or analysis prepared in connection with, for example, re-negotiations of contracts with Mednax, are not probative, are unduly burdensome, and are sought for an improper purpose.

5. **Job description for head of Medical Economics Unit/Rhonda Lessard:** Aetna does not maintain a job description for this position.

6. **Job description for supervisor responsible for data mining:** Aetna has produced this document.

7. **Documents responsive to custodial searches:** Mednax's contention that Aetna has not produced custodial documents is baseless; as of December 4, Aetna had produced thousands of pages of custodial documents. Since that date, Aetna has produced tens of thousands more. Aetna is nearing the completion of its custodial production.

8. **Organization and compliance charts:** Aetna has produced the organization charts for its Medical Economics Unit.

9. **Rog 13/RFP 60:** Aetna has fully complied with Judge Lloret's order, Docket No. 170.

10. **"Missing" metadata:** Aetna's prior productions were fully compliant with the Court's Electronic Discovery order: Aetna has produced documents in searchable PDF format or, when appropriate, in native format with accompanying metadata. As a courtesy to counsel that was previously involved in this case, Aetna offered to provide additional metadata, beyond that required by the Court's Electronic Discovery order, to facilitate the review of Aetna's prior productions. After making that offer, however, Aetna was called upon to expend considerable resources responding to harassing and frivolous motion

Jennifer Windom, Esq.
December 19, 2019
Page 4

practice, and as a result, the preparation of that metadata was delayed. Nonetheless, we are willing to extend the same courtesy to you; we will re-issue the prior productions in the near future.


Sincerely,

MARK J. SCHWEMLER

# EXHIBIT 6

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| AETNA INC., AETNA HEALTH, INC., AETNA HEALTH MANAGEMENT LLC AND AETNA LIFE INSURANCE COMPANY, | |
| Plaintiffs, | CIVIL ACTION |
| v. | |
| MEDNAX, INC., PEDIATRIX MEDICAL GROUP, INC. AND MEDNAX SERVICES, INC., | No. 18-2217 |
| Defendants. | |

### DEFENDANTS' THIRD SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS TO AETNA INC., AETNA HEALTH, INC., AETNA HEALTH MANAGEMENT, LLC, AND AETNA LIFE INSURANCE CO.

Pediatric Medical Group, Inc., MEDNAX Services, Inc., and MEDNAX, Inc., ("Defendants"), by and through their undersigned counsel, hereby request, pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, that Plaintiffs Aetna Inc., Aetna Health, Inc., Aetna Health Management, LLC, and Aetna Life Insurance Company ("Plaintiffs") produce for inspection and copying the documents specified below at the offices of Quinn Emanuel Urquhart & Sullivan, LLP, 51 Madison Avenue, 22nd Floor, New York, New York 10010, within 30 days after service of these requests for production ("Requests"). These Requests are made without waiving any claims that Defendants have or hereafter may assert in this Action and without waiving any defenses in this Action, including the absence of personal jurisdiction over the Defendants.

The documents requested for discovery and inspection are to be produced according to the definitions and instructions herein.

## **DEFINITIONS**

The following definitions are to be considered applicable to all specific requests for the production of documents:

1.      Each reference to a corporation, partnership, limited liability company, unincorporated association, government agency or other non-natural Person shall be deemed to include each and all of its current and former parents, owners, subsidiaries, affiliates, divisions, predecessors, successors, employees, managers, officers, directors, shareholders, partners, general partners, limited partners, members, agents, representatives, attorneys, accountants, consultants, independent contractors or any other Person or entity acting, or purporting to act, with or on behalf of any of the foregoing.

2.      Each reference to a natural Person shall be deemed to include that Person's relatives, employees, partners, agents, representatives, attorneys, accountants, consultants, independent contractors or any other Person or entity acting, or purporting to act, with or on behalf of any of the foregoing.

3.      "Action" means the litigation captioned above.

4.      "Aetna" means Plaintiffs Aetna Inc., Aetna Health, Inc., Aetna Health Management, LLC, and Aetna Life Insurance Company and each and all of their current and former parents, owners, subsidiaries, affiliates, divisions, predecessors, successors, employees, managers, officers, directors, shareholders, partners, general partners, limited partners, members, agents, representatives, attorneys, accountants, consultants, independent contractors or any other

Person or entity acting, or purporting to act, with or on behalf of any of the foregoing, as well as all employer-established health plans that Plaintiffs administer.

5.      "ClaimCheck" means Aetna's ClaimCheck software.

6.      "Complaint" means the Complaint filed by Aetna Inc., Aetna Health, Inc., Aetna Health Management LLC, and Aetna Life Insurance Company on April 25, 2018 in the Court of Common Pleas of Pennsylvania, First Judicial District, Philadelphia County.  Compl., *Aetna Inc. v. MEDNAX, Inc.*, No. 171101040, 2018 WL 1998596 (Pa. Ct. Com. Pl. Apr. 25, 2018).

7.      "Communication" means the transmission of information of any kind, in any form and by any means, including but not limited to, and by way of example only, any admission, denial, agreement, contract, conversation, discussion, inquiry, meeting, memorandum, minutes, negotiation, notes (handwritten, typed or otherwise), report, statement, submission, talking points, understanding or any other direct or indirect disclosure in any form, including but not limited to audio, video, digital, electronic, Social Media (whether through postings or private messaging functions), oral or paper form, and any draft communication in such form, whether or not the communication was ever disclosed, sent or transmitted.

8.      "Defendants" means MEDNAX, Inc., MEDNAX Services, Inc., and Pediatrix Medical Group, Inc., including each and all of their current and former parents, owners, subsidiaries, affiliates, divisions, predecessors, successors, employees, managers, officers, directors, shareholders, partners, general partners, limited partners, members, agents, representatives, attorneys, accountants, consultants, independent contractors or any other Person or entity acting, or purporting to act, with or on behalf of any of the foregoing.

9.      "Document" is used in its broadest sense and means, without limitation, written, typed, printed, electronic, graphic or otherwise recorded material of any kind, however produced

or reproduced, whether different because of notes made thereon or otherwise, including but not limited to, and by way of example only, any advertisement, agreement, analysis, book, brochure, calendar, chart, check (front and back) or check stub, checklist, contract, cost sheet, database information, diary, electronic file, email, facsimile, filing, financial report, graph, guideline, handbook, index, instant message, invoice, ledger, letter or other correspondence, license, log, memorandum, microfilm, minutes, motion picture film, notebook, notes (handwritten, typed or otherwise), opinion, pamphlet, paper, picture, photograph, plan, policy, procedure, press release, purchase order, receipt, recording, report, statement, study, submission, summary, tabulation, talking points, tape recording, task list, telegram, telephone call record, text message, thing, timesheet, transcript of a telephone conversation, transcript of testimony, travel record, video, voice message or recording, work paper, data compilation, including but not limited to computer data stored on a USB drive, external hard drive, compact disc, computer disk or other memory unit containing such data from which information can be obtained or translated into usable form, translations or summaries of foreign language documents and all similar recorded material.  Each non-identical document is a distinct document, including every such original, copy, draft and version of a document, whether or not any form of the document in question is ever disclosed, sent or transmitted.  A Document further includes any enclosure, exhibit, annex, appendix, schedule or other attachment, whether by staple, clip, rubber band, binding or other means, and all appended or embedded links or files.

10.   "DPR Integrated Solutions" means DPR Integrated Solutions, Inc., including each of its current and former parents, owners, subsidiaries, affiliates, divisions, predecessors, successors, employees, managers, officers, directors, shareholders, partners, general partners, limited partners, members, agents, representatives, attorneys, accountants, consultants,

independent contractors or any other Person or entity acting, or purporting to act, with or on behalf of any of the foregoing.

11.     "Howard Pierce" means Howard Pierce and any of his current or former employees, shareholders, partners, or attorneys, as well as any investigators, consultants, agents, independent contractors or any other Person or entity acting, or purporting to act, with or on behalf of Howard Pierce including Pierce LLC, Mueller Pierce LLC, Seiger Gfeller Laurie, LLP, The Indago Group, DPR Integrated Solutions, Daniel Sandoval, John Bowblis, Robert Makuch, and any person acting or purporting to act with or on behalf of the forgoing.

12.     "Including" means "including, without limitation" or "including, but not limiting to."

13.     "The Indago Group" means The Indago Group, including each of its current and former parents, owners, subsidiaries, affiliates, divisions, predecessors, successors, employees, managers, officers, directors, shareholders, partners, general partners, limited partners, members, agents, representatives, attorneys, accountants, consultants, independent contractors or any other Person or entity acting, or purporting to act, with or on behalf of any of the foregoing, including Elaine Pappas-Graber and Diane Shulman.

14.     "Mednax" means MEDNAX Services, Inc., MEDNAX, Inc. and each and all of their current and former parents, owners, subsidiaries, affiliates, divisions, predecessors, successors, employees, managers, officers, directors, shareholders, partners, general partners, limited partners, members, agents, representatives, attorneys, accountants, consultants, independent contractors or any other Person or entity acting, or purporting to act, with or on behalf of any of the foregoing.

15.     "NICU" means neonatal intensive care unit.

16.     "Person" means, without limitation, any individual, corporation, business trust, estate, trust, partnership, limited liability company, association, joint venture, public corporation, group, organization or any other legal or commercial entity, including each and all of its current and former parents, owners, subsidiaries, affiliates, divisions, predecessors, successors, employees, managers, officers, directors, shareholders, partners, general partners, limited partners, members, agents, representatives, attorneys, accountants, consultants, independent contractors or any other person or entity acting, or purporting to act, with or on behalf of any of the foregoing.

17.     "Relating to," "Related to," "Concerning" and/or "Regarding," in addition to their customary and usual meanings, shall mean directly or indirectly, in whole or in part, relating to, referring to, concerning, discussing, evidencing, containing, constituting, reflecting, mentioning, assessing, characterizing, recording, describing, touching upon, summarizing, commenting on, showing, disclosing, supporting, explaining, recording, stating, memorializing, noting, analyzing, contradicting, disputing, or in any way legally, logically or factually dealing with connected to the subject matter described.

18.     "SIU" means Aetna's Special Investigation Unit.

19.     "Social Media," in addition to its customary and usual meaning, includes, but is not limited to, Facebook, LinkedIn, Twitter, Instagram, Reddit, Imgur, YouTube, Snapchat, Twitch, WeChat, Skype, WhatsApp, message boards (whether through postings or private messaging functions) and any other internet-based mechanism through which the public communicates.

20.     "You" or "Your" means the subject(s) responding to each Request, including each Plaintiff and any entity or individual encompassed in the preceding definition of the term "Aetna."

21.     The terms "all," "any" and "each" shall be construed broadly and mean all, any and each as necessary so as to bring within the scope of a Request all responses that otherwise could be construed to be outside of its scope.

22.     The terms "and" and "or" shall be construed either disjunctively or conjunctively as necessary so as to bring within the scope of a Request all responses that might otherwise be construed to be outside of its scope.

23.     "Including" means "including, without limitation" or "including, but not limiting to."

24.     The use of the singular of any word includes the plural and vice versa as necessary so as to bring within the scope of a Request all responses that might otherwise be construed to be outside of its scope.

25.     The use of the past tense includes the present tense unless otherwise explicitly delimited.

26.     The use of defined terms in these Requests apply whether or not they are capitalized.

## **INSTRUCTIONS**

1.     Unless otherwise indicated, the Documents requested include all Documents and Communications in Your possession, custody or control.  Without limiting the meaning of the terms "possession, custody or control" as used in the preceding sentence, a Document or Communication is in Your possession, custody or control if You have actual possession or custody of the Document or Communication, or the right to obtain the Document or Communication, or a copy thereof, upon demand from one or more of Your agents, representatives, attorneys,

accountants, consultants, independent contractors or any other person or public or private entity that has actual physical possession of the Document or Communication.

2.      These Requests shall be deemed to call for the production of original Documents. In addition, the Requests shall be deemed to call for the separate production of all copies and, to the extent applicable, preliminary drafts of Documents that differ in any respect from the original or final draft or each other (*e.g.*, by reason of differences in form or content or by reason of handwritten notes or comments having been added to one copy of a Document but not to the original or other copies thereof).

3.      If You object to any Request, You must state in writing, with specificity, the grounds for objection pursuant to Federal Rule of Civil Procedure 34(b)(2).  If You object to a particular portion of any Request, You shall respond to any other portion of such Request as to which there is no objection and state in writing, with specificity, the grounds of the objection to the particular portion of the Request.  Your response to each Request must specifically indicate for any and each objection whether, and the scope of, Documents or Communications that are being withheld based on each objection.

4.      If You withhold any Document, Communication or part thereof that is responsive to any Request on the grounds of attorney-client privilege; the attorney work product doctrine or any other privilege, doctrine or basis, You must state in writing, with specificity, the:  (1) date of the Document or Communication; (2) the type, title and subject matter of the Document or Communication sufficient to assess whether the assertion of privilege is valid; (3) the name of the person or persons who prepared or signed the Document or engaged in the Communication; (4) the name and position of any recipient of the Document or Communication and (5) the particular privilege, doctrine or other basis for withholding the Document or Communication.  If You fail to

set forth a sufficient factual basis for the assertion of any claim of privilege or protection, then any arguable claim of privilege or protection shall be waived.  Compliance with the above instructions is not to be construed as an admission by Defendants that such privilege or protection is valid, and Defendants reserve the right to challenge any purported claim of privilege or protection.

5.      All electronically stored information ("ESI") should be preserved and produced pursuant to Federal Rule of Civil Procedure 34(b)(2)(E).

6.      Your production and responses to these Requests shall comply with all terms and requirements delineated in the Order Governing E-Discovery (Dkt. 21), unless the parties agree to alternative terms and requirements to the extent contemplated by that Order.

7.      Documents shall be produced on a rolling basis as they become available.

8.      Selection of Documents from files and other sources, and the number of such Documents, shall be performed in such a manner as to ensure that the source of each Document may be determined, if necessary.

9.      File folders with tabs or labels, or directories of files identifying Documents, must be produced intact with such Documents.

10.     Pursuant to Federal Rule of Civil Procedure 34, You must produce entire Documents and Communications, including attachments, enclosures, exhibits, cover letters, memoranda, annexes, schedules, and appendices.  Documents or Communications not otherwise responsive to a Request are to be produced if are attached to, or enclosed with, any Documents or Communications that are responsive.  Without limitation, examples of such include email attachments, attachments to letters or agreements, routing slips, transmittal memoranda or letters, evaluations or similar Documents and Communications.  In the case of email attachments, if either

the email or any of its attachments is responsive, You must produce the email and all of the corresponding attachments.

11.     A Document or Communication with handwritten, typed or other recorded notes, editing marks or other revisions is not and shall not be deemed to be identical to one without such modifications, additions or deletions.  The term "original" includes the file copy or copies of any Document or Communication if there is no actual original.

12.     If You cannot respond fully to a Request after exercising due diligence to secure the information requested, or do not have information responsive to any part of a Request, You must so state, describe in full Your efforts to obtain the information requested and respond to the Request to the fullest extent possible.  If a qualified response to a Request must be given, You shall respond to the Request as directly and fully as possible and state fully the reason that such qualification is necessary.

13.     If Your response to a particular Request is a statement that You lack the ability to comply with that Request, You must specify whether the inability to comply is because the particular item or category of information never existed or has been lost, destroyed, discarded, misplaced, stolen or otherwise disposed of, or because it has never been or is no longer in Your possession, custody or control, in which case the name and address of any Person known or believed by You to have possession, custody or control of that information or category of information must be identified.

14.     These Requests are continuing in nature, so as to require further and supplemental responses if You obtain or discover additional Documents or Communications between the time of initial production and the time of the trial.  Such supplemental Documents or Communications must be produced promptly upon discovery.  Defendants specifically reserve the right to seek

supplementary responses and the additional supplementary production of Documents or Communications before trial.  Defendants will object to any attempt to introduce evidence to the Court that should have been but was not disclosed in the responses or the supplementation of the responses.  All responses to these Requests shall comply fully in all respects with the requirements of the Federal Rules of Civil Procedure, the Eastern District of Pennsylvania Local Rules, and all other applicable rules and Orders by the Court.

15.     The timeframe for these Requests shall be from January 1, 2010 until and through November 9, 2017, unless otherwise specified.

## <u>REQUESTS FOR PRODUCTION</u>

<u>REQUEST FOR PRODUCTION NO. 54</u>:

All Documents You relied upon, consulted, or referenced in responding to Mednax's Second Set of Interrogatories.

<u>REQUEST FOR PRODUCTION NO. 55</u>:

All Documents concerning any vendor or subcontractor that provided any services concerning the medical claims or billing practices at issue in this Action, including pre- or post-payment fraud detection, auditing, investigation or data analytics services, and including a copy of all engagement letters, statements of work and Documents received from or provided to such Persons.

<u>REQUEST FOR PRODUCTION NO. 56</u>:

All Documents and Communications exchanged between You and any vendor or subcontractor regarding any claims or data analysis of the medical claims at issue in this Action, or NICU claims data.

<u>REQUEST FOR PRODUCTION NO. 57</u>:

All Documents concerning any third party professional who was engaged in relation to the medical claims or billing practices at issue in this Action, including but not limited to economists, statisticians, investigators, health professionals and data analysts (e.g., John Bowblis, Daniel Sandoval, Howard Pierce, Robert Makuch, The Indago Group, and DPR Integrated Solutions) and, for any such Person, a copy of all engagement letters and Documents received from or provided to such Persons.

REQUEST FOR PRODUCTION NO. 58:

Documents sufficient to identify the date(s) on which You retained Howard Pierce to conduct any claims analysis concerning Mednax or the allegations described in the Complaint.

REQUEST FOR PRODUCTION NO. 59:

All NICU claims data You provided to Howard Pierce in connection with any analysis of Mednax or the allegations described in the Complaint.

REQUEST FOR PRODUCTION NO. 60:

All Documents up through the present time period concerning Aetna's collaboration or cooperation with any third parties concerning the medical claims or billing practices at issue in this Action, including but not limited to the National Health Care Anti-Fraud Association, any law enforcement, regulatory or governmental agency or entity, any task force, insurance company, health care provider, or referral source, including but not limited to Documents received from or provided to such Persons.

REQUEST FOR PRODUCTION NO. 61:

Documents sufficient to show the date(s) on which The Indago Group, Howard Pierce or any other Person first transmitted to You (orally or in writing) the "information . . . received from Defendants' former employees" (Dkt. 66 at 3), including copies of the Investigative Memoranda or notes contained in Aetna 000002 – 034.

REQUEST FOR PRODUCTION NO. 62:

All Documents concerning any review of services or audits that Aetna or any third party undertook relating to the medical claims or billing practices at issue in this Action, including the findings or conclusions of such review of services or audits.

REQUEST FOR PRODUCTION NO. 63:

All Documents concerning any review of services or audits that any self-funded plan undertook relating to the medical claims or billing practices at issue in this Action, including the findings or conclusions of such review of services or audits.

REQUEST FOR PRODUCTION NO. 64:

All policies and procedures that govern the SIU, including any manuals or field manuals.

REQUEST FOR PRODUCTION NO. 65:

All periodic and activity reports concerning the medical claims or billing practices at issue in this Action, including quarterly fraud and abuse prevention activity reports, and annual reports concerning the implementation of Aetna's anti-fraud plans.

REQUEST FOR PRODUCTION NO. 66:

All Documents concerning outlier reports relating to Mednax or the medical claims or billing practices at issue in this Action.

REQUEST FOR PRODUCTION NO. 67:

All Documents concerning data mining meetings relating to Mednax or the medical claims or billing practices at issue in this Action.

REQUEST FOR PRODUCTION NO. 68:

A copy of Your anti-fraud and compliance plans and/or compliance work plans from 2010 to the present.

REQUEST FOR PRODUCTION NO. 69:

All policies and procedures and manuals concerning the operation of the software, systems and tools that Aetna uses or used to detect alleged fraud in the medical claims at issue in this Action, including ClaimCheck, Fraud and Abuse Management System, and any Statistical Analysis System software.

REQUEST FOR PRODUCTION NO. 70:

To the extent not responsive to prior Document Requests, any data analytics reports generated by You that analyze Mednax's billing practices or behavior.

REQUEST FOR PRODUCTION NO. 71:

All "empirical data" that allegedly establishes Mednax's "intentional overbilling," as set forth in paragraph 5 of the Complaint.

REQUEST FOR PRODUCTION NO. 72:

All "scorecards" evaluating the performance of SIU personnel who were involved in Aetna's review and investigation of the medical claims or billing practices at issue in this Action.

DATED:  April 22, 2019

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

By: _____/s/ Jennifer Barrett_____
 Michael Carlinsky*
Jennifer Barrett*
Luke Nikas**
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849 7000
Fax: (212) 849 7100
michaelcarlinsky@quinnemanuel.com
jenniferbarrett@quinnemanuel.com
lukenikas@quinnemanuel.com

**LASH & GOLDBERG LLP**
Martin B. Goldberg*
Lorelei J. Van Wey*
Jonathan E. Feuer*
100 Southeast 2nd Street
Miami, FL 33131
Telephone: (305) 347-4040
mgoldberg@lashgoldberg.com
lvanwey@lashgoldberg.com
jfeuer@lashgoldberg.com
 * Admitted Pro Hac Vice

**CONRAD O'BRIEN PC**
Howard M. Klein
Pennsylvania Bar No. 33632
hklein@conradobrien.com
Robert N. Feltoon
Pennsylvania Bar No. 58197
rfeltoon@conradobrien.com
Andrew K. Garden
Pennsylvania Bar No. 314708
agarden@conradobrien.com
Centre Square West Tower
1500 Market Street, Suite 3900
Philadelphia, PA 19102-2100
Telephone: (215) 864-9600
Fax: (215) 864-9620

*Attorneys for Defendants Pediatrix Medical Group, Inc.,
MEDNAX Services, Inc., and MEDNAX, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on this 22nd day of April 2019, the foregoing was served on all counsel of record via email.

_____*/s/ John Chun*_____

# EXHIBIT 7

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **AETNA INC.**, *et al.*, | **CIVIL ACTION** |
| **Plaintiffs,** | **No. 18-2217** |
| **v.** | |
| **MEDNAX, INC.**, *et al.*, | |
| **Defendants.** | |

**PLAINTIFF'S OBJECTIONS AND SUPPLEMENTAL RESPONSES TO
DEFENDANTS' INTERROGATORIES**

Plaintiffs Aetna, Inc., Aetna Health, Inc., Aetna Health Management LLC and Aetna Life Insurance Company (together, "Aetna"), by and through undersigned counsel, hereby provides the following supplemental responses to the Interrogatories issued by Defendants Mednax, Inc., and Mednax Services, Inc., formerly Pediatrix Medical Group, Inc. (together, "Mednax" or "Defendants"). Aetna incorporates as if set forth fully herein the objections and reservations set forth in Exhibit 1 attached hereto.

**INTERROGATORIES**

**INTERROGATORY NO. 3**

Identify all software (including, but not limited to, the Fraud and Abuse Management System or Aetna Standard Table), written policies and procedures, training materials, data analytic tools, and audit tools utilized by Aetna to analyze, identify, or detect overbilling, improper coding, fraud, or abuse for the time period at issue in Aetna's Complaint.

**RESPONSE:** Aetna objects to this Interrogatory as overly broad and unduly burdensome, and not proportionate to the needs of the case. Aetna objects to this request as seeking the production of information that is not relevant to the parties' claims and defenses, as Aetna did not detect the misconduct perpetuated by Mednax and described in Aetna's Complaint through the use of fraud-detecting software. The identity of any software used by Aetna in contexts outside of this matter, if any,

and/or as applied to providers other than Mednax, is not relevant to the parties' claims and defenses.

Subject to and as limited by the foregoing general and specific objections, for the time period 2010 to November 2017, when this litigation was filed, Aetna used the following software and data analytics tools to detect and investigate fraud, abuse, and other improper coding within the purview of its Special Investigations Unit:

- FAMS: Aetna began using IBM's FAMS product in connection with its commercial claims in 2010, and in connection with its Medicaid claims in 2013. Aetna stopped using FAMS in connection with Medicaid claims in 2015 or 2016; Aetna ceased using FAMS in connection with its commercial claims some time prior to 2015.

- Aetna Data Science: Aetna used an internally developed application known as Aetna Data Science to perform data analytics as a pilot program from June 2016 to March 2017 for Kentucky and Texas in connection with its Medicaid claims and from 2016 through November 2017 in connection with its commercial claims.

- Microsoft SQL Server Management and SAS for Windows are used to create Ad Hoc on Demand reports. Aetna employs SAS programming language on its own proprietary systems to perform data mining tasks, and has done so from 2010 through 2017. Aetna uses SAP Business Objects Crystal Reports to create Standard Reports utilized by the Investigators thru Universal Web Information Delivery (UWID).

- Universal Web Information Delivery (UWID): Aetna SIU investigators use UWID to pull specialized reports, and has done so from 2010 through 2017. Standard reports can be run by Tax ID, NPI, Member ID, Procedures, Diagnosis, and Specialties. Reports are used to supplement investigations and to identify additional potential fraud situations and schemes.

- Verisk Health – from 2010 through 2013, Coventry used a product provided by Verisk Health.

Aetna will produce written policies and procedures sufficient to describe the above-listed programs. In addition, Aetna has produced SIU's written policies during the relevant time period, and will supplement its production on an ongoing basis as appropriate.

2

_/s/ Gregory S. Voshell_
Mark J. Schwemler
Gregory S. Voshell
Aimee L. Kumer
ELLIOTT GREENLEAF P.C.
925 Harvest Drive, Suite 300
Blue Bell, Pennsylvania 19422

DATED:   May 31, 2019

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 31, 2019, I served the foregoing on all counsel of record via email.

<u>/s/ Gregory S. Voshell</u>
Gregory S. Voshell

## EXHIBIT 1
## RESERVATIONS AND OBJECTIONS

Aetna, Inc., Aetna Health, Inc., Aetna Health Management LLC and Aetna Life Insurance Company's ("Aetna") responses and objections are made without in any way waiving or intending to waive, but on the contrary preserving and intending to preserve:

The right at any time to revise, correct, supplement, clarify, or amend these responses and objections to Defendants' interrogatories;

The right to object on any ground at any time to a demand for further information, further production and/or other discovery proceedings involving or relating to the subject matter of any of the individual interrogatories;

All questions as to competency, relevancy, materiality, privilege and admissibility of evidence for any purpose in any subsequent proceedings or the trial of this or any other action;

The right to object to the use of any documents or evidence by Defendants in any subsequent proceedings or the trial of this or any other action on any ground;

The right to object on any ground to the use and/or admissibility of this response (or any part thereof) at any trial, hearing or other proceeding in this or any other action;

The right to further supplement and/or amend these responses based upon the discovery of additional information or documents.

The attorney-client, work-product and expert privileges and, accordingly, any subsequent response or production shall not constitute a waiver of said privileges;

All questions as to competency, relevancy, materiality, privilege and admissibility of evidence for any purpose in any subsequent proceedings or the trial of this or any other action.

## GENERAL OBJECTIONS

Aetna will respond to the specific interrogatory by giving the language to each interrogatory its reasonable, ordinary meaning, subject to the other objections set forth herein.

Aetna objects to each of Defendants' interrogatories to the extent that they seek discovery beyond that permitted by the Federal Rules of Civil Procedure or information or documents otherwise not discoverable under the Federal Rules.

Aetna objects to the introductory material insofar as they purport to alter, expand or otherwise modify the party's obligations under applicable Federal Rules.

Aetna objects to each of Defendants' interrogatories to the extent they seek information already in Defendants' possession, custody or control.

Aetna objects to each of Defendants' interrogatories to the extent it seeks (a) attorney work product; (b) privileged information, including, but not limited to, information or documents which are subject to the attorney-client privilege; (c) confidential and proprietary information, including trade secrets, of Aetna; and (d) privileged and confidential information relating to employee records.

Aetna objects to each of Defendants' interrogatories to the extent that the information sought is not relevant to the subject matter involved in this litigation or reasonably calculated to lead to discovery of admissible evidence.

Aetna objects to each of Defendants' interrogatories to the extent that it is overly broad, vague and ambiguous.

Aetna objects to each of Defendants' interrogatories to the extent that it is unduly burdensome, intentionally harassing and oppressive and seeks information which is within the knowledge, control and/or custody of Defendants.

Aetna objects to each of Defendants' interrogatories on the grounds that it seeks in bad faith to cause unreasonable annoyance, embarrassment, oppression, burden and expense to Aetna.

Aetna objects each of Defendants' interrogatories because additional responsive information may be determined during or after discovery.

Aetna objects to each of Defendants' interrogatories without a temporal limitation as overbroad.

Aetna objects each of Defendants' interrogatories because discovery is continuing and additional information responsive to these interrogatories may be determined during or after discovery.

## **RESERVATION OF RIGHT TO SUPPLEMENT**

Because discovery relating to the issues raised by these interrogatories is still ongoing, Aetna specifically reserves the right to supplement its responses and objections from time to time.

# EXHIBIT 8

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| AETNA INC., AETNA HEALTH, INC., AETNA HEALTH MANAGEMENT LLC AND AETNA LIFE INSURANCE COMPANY, | |
| Plaintiffs, | CIVIL ACTION |
| v. | |
| MEDNAX, INC., PEDIATRIX MEDICAL GROUP, INC. AND MEDNAX SERVICES, INC., | No. 18-2217 |
| Defendants. | |

**DEFENDANTS' FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS TO AETNA INC., AETNA HEALTH, INC., AETNA HEALTH MANAGEMENT, LLC, AND AETNA LIFE INSURANCE CO.**

Pediatrix Medical Group, Inc., MEDNAX Services, Inc., and MEDNAX, Inc., ("Defendants"), by and through their undersigned counsel, hereby request, pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, that Plaintiffs Aetna Inc., Aetna Health, Inc., Aetna Health Management, LLC, and Aetna Life Insurance Company ("Plaintiffs") produce for inspection and copying the documents specified below at the offices of Conrad O'Brien PC, Centre Square West Tower, 1500 Market Street, Suite 3900, Philadelphia, Pennsylvania 19102-2100, within 30 days after service of these requests for production ("Requests").  These Requests are made without waiving any claims that Defendants have or hereafter may assert in this Action and without waiving any defenses in this Action, including the absence of personal jurisdiction over the Defendants.

1

The documents requested for discovery and inspection are to be produced according to the definitions and instructions herein.

## **DEFINITIONS**

The following definitions are to be considered applicable to all specific requests for the production of documents:

1.      Each reference to a corporation, partnership, limited liability company, unincorporated association, government agency or other fictitious person shall be deemed to include each and all of its current and former parents, owners, subsidiaries, affiliates, divisions, predecessors, successors, employees, managers, officers, directors, shareholders, partners, general partners, limited partners, members, agents, representatives, attorneys, accountants, consultants, independent contractors or any other person or entity acting, or purporting to act, with or on behalf of any of the foregoing.

2.      Each reference to a natural person shall be deemed to include that person's relatives, employees, partners, agents, representatives, attorneys, accountants, consultants, independent contractors or any other Person (as defined below) or entity acting, or purporting to act, with or on behalf of any of the foregoing.

3.      "Action" means the litigation captioned above.

4.      "Aetna" means Plaintiffs Aetna Inc., Aetna Health, Inc., Aetna Health Management, LLC, and Aetna Life Insurance Company and each and all of their current and former parents, owners, subsidiaries, affiliates, divisions, predecessors, successors, employees, managers, officers, directors, shareholders, partners, general partners, limited partners, members, agents, representatives, attorneys, accountants, consultants, independent contractors or any other

person or entity acting, or purporting to act, with or on behalf of any of the foregoing, as well as all employer-established health plans that Plaintiffs administer.

5.      "Complaint" means the Complaint filed by Aetna Inc., Aetna Health, Inc., Aetna Health Management LLC, and Aetna Life Insurance Company on April 25, 2018 in the Court of Common Pleas of Pennsylvania, First Judicial District, Philadelphia County.  Compl., *Aetna Inc. v. MEDNAX, Inc.*, No. 171101040, 2018 WL 1998596 (Pa. Ct. Com. Pl. Apr. 25, 2018).

6.      "Communication" means the transmission of information of any kind, in any form and by any means, including but not limited to, and by way of example only, any admission, denial, agreement, contract, conversation, discussion, inquiry, meeting, memorandum, minutes, negotiation, notes (handwritten, typed or otherwise), report, statement, submission, talking points, understanding or any other direct or indirect disclosure in any form, including but not limited to audio, video, digital, electronic, Social Media (whether through postings or private messaging functions), oral or paper form, and any draft communication in such form, whether or not the communication was ever disclosed, sent or transmitted.

7.      "Social Media," in addition to its customary and usual meaning, includes, but is not limited to, Facebook, LinkedIn, Twitter, Instagram, Reddit, Imgur, YouTube, Snapchat, Twitch, WeChat, Skype, WhatsApp, message boards (whether through postings or private messaging functions) and any other internet- based mechanism through which the public communicates.

8.      "Relating to," "Related to," "Concerning" and/or "Regarding," in addition to their customary and usual meanings, shall mean directly or indirectly, in whole or in part, relating to, referring to, concerning, discussing, evidencing, containing, constituting, reflecting, mentioning, assessing, characterizing, recording, describing, touching upon, summarizing, commenting on, showing, disclosing, supporting, explaining, recording, stating, memorializing, noting, analyzing,

contradicting, disputing, or in any way legally, logically or factually dealing with connected to the subject matter described.

9.      "Document" is used in its broadest sense and means, without limitation, written, typed, printed, electronic, graphic or otherwise recorded material of any kind, however produced or reproduced, whether different because of notes made thereon or otherwise, including but not limited to, and by way of example only, any advertisement, agreement, analysis, book, brochure, calendar, chart, check (front and back) or check stub, checklist, contract, cost sheet, database information, diary, electronic file, email, facsimile, filing, financial report, graph, guideline, handbook, index, instant message, invoice, ledger, letter or other correspondence, license, log, memorandum, microfilm, minutes, motion picture film, notebook, notes (handwritten, typed or otherwise), opinion, pamphlet, paper, picture, photograph, plan, policy, procedure, press release, purchase order, receipt, recording, report, statement, study, submission, summary, tabulation, talking points, tape recording, task list, telegram, telephone call record, text message, thing, timesheet, transcript of a telephone conversation, transcript of testimony, travel record, video, voice message or recording, work paper, data compilation, including but not limited to computer data stored on a USB drive, external hard drive, compact disc, computer disk or other memory unit containing such data from which information can be obtained or translated into usable form, translations or summaries of foreign language documents and all similar recorded material.  Each non-identical document is a distinct document, including every such original, copy, draft and version of a document, whether or not any form of the document in question is ever disclosed, sent or transmitted.  A Document further includes any enclosure, exhibit, annex, appendix, schedule or other attachment, whether by staple, clip, rubber band, binding or other means, and all appended or embedded links or files.

10.     "Person" means, without limitation, any individual, corporation, business trust, estate, trust, partnership, limited liability company, association, joint venture, public corporation, group, organization or any other legal or commercial entity, including each and all of its current and former parents, owners, subsidiaries, affiliates, divisions, predecessors, successors, employees, managers, officers, directors, shareholders, partners, general partners, limited partners, members, agents, representatives, attorneys, accountants, consultants, independent contractors or any other person or entity acting, or purporting to act, with or on behalf of any of the foregoing, including but not limited to, and by way of example only, persons residing, conducting business, established or incorporated in Mexico or the United States.

11.     "Defendants" means Pediatrix Medical Group, Inc., MEDNAX Services, Inc., and MEDNAX, Inc., including each and all of their current and former parents, owners, subsidiaries, affiliates, divisions, predecessors, successors, employees, managers, officers, directors, shareholders, partners, general partners, limited partners, members, agents, representatives, attorneys, accountants, consultants, independent contractors or any other person or entity acting, or purporting to act, with or on behalf of any of the foregoing.

12.     "MEDNAX" means MEDNAX Services, Inc., MEDNAX, Inc. and each and all of their current and former parents, owners, subsidiaries, affiliates, divisions, predecessors, successors, employees, managers, officers, directors, shareholders, partners, general partners, limited partners, members, agents, representatives, attorneys, accountants, consultants, independent contractors or any other person or entity acting, or purporting to act, with or on behalf of any of the foregoing.

13.     "You" or "Your" means the subject(s) responding to each Request, including each Plaintiff and any entity or individual encompassed in the preceding definition of the term "Aetna."

14.     The terms "all," "any" and "each" shall be construed broadly and mean all, any and each as necessary so as to bring within the scope of a Request all responses that otherwise could be construed to be outside of its scope.

15.     The terms "and" and "or" shall be construed either disjunctively or conjunctively as necessary so as to bring within the scope of a Request all responses that might otherwise be construed to be outside of its scope.

16.     "Including" means "including, without limitation" or "including, but not limiting to."

17.     "Identify" (with respect to Persons) means to give, to the extent known, the person's full name, present or last known address and when referring to a natural person, additionally, the present or last known place of employment.

18.     The use of the singular of any word includes the plural and vice versa as necessary so as to bring within the scope of a Request all responses that might otherwise be construed to be outside of its scope.

19.     The use of the past tense includes the present tense unless otherwise explicitly delimited.

20.     The use of defined terms in these Requests apply whether or not they are capitalized.

## **INSTRUCTIONS**

1.     Unless otherwise indicated, the documents requested include all Documents and Communications in Your possession, custody or control.  Without limiting the meaning of the terms "possession, custody or control" as used in the preceding sentence, a Document or Communication is in Your possession, custody or control if You have actual possession or custody

6

of the Document or Communication, or the right to obtain the Document or Communication, or a copy thereof, upon demand from one or more of Your agents, representatives, attorneys, accountants, consultants, independent contractors or any other person or public or private entity that has actual physical possession of the Document or Communication.

2.      These Requests shall be deemed to call for the production of original Documents. In addition, the Requests shall be deemed to call for the separate production of all copies and, to the extent applicable, preliminary drafts of Documents that differ in any respect from the original or final draft or each other (*e.g.*, by reason of differences in form or content or by reason of handwritten notes or comments having been added to one copy of a Document but not to the original or other copies thereof).

3.      If You object to any Request, You must state in writing, with specificity, the grounds for objection pursuant to Federal Rule of Civil Procedure 34(b)(2).  If You object to a particular portion of any Request, You shall respond to any other portion of such Request as to which there is no objection and state in writing, with specificity, the grounds of the objection to the particular portion of the Request.  Your response to each Request must specifically indicate for any and each objection whether, and the scope of, Documents or Communications that are being withheld based on each objection.

4.      If You withhold any Document, Communication or part thereof that is responsive to any Request on the grounds of attorney-client privilege; the attorney work product doctrine or any other privilege, doctrine or basis, You must state in writing, with specificity, the:  (1) date of the Document or Communication; (2) the type, title and subject matter of the Document or Communication sufficient to assess whether the assertion of privilege is valid; (3) the name of the person or persons who prepared or signed the Document or engaged in the Communication; (4) the

name and position of any recipient of the Document or Communication and (5) the particular privilege, doctrine or other basis for withholding the Document or Communication.  If You fail to set forth a sufficient factual basis for the assertion of any claim of privilege or protection, then any arguable claim of privilege or protection shall be waived.  Compliance with the above instructions is not to be construed as an admission by Defendants that such privilege or protection is valid, and Defendants reserve the right to challenge any purported claim of privilege or protection.

5.      All electronically stored information ("ESI") should be preserved and produced pursuant to Federal Rule of Civil Procedure 34(b)(2)(E).

6.      Your production and responses to these Requests shall comply with all terms and requirements delineated in the Order Governing E-Discovery (Dkt. 21), unless the parties agree to alternative terms and requirements to the extent contemplated by that Order.

7.      Documents shall be produced on a rolling basis as they become available.

8.      Selection of Documents from files and other sources, and the number of such Documents, shall be performed in such a manner as to ensure that the source of each Document may be determined, if necessary.

9.      File folders with tabs or labels, or directories of files identifying Documents, must be produced intact with such Documents.

10.      Pursuant to Federal Rule of Civil Procedure 34, You must produce entire Documents and Communications, including attachments, enclosures, exhibits, cover letters, memoranda, annexes, schedules, and appendices.  Documents or Communications not otherwise responsive to a Request are to be produced if are attached to, or enclosed with, any Documents or Communications that are responsive.  Without limitation, examples of such include email attachments, attachments to letters or agreements, routing slips, transmittal memoranda or letters,

evaluations or similar Documents and Communications.  In the case of email attachments, if either the email or any of its attachments is responsive, You must produce the email and all of the corresponding attachments.

11.     A Document or Communication with handwritten, typed or other recorded notes, editing marks or other revisions is not and shall not be deemed to be identical to one without such modifications, additions or deletions.  The term "original" includes the file copy or copies of any Document or Communication if there is no actual original.

12.     If You cannot respond fully to a Request after exercising due diligence to secure the information requested, or do not have information responsive to any part of a Request, You must so state, describe in full Your efforts to obtain the information requested and respond to the Request to the fullest extent possible.  If a qualified response to a Request must be given, You shall respond to the Request as directly and fully as possible and state fully the reason that such qualification is necessary.

13.     If Your response to a particular Request is a statement that You lack the ability to comply with that Request, You must specify whether the inability to comply is because the particular item or category of information never existed or has been lost, destroyed, discarded, misplaced, stolen or otherwise disposed of, or because it has never been or is no longer in Your possession, custody or control, in which case the name and address of any Person known or believed by You to have possession, custody or control of that information or category of information must be identified.

14.     These Requests are continuing in nature, so as to require further and supplemental responses if You obtain or discover additional Documents or Communications between the time of initial production and the time of the trial.  Such supplemental Documents or Communications

must be produced promptly upon discovery.  Defendants specifically reserve the right to seek supplementary responses and the additional supplementary production of Documents or Communications before trial.  Defendants will object to any attempt to introduce evidence to the Court that should have been but was not disclosed in the responses or the supplementation of the responses.  All responses to these Requests shall comply fully in all respects with the requirements of the Federal Rules of Civil Procedure, the Eastern District of Pennsylvania Local Rules, and all other applicable rules and Orders by the Court.

15.    The timeframe for these Requests shall be between 2009 through the present date of Your response, unless otherwise specified.

## **REQUESTS FOR PRODUCTION**

REQUEST FOR PRODUCTION NO. 1:

Documents and Communications concerning the allegation that Defendants defrauded Aetna.

REQUEST FOR PRODUCTION NO. 2:

Documents and Communications concerning the allegation that Defendants overbilled Aetna.

REQUEST FOR PRODUCTION NO. 3:

Documents and Communications concerning the allegation that Defendants fraudulently inflated the severity of patients' clinical condition.

REQUEST FOR PRODUCTION NO. 4:

Documents and Communications concerning the allegation that Defendants characterized newborns as needing "critical care" or "intensive care" far more frequently than physicians at the nation's top 50 hospitals.

REQUEST FOR PRODUCTION NO. 5:

Documents and Communications concerning the allegation that Defendants billed for unnecessary medical tests.

REQUEST FOR PRODUCTION NO. 6:

Documents and Communications concerning the allegation that Defendants ordered physicians to change medical records to reflect Defendants' desired billing goals.

REQUEST FOR PRODUCTION NO. 7:

Documents and Communications concerning the allegations that MEDNAX established a bonus and compensation system that incentivized the misconduct alleged in the Complaint, as described, for example, in paragraphs 4, 34, and 36-40.

REQUEST FOR PRODUCTION NO. 8:

Documents and Communications concerning the allegation that Aetna has paid Defendants more than 18% more per episode of care than it has paid to physicians practicing at the nation's top 50 hospitals.

REQUEST FOR PRODUCTION NO. 9:

Documents and Communications concerning any analyses—including regression or statistical analyses—You have performed or commissioned others to perform, that relate to the allegations in the Complaint, in which the results of any analysis were inconsistent with or do not support one or more of the allegations in the Complaint.

REQUEST FOR PRODUCTION NO. 10:

All source data utilized to prepare any analyses responsive to Request for Production No. 9.

REQUEST FOR PRODUCTION NO. 11:

Copies of any literature reviewed in performing any of the analyses referenced in Request for Production No. 9 by the Persons performing those analyses.

REQUEST FOR PRODUCTION NO. 12:

Documents and Communications concerning any analyses undertaken to adjust for, or rule out, factors that could account for Defendants' alleged billing practices that are the subject of the Complaint, including those identified in paragraph 52 of the Complaint.

REQUEST FOR PRODUCTION NO. 13:

Documents and Communications concerning the allegation in paragraph 49 of the Complaint that Defendants bill critical and intensive care CPT codes on approximately 22.1% more days during the episode of care than non-MEDNAX physicians.

REQUEST FOR PRODUCTION NO. 14:

Documents and Communications concerning the allegation in paragraph 49 of the Complaint that Defendants bill approximately 15.3% more critical and intensive care CPT codes per episode of care than non-MEDNAX physicians.

REQUEST FOR PRODUCTION NO. 15:

Documents and Communications concerning the allegation that Defendants bill for procedures and order medical tests in the NICU far more frequently than non-MEDNAX physicians, including for each of the examples identified in paragraph 50 of the Complaint.

REQUEST FOR PRODUCTION NO. 16:

Documents and Communications concerning the allegation of disparity in "before and after" billings involving Defendants, as described in paragraph 48 of the Complaint, including the referenced study allegedly evidencing this disparity.

REQUEST FOR PRODUCTION NO. 17:

Documents and Communications concerning the allegation in paragraph 45 of the Complaint that there was a significant increase in billing per episode of care or change in billing tendencies once Defendants acquired practice groups, including, but not limited to, with regard to the "practice group in Texas" referenced in paragraph 46 of the Complaint and the "practice group in North Carolina" referenced in paragraph 47 of the Complaint.

REQUEST FOR PRODUCTION NO. 18:

Documents sufficient to identify the current and former employees of Defendants or their current or former affiliates or physician groups who were contacted in connection with the investigation of any matter alleged in the Complaint, including those who allegedly provided information supporting the allegations in the Complaint.

REQUEST FOR PRODUCTION NO. 19:

Documents sufficient to identify the "physician in Pennsylvania" referenced in paragraph 41 of the Complaint.

REQUEST FOR PRODUCTION NO. 20:

Communications with or concerning any of Defendants' current and former employees, affiliates, or physician groups, including those referenced in Request for Production No. 18 and the "physician in Pennsylvania" referenced in paragraph 41 of the Complaint, concerning any of the matters alleged in the Complaint, including any communications that are inconsistent with or do not support the allegations in the Complaint.

REQUEST FOR PRODUCTION NO. 21:

All Documents and Communications relating to any of Defendants' current and former employees, affiliates, or physician groups, including those referenced in Request for Production No. 18 and the "physician in Pennsylvania" referenced in paragraph 41 of the Complaint, who were contacted in connection with any investigation of the matters alleged in the Complaint, including, but not limited to, any Documents provided by them and any Documents or Communications that concern meetings with them.

REQUEST FOR PRODUCTION NO. 22:

Documents, including call scripts prepared by or for Plaintiffs, concerning communicating with Defendants' current and former employees, affiliates, or physician groups in connection with the investigation of any matters alleged in the Complaint.

REQUEST FOR PRODUCTION NO. 23:

Documents and Communications concerning the allegations that Defendants submitted claims to Aetna knowing that the claims were upcoded and/or inflated with charges for medically unnecessary services and tests.

REQUEST FOR PRODUCTION NO. 24:

Documents and Communications concerning all prior claims, accusations, and/or lawsuits brought or threatened by Aetna since 2010 alleging overbilling or the provision of medically unnecessary care by medical providers, other than Defendants, on the basis of a statistical or regression analyses, including all challenges to such analyses and the resolution of the claims and/or lawsuits.

REQUEST FOR PRODUCTION NO. 25:

Documents and Communications concerning Aetna's practices and procedures for reviewing treatment authorization requests, including the extent to which a physician is involved in reviewing such requests and all Clinical Policy Bulletins.

REQUEST FOR PRODUCTION NO. 26:

Documents and Communications concerning the October 2016 testimony of Aetna's medical director, Dr. Jay Ken Iinuma, that he did not review patients' medical records before denying them health care.

REQUEST FOR PRODUCTION NO. 27:

Documents and Communications with, or produced to, regulators in connection with investigations arising from or related to Dr. Iinuma's testimony.

REQUEST FOR PRODUCTION NO. 28:

Documents and Communications and other discovery produced by the defendants in the lawsuit filed by Gillen Washington against Aetna Inc. and Aetna Life Insurance Company in the Orange County Superior Court of California, Case No. 30-2015-00811734-CU-BC-CJC.

REQUEST FOR PRODUCTION NO. 29:

Documents and Communications concerning Aetna's claims for damages in this case.

REQUEST FOR PRODUCTION NO. 30:

The specific patient files, claims forms, health records, and any other Documents and Communications related to each billing claim underlying the causes of action asserted in the Complaint.

REQUEST FOR PRODUCTION NO. 31:

All contracts, agreements, or other Documents or Communications concerning Your contention You may assert the claims in the Complaint as a "third party administrator" or "claims administrator", as referenced in paragraph 21-22 of the Complaint, on behalf of any of the self-funded, employer-established health plans for which you seek to do so.

REQUEST FOR PRODUCTION NO. 32:

Documents stating or reciting Aetna's policies and procedures related to or governing its review of invoices submitted by Defendants.

REQUEST FOR PRODUCTION NO. 33:

Documents reflecting Aetna's policies and procedures related to or governing its payment of invoices submitted by Defendants, or challenges to such invoices or recoupment of such payments.

REQUEST FOR PRODUCTION NO. 34:

Documents and Communications regarding any review of Defendants' invoices undertaken in connection with the investigation of any matter alleged in the Complaint, including any that (a) supports the allegations in the Complaint or (b) are inconsistent with, or fail to support the allegations in the Complaint.

REQUEST FOR PRODUCTION NO. 35:

Plaintiffs' organizational Documents, including any articles of organization, articles of incorporation, operating agreements, bylaws, and amendments thereto.

REQUEST FOR PRODUCTION NO. 36:

Organizational charts or similar Documents for all of Plaintiffs' entities with which Defendants or their current or former affiliated physician groups have or had contracts.

REQUEST FOR PRODUCTION NO. 37:

Minutes and other Documents relating to any meeting, whether formal or informal, of Aetna's Board of Directors (or the equivalent) that refer or relate to any alleged overbilling, miscoding, upcoding, ordering of unnecessary tests, or any of the other conduct alleged in the Complaint of Defendants or their current or former affiliated physician groups.

REQUEST FOR PRODUCTION NO. 38:

Minutes and other Documents relating to any meeting, whether formal or informal, of Aetna's Board of Directors (or the equivalent) or any department or unit of Aetna, including, but not limited to, Coding, Billing, Claims Processing, or Special Investigations Unit ("SIU") departments that refer or relate to any alleged overbilling, miscoding, upcoding, ordering of unnecessary tests, or any of the other conduct alleged in the Complaint of Defendants or their current or former affiliated physician groups.

REQUEST FOR PRODUCTION NO. 39:

Documents stating or reciting Aetna's policies and procedures related to or governing the identification or detection of overbilling, improper coding, or overpayments to medical providers.

REQUEST FOR PRODUCTION NO. 40:

Reports generated by Your claims processing software or fraud detection software (including, but not limited to, ClaimsXten, Fraud and Abuse Management System, or Aetna Standard Table) identifying or referencing any of the alleged conduct described in the Complaint, including miscoding, upcoding, or the ordering of unnecessary testing.

REQUEST FOR PRODUCTION NO. 41:

Reports and profiles generated by your SIU (including, but not limited to, any profiles created by the Fraud and Abuse Management System) that examined or analyzed Defendants' or Defendants' affiliates' billing behavior.

REQUEST FOR PRODUCTION NO. 42:

Communications between Aetna and Robert W. Makuch, Ph.D. regarding any matters at issue in this lawsuit, including, without limitation, "the analysis of Defendants' and their affiliates' submitted bills and the statistical analysis detailed in Aetna's complaint[,]" as described in your Initial Disclosures.

REQUEST FOR PRODUCTION NO. 43:

Internal and external audits of Defendants' or its current or former affiliates' historical claims data.

REQUEST FOR PRODUCTION NO. 44:

All written or recorded statements, declarations, or affidavits of any of Defendants' or Defendants' affiliates' (including former affiliates) current or former employees.

REQUEST FOR PRODUCTION NO. 45:

Documents and Communications evidencing MEDNAX' purported "pressuring physicians with financial inducements . . . [,]" as alleged on page 8 of your Response in Opposition to Defendants' Motion to Dismiss.

REQUEST FOR PRODUCTION NO. 46:

Documents and Communications regarding opinions, statements, or information from any Persons that Aetna relied upon in supporting the allegations in the Complaint.

REQUEST FOR PRODUCTION NO. 47:

All CMS 1500 claim forms for each patient Aetna contends was provided medically unnecessary care or the care provided was overbilled, miscoded, or upcoded by Defendants or any of their current or former affiliated physician groups.

REQUEST FOR PRODUCTION NO. 48:

All Documents, including any charts or spreadsheets, documenting or tracking the patients Aetna contends were provided medically unnecessary care or the care they were provided was overbilled, miscoded, or upcoded by Defendants or any of their current or former affiliated physician groups.

REQUEST FOR PRODUCTION NO. 49:

The medical and billing records for each patient Aetna contends was provided medically unnecessary care or the care provided was overbilled, miscoded, or upcoded by Defendants or any of their current or former affiliated physician groups.

<u>REQUEST FOR PRODUCTION NO. 50</u>:

Documents and Communications (a) upon which Plaintiffs relied to support the allegations in the Complaint and (b) that are inconsistent with, or fail to support the allegations in the Complaint.

DATED:  November 30, 2018          **QUINN EMANUEL URQUHART & SULLIVAN, LLP**


By:   _____*/s/* Luke Nikas_____
LUKE NIKAS
lukenikas@quinnemanuel.com
MICHAEL B. CARLINSKY
michaelcarlinsky@quinnemanuel.com

51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849 7000
Fax: (212) 849 7100


**CONRAD O'BRIEN PC**
HOWARD M. KLEIN
Pennsylvania Bar No. 33632
hklein@conradobrien.com
ROBERT N. FELTOON
Pennsylvania Bar No. 58197
rfeltoon@conradobrien.com
ANDREW K. GARDEN
Pennsylvania Bar No. 314708
agarden@conradobrien.com

Centre Square West Tower
1500 Market Street, Suite 3900
Philadelphia, PA 19102-2100
Telephone: (215) 864-9600
Fax: (215) 864-9620


*Attorneys for Defendants Pediatrix Medical Group, Inc.,*
*MEDNAX Services, Inc., and MEDNAX, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on this 30th day of November, 2018, the foregoing was served on all counsel of record via email and, in addition, was also sent to counsel for Plaintiffs via overnight delivery service.

_/s/_ Michael Pemstein
_____

EXHIBIT 9

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| AETNA INC., *et al*., | CIVIL ACTION |
| Plaintiffs, | No. 18-2217 |
| v. | |
| MEDNAX, INC., *et al*., | |
| Defendants. | |

**PLAINTIFFS' RESPONSES TO DEFENDANTS'
THIRD SET OF REQUESTS FOR PRODUCTION**

Pursuant to the Federal Rules of Civil Procedure, Aetna[1] hereby responds to the Requests for Production issued by Mednax.[2] Aetna incorporates by reference the reservations and objections set forth in Exhibit 1 hereto.

**AETNA'S RESPONSES**

**REQUEST NO. 54:** All Documents You relied upon, consulted, or referenced in responding to Mednax's Second Set of Interrogatories.

**AETNA'S RESPONSE:** Aetna objects as this request seeks documents that are privileged or otherwise protected from production by the work product doctrine. Subject to, and without waiver of these objections, Aetna has already produced its SIU files relating to Mednax, with the exception of documents that are being withheld pending a Court ruling on certain third-party investigations.

---

[1] Aetna, Inc., Aetna Health, Inc., Aetna Health Management LLC and Aetna Life Insurance Company, all together, "Aetna."

[2] Defendants Mednax, Inc., Mednax Services, Inc., formerly Pediatrix Medical Group, Inc., all together, "Mednax."

**REQUEST NO. 55:**  All Documents concerning any vendor or subcontractor that provided any services  concerning the medical claims or billing practices at issue in this Action, including pre- or post- payment fraud detection, auditing, investigation or data analytics services, and including a copy  of all engagement letters, statements of work and Documents received from or provided to such  Persons.

**AETNA'S RESPONSE:**  Aetna objects to this request as overly broad, unduly burdensome, and not relevant to the parties' claims or defenses.  Aetna further objects to this request to the extent it seeks documents that are protected from disclosure by the attorney client privilege or work product doctrine.  Aetna objects to Mednax's request for "all" documents relating to any vendors and subcontractors who performed "any" of the identified tasks as overly broad and unduly burdensome. Aetna further objects to the request that it produce documents relating to "all" vendors or subcontractors that provide "any" pre- or post-payment review as not relevant to the parties claims or defenses; pre- and post-payment reviews are performed as a matter of usual business operations on a large number of the millions of claims Aetna processes every day.  The reviews, if any, these vendors perform are not relevant to the parties' claims and defenses, and moreover the burden of their production would be disproportionate to any minimal relevance they may have.

Subject to, and as limited by, the foregoing objections, to the extent that Aetna has engaged any vendors or subcontractors to perform fraud detection, auditing, investigation or data analytics services relating to the claims at issue in this case, Aetna will produce non-privileged documents that it is able to collect following a reasonably diligent search.

**REQUEST NO. 56:**  All Documents and Communications exchanged between You and any vendor or  subcontractor regarding any claims or data analysis of the medical claims

2

at issue in this Action, or NICU claims data.

**AETNA'S RESPONSE:**  Aetna objects to this request as overly broad and unduly burdensome, and not proportionate to the needs of the case. Aetna further objects to this request as seeking documents that are protected by the attorney-client privilege and work product protection.  Aetna further objects to the request that it produce "all" documents relating to "any" vendor that was hired to review "NICU claims data" in general, without regard for whether any such review is relevant to this matter.

Subject to, and as limited by, the foregoing objections, to the extent that Aetna has engaged any vendors or subcontractors to perform fraud detection, auditing, investigation or data analytics services relating to the claims at issue in this case, Aetna will produce non-privileged or otherwise protected documents that it is able to collect following a reasonably diligent search.

**REQUEST NO. 57:**  All Documents concerning any third party professional who was engaged in relation to the  medical claims or billing practices at issue in this Action, including but not limited to economists,  statisticians,  investigators,  health  professionals  and  data analysts  (e.g.,  John  Bowblis,  Daniel   Sandoval,  Howard Pierce,  Robert Makuch, The Indago Group, and DPR Integrated Solutions) and,  for any such Person, a copy of all engagement letters and Documents received from or provided  to such Persons.

**AETNA'S RESPONSE:**      Aetna objects to this request as seeking information and documents that are protected by the work product doctrine. Aetna further objects to the extent this request as seeking information protected by the attorney client privilege.  Aetna further objects to this request as seeking information that is not in Aetna's possession, custody or control and is not relevant to this case.  In addition, Aetna objects to this request as harassing, overly broad, burdensome, and not propounded in good faith, including because Mednax is seeking discovery

relating to Aetna's counsel and consultants, and not information that is relevant to this litigation.

**REQUEST NO. 58:** Documents sufficient to identify the date(s) on which You retained Howard Pierce to conduct any claims analysis concerning Mednax or the allegations described in the Complaint.

**AETNA'S RESPONSE:** Aetna objects to this request as seeking information and documents that are protected by the work product doctrine. Aetna further objects to the extent this request is seeking information protected by the attorney client privilege. Aetna also objects because this request for documents is properly raised as an interrogatory, which Aetna has answered. Moreover, Aetna provided the requested information weeks ago.

**REQUEST NO. 59:** All NICU claims data You provided to Howard Pierce in connection with any analysis of Mednax or the allegations described in the Complaint.

**AETNA'S RESPONSE:** Aetna objects to this request as seeking information and documents protected by the work product doctrine and/or attorney client privilege.

**REQUEST NO. 60:** All Documents up through the present time period concerning Aetna's collaboration or cooperation with any third parties concerning the medical claims or billing practices at issue in this Action, including but not limited to the National Health Care Anti-Fraud Association, any law enforcement, regulatory or governmental agency or entity, any task force, insurance company, health care provider, or referral source, including but not limited to Documents received from or provided to such Persons.

**AETNA'S RESPONSE:** Aetna objects as this request seeks documents subject to the attorney client privilege or otherwise protected from production by the work product doctrine. Aetna also objects to the time period embraced by this request. Aetna further objects to the production of documents relating to any "law enforcement, regulatory or governmental agency"

given that Aetna understands objections to the production of documents and information have

been made by third parties to the Court, which objections are being reviewed and evaluated by

the Court.  Additionally, Aetna objects to producing documents, if any, relating to

communications with other "insurance compan[ies]" as not having anything to do with this

litigation.  Aetna further objects to the term "referral source," as that term is vague and

undefined, and, in any event, any such communications are not relevant to the issues in this case.

Subject to, waiver of these objections, Aetna has produced non-privileged documents relating to

SIU investigations of Mednax and relating to third party investigations into Mednax.  Aetna is

awaiting a court ruling on the issue of third-party investigations and will respond accordingly.

**REQUEST NO. 61:**  Documents sufficient to show the date(s) on which The Indago

Group, Howard Pierce or  any other Person first transmitted to You (orally or in writing) the

"information . . . received from  Defendants' former employees" (Dkt. 66 at 3), including copies

of the Investigative Memoranda  or notes contained in Aetna 000002 – 034.

**AETNA'S RESPONSE:**  Aetna objects to this request as seeking information and

documents that are protected by the work product doctrine. Aetna further objects to the extent

this request as seeking information protected by the attorney client privilege.

**REQUEST NO. 62:**  All Documents concerning any review of services or audits that

Aetna or any third party  undertook relating to the medical claims or billing practices at issue in

this Action, including the  findings or conclusions of such review of services or audits.

**AETNA'S RESPONSE:**  Aetna objects to this request as seeking information and

documents that are protected by the work product doctrine. Aetna further objects to the extent this

request seeks information and documents protected by the attorney client privilege. Aetna further

objects to the term "audit" as vague and undefined, including because Mednax has improperly

interpreted it to implicate any instance in which a single Mednax claim was reviewed for general billing errors, such as duplicate charges, coordination of benefits issues, coverage, routine over- or under-payments and the like.  Aetna also objects to this request in that is seeks documents relating to "services" relating to Mednax medical claims, as that term is undefined and limitless in scope.

**REQUEST NO. 63:**  All Documents concerning any review of services or audits that any self-funded plan undertook relating to the medical claims or billing practices at issue in this Action, including the findings or conclusions of such review of services or audits.

**AETNA'S RESPONSE:**  Aetna objects to this request as seeking information and documents that are protected by the work product doctrine. Aetna further objects to the extent this request seeks information and documents protected by the attorney client privilege. Aetna further objects to the term "audit" as vague and undefined, including because Mednax has improperly interpreted it to implicate any instance in which a single Mednax claim was reviewed for general billing errors, such as duplicate charges, coordination of benefits, coverage, routine over- or under-payments and the like.  Aetna also objects to this request in that is seeks documents relating to "services" relating to Mednax medical claims, as that term is undefined and limitless in scope.

**REQUEST NO. 64:**  All policies and procedures that govern the SIU, including any manuals or field manuals.

**AETNA'S RESPONSE**:  Aetna objects to this request as overly broad and unduly burdensome, and not proportionate to the needs of the case.  Subject to, and without waiver of, these objections, Aetna will produce the SIU policy handbooks for the relevant time period.

**REQUEST NO. 65:**  All periodic and activity reports concerning the medical claims or billing practices at issue  in this Action, including quarterly fraud and abuse prevention activity reports, and annual reports  concerning the implementation of Aetna's anti-fraud plans.

**AETNA'S RESPONSE**:  Aetna objects to this request as overly broad and unduly burdensome, and not proportionate to the needs of the case.  Aetna further objects to this request as seeking documents and information not relevant to this case, including because this request seeks "all" documents relating to any "quarterly fraud and abuse prevention activity."  Subject to, and without waiver of these objections, Aetna responds by stating that it has produced its SIU files relating to Mednax.  In addition, Aetna is awaiting a court ruling on the issue of third-party investigations and will respond accordingly.

**REQUEST NO. 66:**  All Documents concerning outlier reports relating to Mednax or the medical claims or billing practices at issue in this Action.

**AETNA'S RESPONSE**:  Aetna objects to this request as overly broad and unduly burdensome, and not proportionate to the needs of the case.  Subject to, and without waiver of these objections, Aetna responds by stating that it has produced its SIU files relating to Mednax. In addition, Aetna is awaiting a court ruling on the issue of third-party investigations and will respond accordingly.

**REQUEST NO. 67:**  All Documents concerning data mining meetings relating to Mednax or the medical claims  or billing practices at issue in this Action.

**AETNA'S RESPONSE**:  Aetna objects to this request as overly broad and unduly burdensome, and not proportionate to the needs of the case.  Subject to, and without waiver of these objections, Aetna responds by stating that it has produced its SIU files relating to Mednax. In addition, Aetna is awaiting a court ruling on the issue of third-party investigations and will respond accordingly.

**REQUEST NO. 68:**  A copy of Your anti-fraud and compliance plans and/or compliance work plans from 2010  to the present.

**AETNA'S RESPONSE:**  Aetna objects to this request as overly broad and unduly burdensome, and not proportionate to the needs of the case.  Subject to, and without waiver of, these objections, Aetna will produce the SIU policy handbooks for the relevant time period.

**REQUEST NO. 69:**  All policies and procedures and manuals concerning the operation of the software, systems  and tools that Aetna uses or used to detect alleged fraud in the medical claims at issue in this  Action, including ClaimCheck, Fraud and Abuse Management System, and any Statistical  Analysis System software.

**AETNA'S RESPONSE:**  Aetna objects to this request as overly broad and unduly burdensome, and not proportionate to the needs of the case.  Indeed, this request seeks every single policy and procedure relating to all of Aetna's systems and "software."  Subject to, and without waiver of, these objections, Aetna responds by stating that it has produced its SIU files relating to Mednax and will produce the SIU policy handbooks for the relevant time period.  In addition, Aetna is awaiting a court ruling on the issue of third-party investigations and will respond accordingly.

**REQUEST NO. 70:**  To the extent not responsive to prior Document Requests, any data  analytics  reports  generated by You that analyze Mednax's billing practices or behavior.

**AETNA'S RESPONSE:**  Aetna objects to this request as overly broad and unduly burdensome, and not proportionate to the needs of the case.  Aetna further objects to this request to the extent it seeks documents and information that are protected by the attorney client privilege or work product doctrine.  Subject to, and without waiver of, these objections, Aetna responds by stating that it has produced its SIU files relating to Mednax.  In addition, Aetna is awaiting a court ruling on the issue of third-party investigations and will respond accordingly.

**REQUEST NO. 71:**  All "empirical data" that allegedly establishes Mednax's "intentional overbilling," as set  forth in paragraph 5 of the Complaint.

**AETNA'S RESPONSE**:  Aetna objects to this request as duplicative of numerous previous requests.  Subject to, and without waiver of that objection, Aetna responds by stating that ithas produced the data and information underlying the regression analysis referenced in the Complaint, both during settlement negotiations and as part of this litigation.

**REQUEST NO. 72:**  All "scorecards" evaluating  the  performance  of  SIU  personnel who  were  involved  in  Aetna's review and investigation of the medical claims or billing practices at issue in this Action.

**AETNA'S RESPONSE:**  Aetna objects to this request as overly broad and unduly burdensome, and not proportionate to the needs of the case.  Subject to, and without waiver of, these objections, Aetna has produced its SIU files relating to Mednax.


By:  */s/ Mark J. Schwemler*
Mark J. Schwemler
Gregory S. Voshell
Aimee L. Kumer
Thomas B. Helbig
ELLIOTT GREENLEAF P.C.
925 Harvest Drive, Suite 300
Blue Bell, Pennsylvania 19422

MAY 22, 2019

*Counsel for Plaintiffs*

9

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 22, 2019, I served the foregoing on all counsel of record via email.

*/s/ Gregory S. Voshell*
Gregory S. Voshell

## EXHIBIT 1

### I.  PRELIMINARY STATEMENT

Plaintiffs ("Aetna") hereby provide the following responses and objections to Defendants' requests for production of documents.  Aetna's responses are made without waiving or intending to waive, and, on the contrary, are made intending to preserve and are preserving:

1.      All questions as to competency, relevancy, materiality, privilege and admissibility of evidence for any purpose in any subsequent proceedings or the trial of this or any other action;

2.      The right to object on any ground at any time to a demand for further response to this or any other document request or discovery procedures involving or relating to the subject matter of these document requests;

3.      The right to further supplement and/or amend these responses based upon the discovery of additional information or documents;

4.      The right to object to the use of any documents or evidence by any party in any subsequent proceedings or the trial of this or any other action on any ground; and

5.      The attorney-client, work-product and expert privileges and, accordingly, any subsequent response or production shall not constitute a waiver of said privileges.

### II.  GENERAL OBJECTIONS

1.      Aetna objects to Defendants' instructions and definitions to the extent they attempt to impose obligations upon the Aetna beyond those contained in the Federal Rules of Civil Procedure, and to the extent that it seeks discovery beyond that permitted by the Federal Rules of Civil Procedure.

2.      Aetna objects to each of document request to the extent it seeks (a) attorney work product (b) privileged information, including, but not limited to, information or documents which are subject to the attorney-client privilege; (c) confidential and proprietary information, including trade secrets, of Aetna; and (d) privileged and confidential information relating to employee records.

3.      Aetna objects to each document request to the extent that the information sought is not relevant to the subject matter involved in this litigation or reasonably calculated to lead to discovery of admissible evidence.

4.      Aetna objects to each document request to the extent that it is overly broad, vague and ambiguous.

5.      Aetna objects to each document request to the extent that it is unduly burdensome, intentionally harassing and oppressive and seeks information which is within the knowledge, control and/or custody of Claimants.

6.      Aetna objects to each document request to the extent that it seeks in bad faith to cause unreasonable annoyance, embarrassment, oppression, burden and expense to Aetna.

7.      Aetna objects to each document request without a temporal limitation as overbroad.

## III.    RESERVATION OF RIGHT TO SUPPLEMENT.

Aetna specifically reserves the right to supplement their responses from time to time as material additions or changes occur.

# EXHIBIT 10

# ROBBINS | RUSSELL

Robbins, Russell, Englert, Orseck, Untereiner & Sauber LLP

Jennifer S. Windom

202.775.4527
jwindom@robbinsrussell.com

December 4, 2019

**VIA EMAIL**

Mark J. Schwemler, Esq.
Elliott Greenleaf
925 Harvest Drive, Suite 300
Blue Bell, PA 19422
*mjs@elliottgreenleaf.com*

Re:     *Aetna, Inc., et al. v. Mednax, Inc., et al.*, No. 18-cv-02217 (E.D. Pa.)

Dear Mark:

We write regarding several outstanding discovery issues. This letter does not address our ongoing concerns regarding the status of Aetna's regression-related discovery, which we intend to address with you separately.

*First*, Magistrate Judge Lloret's October 30, 2019 order (Dkt. No. 167) directed Aetna to produce an unredacted copy of the Valerie Moniaci interview memorandum prepared by The Indago Group. Please produce this memorandum promptly.

*Second*, in May and June 2019, your firm agreed in written correspondence that Aetna would produce "expeditiously" several categories of documents responsive to Mednax's discovery requests. Our co-counsel discussed these requests and Aetna's failure to produce responsive documents with you again during an August teleconference. At that time, you represented that Aetna would produce many of these documents by mid-September. September has come and gone, and Aetna has not produced any of these documents. Please produce this discovery promptly. By way of reminder, the discovery that Aetna previously agreed to produce, but has not yet produced, includes:

1. <u>SIU Policy Manuals</u> relating to the 2013-2017 time period.

2. <u>Documents exchanged with OIG</u>. OIG stated in correspondence to the Court that it did not object to Aetna producing these documents so long as agent names were redacted. Mednax

ROBBINS | RUSSELL

To: Mark J. Schwemler, Esq.
December 4, 2019
Page 2

agreed to that condition and, on May 22, 2019, you agreed to produce these documents after applying those limited redactions.  Particularly in light of Magistrate Judge Lloret's November 22, 2019 order (Dkt. No. 170) requiring Aetna to produce communications and information exchanged with third-parties, including the government, these documents should be produced immediately.

3.  <u>Written Policies, Procedures, and Manuals for Aetna's Fraud Detection Systems (RFP 69)</u> (including relating to claims software and systems that have fraud-detection capabilities, such as ClaimCheck, ClaimsXten, etc.).  Aetna agreed to produce this material in its May 31, 2019 supplemental response to Interrogatory No. 3, but has not done so.

4.  <u>Aetna's Contracts with Self-Funded Plans (RFP 31)</u>.  During a February 1, 2019 teleconference (which was summarized in a February 6, 2019 letter to you), you stated that you would produce the contract excerpts that you believe demonstrate Aetna's standing to pursue claims on behalf of the employers for whom Aetna serves as third-party plan administrator.  While we continue to object to this limitation, and believe we are entitled to receive copies of entire contracts, we can agree as an initial matter to review those excerpts.  We ask that you also produce the agreements' tables of contents.

5.  <u>SIU-related documents concerning Mednax or its affiliates, including documents relating to SIU investigator Sean Petree's investigation</u>.  During an August teleconference and in a September 4, 2019 email, you agreed to produce documents relating to SIU-related investigations of Mednax or its affiliates, even where a formal SIU case file may not have been opened.  You have not produced these documents.

6.  <u>Supplemental Response to Interrogatory No. 4</u>.  On April 2, 2019, you agreed (via email) to revise this response, and specifically identify all investigations Aetna has conducted of Mednax.  You have not done so.

7.  <u>Supplemental Response to Interrogatory No. 11</u>.  On June 17, 2019, you agreed (via email) that Aetna would supplement its interrogatory response to state whether Aetna ever conducted coding or billing audits of any Mednax-affiliated provider, placed flags or implemented claims processing edits on Mednax claims, or placed a Mednax-affiliated provider on a watch list.  It has not done so.

*Third*, there are a number of outstanding discovery requests where Aetna advised—months ago—that it was in the process of confirming whether responsive documents or information exist.  You previously advised that, if this discovery does exist, it would be provided.  However, not only have you failed to produce such discovery, you never notified Mednax's counsel whether responsive documents and information exist.  Please advise immediately whether Aetna has and will be producing the following documents and information, and the date by which such discovery will be produced:

1.  <u>Aetna's Internal Claims Processing Policies and Procedures (RFP 32-33)</u> – During an August 2019 teleconference, you said that you had misinterpreted Mednax's request for

# ROBBINS | RUSSELL

To: Mark J. Schwemler, Esq.
December 4, 2019
Page 3

these documents. Mednax's counsel requested Aetna's position on whether it would produce the claims-processing policies and procedures relating to NICU claims. Please advise immediately regarding Aetna's position.

2. <u>Periodic/Activity Reports Regarding Claims/Billing Practices at Issue (RFP 65)</u> – In a June 17, 2019, email, you stated that you would determine whether such material exists. Please advise.

3. <u>Anti-Fraud and Compliance Plans (RFP 68)</u> –In a June 17, 2019, email, you stated that you would determine whether such plans exist. Please advise.

4. <u>Outlier Reports, Data Mining Meeting Minutes, and Data Analytics Reports Concerning Mednax's Billing Behavior (RFPs 66, 67, and 70)</u> – In a June 17, 2019, email, you stated that you would determine whether such documents exist. Please advise.

5. <u>Reviews of Services / Prior Coding and Billing Audits of Mednax (Interrogatory No. 14 / RFPs 43, 62-63)</u> – You previously stated that Aetna would produce information and documents relating to any audits of Mednax claims. You have not identified whether any audits were in fact performed, let alone produced the results of any such audits. Nor have you identified whether Aetna performed any medical record, fraud detection, or fraud prevention reviews of Mednax claims. Particularly in light of Magistrate Judge Lloret's November 25, 2019 order (Dkt. No. 172) requiring Aetna to produce discovery regarding any "investigations" of Mednax, we request an immediate response as to what responsive Aetna material possesses and whether Aetna intends to produce such material.

*Finally*, we have identified a number of additional deficiencies with respect to Aetna's discovery, and request that you reconsider your position on these issues. These issues include:

1. <u>Aetna's Supplemental Responses to Interrogatory Nos. 9-10</u> – Aetna's supplemental responses do not sufficiently respond to these interrogatories. Both responses fail to identify all senders and recipients of these allegedly privileged conversations, and likewise fail to provide the specific dates on which these communications are claimed to have occurred. Please either supplement Aetna's responses with complete information or produce a supplemental privilege log.

2. <u>Productions from Non-Parties in Response to Aetna Subpoenas</u> – You have previously stated that you are unwilling to provide Mednax with copies of documents produced in response to third-party subpoenas issued by Aetna unless and until you determine that the non-party has completed its subpoena response. As we have previously explained, indefinitely withholding documents produced by third-parties, especially with discovery nearing a close, is inappropriate and unduly prejudicial to Mednax. What is more, Aetna has not advised which of the subpoenaed third-parties have made full or partial productions, which objections have been asserted, or when non-party productions are expected to be completed. Please produce the subpoenaed documents and information,

ROBBINS | RUSSELL

To: Mark J. Schwemler, Esq.
December 4, 2019
Page 4

and please provide an update regarding the status of all outstanding document subpoenas issued by Aetna.

3. Names of Vendors and Subcontractors (Interrogatory No. 7/RFP 55) – In June 2019, Aetna advised that it would provide Mednax the names of any vendors and subcontractors involved in fraud detection.  We have not received that information.  Mednax also requested the names of vendors and subcontractors involved in review of NICU claims, including in coding and billing audits of such claims.  Please advise if Aetna intends to produce this information.

4. Reports Prepared by Aetna Discussing Mednax or its Billing Practices (RFP 96) – Aetna's objections to this request are not well taken.  Any cost-of-care forecasts, analyses of anticipated or actual Mednax-related costs, analyses that compare Mednax's cost of care against non-Mednax providers, "root cause" reports, or reports that analyze Mednax billing trends, among other reports, are highly relevant to Aetna's allegations in this case.  Aetna's contention that these documents are being sought for an improper business purpose is not accurate.  If Aetna is concerned about the sensitivity of these materials, it can designate them as confidential pursuant to the protective order.

5. Job Description of Head of Medical Cost Analytics Unit (RFP 97) – Aetna has agreed to designate the head of this unit, Rhonda Lessard, as a document custodian.  In addition, Ms. Lessard was involved in pre-suit discussions between the parties.  Moreover, Aetna has acknowledged the relevance of this business unit by producing some (but apparently not all) organizational charts for this unit.  These facts alone demonstrate that your objections are unavailing and that responsive documents should be produced.

6. Job Description of Supervisor of Data Mining & Service Requests within SIU (RFP 98) – Aetna has claimed that its ordinary fraud detection systems were unable to detect the alleged fraud at issue (Plaintiffs' Objections and Responses to Defendants' Interrogatories, No. 3, dated Jan. 16, 2019), and that it was only able to do so after a "world-renowned statistician" reviewed Mednax claims data.  Opp. to Mot. to Dismiss (Dkt. No. 26) at 27.  Mednax is entitled to discovery concerning how Aetna's data mining capabilities were supposedly unable to detect the alleged fraud.  This includes understanding the job duties of the individual within Aetna's SIU charged with that responsibility.  This request is plainly relevant.

7. Status of Production of Documents Responsive to Custodial Searches – To date, Aetna has not produced any custodial documents.  Please produce such documents or advise when such production will be made.

8. Organization and Compliance Charts (RFP 36) – In emails dated June 14 and 17, 2019, you stated that Aetna was in the process of collecting additional Medical Economics Unit organization charts, as well as compliance charts, and would produce them.  Such charts have not been produced.  In addition, Aetna should produce organizational charts for

ROBBINS | RUSSELL

To: Mark J. Schwemler, Esq.
December 4, 2019
Page 5

employees it has added as custodians and identified in response to Interrogatory Nos. 1 and 12.  Please advise if Aetna intends to do so.

9.  <u>Rog 13/RFP 60</u> – The parties previously conferred about Aetna's objections to this discovery relating to third-parties with whom Aetna has discussed the claims at issue. Magistrate Judge Lloret has since issued an order (Dkt. No. 170) making clear that Aetna must produce communications and information exchanged with third-parties, including the government.  In light of that order, Aetna's objections are without basis.  Aetna should produce responsive documents, and it should respond to this interrogatory without objection.  Please advise if Aetna intends to do so.

10.  <u>Missing Metadata</u> – Our co-counsel previously raised with you the fact that Aetna's initial document production did not include metadata.  You advised on June 10, 2019 that Aetna would reproduce its prior production with corresponding metadata.  We do not, however, have any record of receiving that re-production with metadata.  Please provide it.

* * *

Please confirm Aetna's position with respect to each of the above issues by Friday, December 13.  For each item, please clarify when you will provide the requested discovery or state that Aetna does not intend to produce it.  If we do not hear from you by December 13, we will assume that the parties are at an impasse as to all of these issues, and we will raise these issues with the Court, as appropriate.

Sincerely,

Jennifer S. Windom

cc:    Marty Goldberg, Lash & Goldberg, LLP
       Jon Feuer, Lash & Goldberg, LLP

EXHIBIT 11

**From:** Aimee L. Kumer [mailto:alk@elliottgreenleaf.com]
**Sent:** Tuesday, April 02, 2019 1:39 PM
**To:** John Chun
**Cc:** Luke Nikas ; 'jfeuer@lashgoldberg.com' ; 'lvanwey@lashgoldberg.com' ; 'mgoldberg@lashgoldberg.com' ; Jennifer Barrett ; Michael Carlinsky ; 'Feltoon, Robert' ; 'Klein, Howard' ; 'Garden, Andrew K.' ; 'Arrington, Sherrill' ; Mark Schwemler ; Gregory S. Voshell ; Fred Santarelli
**Subject:** RE: Aetna Inc. et al. v. Mednax, Inc. et al. -- agenda for next meet and confer

**[EXTERNAL EMAIL]**

*correction – the meet and confer is scheduled for today at 3pm, not tomorrow

**From:** Aimee L. Kumer
**Sent:** Tuesday, April 02, 2019 1:38 PM
**To:** 'John Chun'
**Cc:** 'Luke Nikas'; 'jfeuer@lashgoldberg.com'; 'lvanwey@lashgoldberg.com'; 'mgoldberg@lashgoldberg.com'; 'Jennifer Barrett'; 'Michael Carlinsky'; 'Feltoon, Robert'; 'Klein, Howard'; 'Garden, Andrew K.'; 'Arrington, Sherrill'; Mark Schwemler; Gregory S. Voshell; Fred Santarelli
**Subject:** RE: Aetna Inc. et al. v. Mednax, Inc. et al. -- agenda for next meet and confer

John:
We write to respond to your March 18 and 20 emails, and in advance of our meet and confer scheduled for tomorrow. In the interest of stream-lining the parties' discussions, we provide the below responses, which we believe address most if not all of the issues identified in your proposed "agenda" circulated last week.

- **Mednax RFP Nos. 39-41 and Interrogatory Nos. 3-4 (Aetna's policies, practices and procedures, and software and systems, concerning detection of overbilling, improper coding or overpayments)**: Aetna disagrees with Mednax's mischaracterizations of counsel's statement to the Court, and purported recitation of our call. It seems you are now demanding production of documents relating to all methods of detecting improper billing, regardless of whether they were applied to Mednax and regardless of whether they are related to an investigation, as well as all reports or records from Aetna's claims processing software. This issue was specifically addressed in your February 15 letter to the Court, and ruled upon by the Court in favor of Aetna. In her order, the Court directed Aetna to produce any documents relating to any <u>investigation</u> conducted by Aetna of Mednax regarding overbilling and improper coding.

  Nonetheless, and in an effort to finally address this issue: it is not possible to search for and identify every document or report that may identify or discuss an instance of overbilling or improper coding by Mednax. It is possible for Aetna to produce all documents relating to any investigations of Mednax for overbilling or improper coding, and that is what we will be producing, in compliance with the Court's Order. Consistent with the Court's order, we will supplement our response to Interrogatory No. 3 to describe any systems used by Aetna in connection with any investigation of Mednax during the time period at issue in the complaint, and supplement our response to Interrogatory No. 4 to identify all investigations of Mednax. Separately, we will

1

agree to provide information about the fraud and abuse software used by Aetna during the relevant time period.

- **Mednax RFP Nos. 32-34 (Aetna's policies and procedures for, and documents relating to, processing Mednax claims):** As we have explained repeatedly, the documents that specifically govern and explain the payment of Mednax's claims consist of the EOBs and Mednax's contracts (all of which are in Mednax's possession/custody/control already). In addition, Aetna issues and maintains thousands of payment policies that govern various aspects of coding and claim processing. We have agreed to inquire whether there are any internal, non-published policies that relate to the administration of NICU claims. We will be producing these documents, if any, within the timeline established by the Court.

- **Organizational Charts**: Mednax has not articulated a basis for how or why such charts (to the extent they even exist) are relevant or discoverable. Aetna will be identifying, among its custodians, any individual who participated in an investigation of Mednax. The names of other individuals who have not participated in such investigations are not relevant and will not be produced.

- **Aetna's Custodians**: Aetna has already identified those custodians who have knowledge of the facts underlying this case. In addition, Aetna has agreed to and will provide the identity of those custodians who were involved in any investigation of Mednax's billing or coding practices. We will also agree to identify as custodians those individuals within Aetna's Medical Policy department that were consulted in connection with any investigation into Mednax.

  As we previously told you, we inquired regarding whether, outside of Aetna's SIU department, there are any other roles or departments to whom concerns regarding billing or coding practices would be escalated. We have been told that all concerns about billing or coding practices that may be identified by an Aetna employee would be routed to the SIU department. If any fraud detection software or overbilling software was used in connection with investigations of Mednax's claims, we agree to produce records with regard to such software (consistent with the Court's order) but we have not confirmed that to be the case. We have not agreed to identify any custodians regarding such software, given, as we stated on our call, that these are topics that involve central repositories rather than individual custodians.

  We did discuss identifying any custodians of any audits performed by any self-funded plans. To date, we have not identified any such audits. We never agreed to identify every preparer of any kind of report or audit regarding Mednax.

  With regard to identifying any custodians on Aetna's Board, we will consider your position and get back to you.

- **Aetna's Production of the Statistical Analysis**: Mednax requested the production of the statistical analysis used in preparing Aetna's complaint, and Aetna has produced that statistical analysis and underlying data in its native format. Your objections regarding this production are specious and in bad faith, as the Court's order specifically contemplates the production in native format of these sorts of files. The files have been produced in the exact same format they were previously provided to Mednax, and in the exact format they were used by Aetna's expert. Your objections about searchability and metadata fields are also misplaced – those are requirements that apply to the production of image files, not native (and the files, which are in a flat text format, are searchable). Aetna has complied with the Court's ESI Order.

- **Documents and information relating to the witness memos (Aetna 2-34):** As we have already stated, we will be producing a privilege log. As we have also stated, we are also in the process of collecting the documents relating to the witness interviews. We will be producing the log and all non-privileged documents relating to the witness interviews on or prior to May 1, consistent with the Court's order.

- **30(b)(6) notice:** We can discuss this on today's call, but as an initial matter we are not available for the date you unilaterally designated for a 30(b)(6) deposition. We will be objecting to certain of the topics you have

proposed, but we also think that the parties should complete document production before beginning deposition discovery, as the Court contemplated in our prior call.

**Aimee L. Kumer**
Elliott Greenleaf P.C.
925 Harvest Drive, Suite 300
Blue Bell, PA 19422
alk@elliottgreenleaf.com
Main: 215-977-1000
Direct: 215-977-1048
Fax: 215-977-1099

---

**From:** Aimee L. Kumer
**Sent:** Monday, April 01, 2019 4:54 PM
**To:** 'John Chun'
**Cc:** Luke Nikas; jfeuer@lashgoldberg.com; lvanwey@lashgoldberg.com; mgoldberg@lashgoldberg.com; Jennifer Barrett; Michael Carlinsky; Feltoon, Robert; Klein, Howard; Garden, Andrew K.; Arrington, Sherrill; Mark Schwemler; Gregory S. Voshell; Fred Santarelli
**Subject:** RE: Aetna Inc. et al. v. Mednax, Inc. et al. -- agenda for next meet and confer

John,
We will write separately to address the agenda you have suggested for our meet and confer. We do think many of the issues you have identified will be addressed by our email, without dedicating time on a call to the topic. However, we would like to be sure to address the following issues with your team:

- **Identifying those practices for which Mednax will produce documents** – In your email of March 18, you stated that you have "moot[ed]" the Court's order to provide us with a letter identifying which neonatal practice groups Mednax may decline to produce documents on behalf of. We do not understand what you meant by this, and we need you to identify which groups, on the list Mednax provided, will be covered by Mednax's production. Moreover, if Mednax is not going to produce documents on behalf of certain groups, we expect to receive an explanation as to why, consistent with the Court's order.

- **Mednax's custodian list** – As we discussed on our March 18 call, Aetna has concerns regarding the completeness of Mednax's custodian list. The list you produced to us on the evening of March 18 has added to those concerns. None of the individuals you have identified as senior management involved in discussing, assessing or evaluating the financial performance of the physician groups are included in your list of proposed custodians. Likewise, none of the individuals identified as officers or directors of the practice groups are on your custodian list. On our March 18 call you had indicated you would provide us with an updated list. We ask that you do so in the next few days.

- **Expanded search terms** – On March 18, we provided you with our list of proposed expanded search terms for Mednax to apply to its custodians. You had indicated on that call that you would review the terms and respond. We have not received that response.

- **Baby Steps** – We have not received any records or substantive interrogatory responses regarding the development of this software. Also, as we have mentioned a few times, in our prior calls with Luke in December and January, he had indicated that we would be provided with access to a live version of the Baby Steps software (i.e., access to the software without any actual patient records in the portal or mechanism we would use to access it, so that we can see how the software works). Please advise when and how we will be receiving the records and information regarding BabySteps and this access.

- **Updated Interrogatory responses** – All of Mednax's Interrogatory responses indicate that it "will provide" the information requested by Aetna. We have yet, however, to receive any substantive responses. Please provide your anticipated timeline for the supplementing of your interrogatory responses with substantive responses.

- **Document production** – To date, we have received only what appears to be documents from the "email loop." Please advise whether the first tranche of Mednax's production consisted only of "email loop" emails. Please also advise when we can expect the next phase of Mednax's production, and what it will consist of.

    In addition, we would like to know whether the first batch of your production is the totality of the documents we will receive regarding the email loop. In particular, it seems that the only custodian for this production is the "Medical Coding Department". Will there be further productions with other custodians, such as Dr. Kanter, who had been identified to us as a custodian earlier in the case in our meet-and-confers, or any of the medical coding educators who engaged in discussions with doctors about the coding changes?

**Aimee L. Kumer**

Elliott Greenleaf P.C.
925 Harvest Drive, Suite 300
Blue Bell, PA 19422
alk@elliottgreenleaf.com
Main: 215-977-1000
Direct: 215-977-1048
Fax: 215-977-1099

**From:** John Chun [mailto:johnchun@quinnemanuel.com]
**Sent:** Monday, April 01, 2019 4:24 PM
**To:** Aimee L. Kumer; Mark Schwemler; Fred Santarelli; Gregory S. Voshell
**Cc:** Luke Nikas; jfeuer@lashgoldberg.com; lvanwey@lashgoldberg.com; mgoldberg@lashgoldberg.com; Jennifer Barrett; Michael Carlinsky; Feltoon, Robert; Klein, Howard; Garden, Andrew K.; Arrington, Sherrill; QE-Aetna
**Subject:** RE: Aetna Inc. et al. v. Mednax, Inc. et al. -- agenda for next meet and confer

Aimee, can you let us know today what discovery issues Aetna would like to meet and confer about tomorrow? It would also be helpful if Aetna could identify its supplemental custodians today so that we can meet and confer about them tomorrow as well.

Thanks,

**John H. Chun**
Quinn Emanuel Urquhart & Sullivan, LLP

51 Madison Avenue, 22nd Floor
New York, NY 10010
212-849-7162 Direct
212-849-7000 Main Office Number
212-849-7100 FAX
johnchun@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

**From:** Aimee L. Kumer [mailto:alk@elliottgreenleaf.com]
**Sent:** Wednesday, March 27, 2019 3:47 PM
**To:** John Chun <johnchun@quinnemanuel.com>; Mark Schwemler <mjs@elliottgreenleaf.com>; Fred Santarelli <fpsantarelli@elliottgreenleaf.com>; Gregory S. Voshell <gsv@elliottgreenleaf.com>
**Cc:** Luke Nikas <lukenikas@quinnemanuel.com>; jfeuer@lashgoldberg.com; lvanwey@lashgoldberg.com; mgoldberg@lashgoldberg.com; Jennifer Barrett <jenniferbarrett@quinnemanuel.com>; Michael Carlinsky <michaelcarlinsky@quinnemanuel.com>; Feltoon, Robert <RFeltoon@conradobrien.com>; Klein, Howard <HKlein@conradobrien.com>; Garden, Andrew K. <agarden@conradobrien.com>; Arrington, Sherrill <SArrington@conradobrien.com>; QE-Aetna <qe-aetna@quinnemanuel.com>
**Subject:** RE: Aetna Inc. et al. v. Mednax, Inc. et al. -- agenda for next meet and confer

**[EXTERNAL EMAIL]**

John, We are available Tuesday at 3pm

We are looking into the custodian issue and will be supplementing our list as soon as we are able.

**Aimee L. Kumer**
Elliott Greenleaf P.C.
925 Harvest Drive, Suite 300
Blue Bell, PA 19422
alk@elliottgreenleaf.com
Main: 215-977-1000
Direct: 215-977-1048
Fax: 215-977-1099

**From:** John Chun [mailto:johnchun@quinnemanuel.com]
**Sent:** Tuesday, March 26, 2019 6:27 PM
**To:** Aimee L. Kumer; Mark Schwemler; Fred Santarelli; Gregory S. Voshell
**Cc:** Luke Nikas; jfeuer@lashgoldberg.com; lvanwey@lashgoldberg.com; mgoldberg@lashgoldberg.com; Jennifer Barrett; Michael Carlinsky; Feltoon, Robert; Klein, Howard; Garden, Andrew K.; Arrington, Sherrill; QE-Aetna
**Subject:** RE: Aetna Inc. et al. v. Mednax, Inc. et al. -- agenda for next meet and confer

Aimee, we are available Monday or Tuesday. Will you be identifying additional Aetna custodians this week (including from SIU) – Aetna had indicated during our last meet and confer that they would be provided early this week?

**From:** Aimee L. Kumer [mailto:alk@elliottgreenleaf.com]
**Sent:** Tuesday, March 26, 2019 6:02 PM
**To:** John Chun <johnchun@quinnemanuel.com>; Mark Schwemler <mjs@elliottgreenleaf.com>; Fred Santarelli <fpsantarelli@elliottgreenleaf.com>; Gregory S. Voshell <gsv@elliottgreenleaf.com>
**Cc:** Luke Nikas <lukenikas@quinnemanuel.com>; jfeuer@lashgoldberg.com; lvanwey@lashgoldberg.com; mgoldberg@lashgoldberg.com; Jennifer Barrett <jenniferbarrett@quinnemanuel.com>; Michael Carlinsky <michaelcarlinsky@quinnemanuel.com>; Feltoon, Robert <RFeltoon@conradobrien.com>; Klein, Howard <HKlein@conradobrien.com>; Garden, Andrew K. <agarden@conradobrien.com>; Arrington, Sherrill <SArrington@conradobrien.com>; QE-Aetna <qe-aetna@quinnemanuel.com>
**Subject:** RE: Aetna Inc. et al. v. Mednax, Inc. et al. -- agenda for next meet and confer

**[EXTERNAL EMAIL]**

John,

We are not available this week for a meet and confer. We also have a number of issues we would like to address with you, which we will outline for your benefit. Could you please provide your availability for a call or calls next week.

**Aimee L. Kumer**
Elliott Greenleaf P.C.
925 Harvest Drive, Suite 300
Blue Bell, PA 19422
alk@elliottgreenleaf.com
Main: 215-977-1000
Direct: 215-977-1048
Fax: 215-977-1099

---

**From:** John Chun [mailto:johnchun@quinnemanuel.com]
**Sent:** Tuesday, March 26, 2019 4:31 PM
**To:** Mark Schwemler; Aimee L. Kumer; Fred Santarelli; Gregory S. Voshell
**Cc:** Luke Nikas; jfeuer@lashgoldberg.com; lvanwey@lashgoldberg.com; mgoldberg@lashgoldberg.com; Jennifer Barrett; Michael Carlinsky; Feltoon, Robert; Klein, Howard; Garden, Andrew K.; Arrington, Sherrill; QE-Aetna
**Subject:** RE: Aetna Inc. et al. v. Mednax, Inc. et al. -- agenda for next meet and confer

Counsel, I'm following up on my email below about scheduling a meet and confer tomorrow or Thursday. Please let us know. Thank you.

---

**From:** John Chun
**Sent:** Monday, March 25, 2019 5:42 PM
**To:** 'Mark Schwemler' <mjs@elliottgreenleaf.com>; 'Aimee L. Kumer' <alk@elliottgreenleaf.com>; 'Fred Santarelli' <fpsantarelli@elliottgreenleaf.com>; 'Gregory S. Voshell' <gsv@elliottgreenleaf.com>
**Cc:** Luke Nikas <lukenikas@quinnemanuel.com>; 'jfeuer@lashgoldberg.com' <jfeuer@lashgoldberg.com>; 'lvanwey@lashgoldberg.com' <lvanwey@lashgoldberg.com>; 'mgoldberg@lashgoldberg.com' <mgoldberg@lashgoldberg.com>; Jennifer Barrett <jenniferbarrett@quinnemanuel.com>; Michael Carlinsky <michaelcarlinsky@quinnemanuel.com>; 'Feltoon, Robert' <RFeltoon@conradobrien.com>; 'Klein, Howard' <HKlein@conradobrien.com>; 'Garden, Andrew K.' <agarden@conradobrien.com>; 'Arrington, Sherrill' <SArrington@conradobrien.com>; QE-Aetna <qe-aetna@quinnemanuel.com>
**Subject:** RE: Aetna Inc. et al. v. Mednax, Inc. et al. -- agenda for next meet and confer

Counsel, following up on the agenda below, please let us know if you are available Wednesday or Thursday afternoon (3/27 or 3/28) for a meet and confer.

Thanks, John

---

**From:** John Chun
**Sent:** Monday, March 25, 2019 5:27 PM
**To:** 'Mark Schwemler' <mjs@elliottgreenleaf.com>; 'Aimee L. Kumer' <alk@elliottgreenleaf.com>; 'Fred Santarelli' <fpsantarelli@elliottgreenleaf.com>; 'Gregory S. Voshell' <gsv@elliottgreenleaf.com>
**Cc:** Luke Nikas <lukenikas@quinnemanuel.com>; 'jfeuer@lashgoldberg.com' <jfeuer@lashgoldberg.com>; 'lvanwey@lashgoldberg.com' <lvanwey@lashgoldberg.com>; 'mgoldberg@lashgoldberg.com' <mgoldberg@lashgoldberg.com>; Jennifer Barrett <jenniferbarrett@quinnemanuel.com>; Michael Carlinsky <michaelcarlinsky@quinnemanuel.com>; 'Feltoon, Robert' <RFeltoon@conradobrien.com>; 'Klein, Howard' <HKlein@conradobrien.com>; 'Garden, Andrew K.' <agarden@conradobrien.com>; 'Arrington, Sherrill' <SArrington@conradobrien.com>; QE-Aetna <qe-aetna@quinnemanuel.com>
**Subject:** Aetna Inc. et al. v. Mednax, Inc. et al. -- agenda for next meet and confer

Counsel, we'd like to schedule a meet and confer this week to discuss outstanding discovery issues. Here are the agenda items we'd like to discuss:

- Status of Aetna's supplementation of its custodians and search terms;
- Status of Aetna's supplementation of its Rule 26(a) disclosures and responses to Mednax Interrogatory Nos. 1, 3 , and 4;
- Issues relating to Aetna's production of witness interview memos and notes (Aetna 00002-000034), including:
  - Basis for redactions
  - Confirmation as to the production of all notes and other recordings of communications, and documents exchanged, with witnesses.
  - Extent of collection from The Indago Group and the Pierce Law Firm, including call scripts, invites, agendas, emails with witnesses, etc.
- Deficiencies in supplementation to Mednax Interrogatory No. 5, including need to identify all dates of actual or attempted contacts and communications (see, e.g., deficient Moniaci summary);
- Written updates to Aetna's responses to Mednax RFPs, including in light of the Court's March 4 Order, including but not limited to:
  - RFP No: 32 (Aetna's policies and procedures relating to or governing its review of invoices submitted by Mednax)
  - RFP No. 33 ((Aetna's policies and procedures relating to or governing its payment of invoices submitted by Mednax, or challenges to such invoices or recoupment)
  - RFP No. 34 (documents and communications regarding review of Mednax invoices undertaken in connection with any investigation alleged in Complaint)
  - RFP No. 36 (organizational charts)
  - RFP No. 37 (Board of Director documents relating to conduct alleged in the Complaint)
  - RFP No. 38 (Documents relating to meetings or presentations within any Aetna business unit concerning conduct alleged in the Complaint )
  - RFP No. 39 (policies and procedures related to or governing the identification or detection of overbilling, improper coding and overpayments to medical providers)
  - RFP No. 40 (reports generated by claims processing or fraud detection software, including but not limited to ClaimsXTen, Fraud and Abuse Management System, Aetna Standard Table)
  - RFP No. 41 (reports and profiles generated by the SIU, including Fraud and Abuse Management System, that examined Mednax's billing behavior)

- Issues with the format of Aetna's production of the regression analysis;
- Confirmation of scheduling the 30(b)(6) deposition.

Thanks,

**John H. Chun**
Quinn Emanuel Urquhart & Sullivan, LLP

51 Madison Avenue, 22nd Floor
New York, NY 10010
212-849-7162 Direct
212-849-7000 Main Office Number
212-849-7100 FAX
johnchun@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

EXHIBIT 12

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AETNA INC., AETNA HEALTH, INC., AETNA HEALTH MANAGEMENT LLC AND AETNA LIFE INSURANCE COMPANY,<br><br>                    Plaintiffs,<br><br>v.<br><br>MEDNAX, INC., PEDIATRIX MEDICAL GROUP, INC. AND MEDNAX SERVICES, INC.,<br><br>                    Defendants. | CIVIL ACTION<br><br><br>No. 18-2217 |

**AETNA'S SUPPLEMENTAL RESPONSES TO DEFENDANTS'
FOURTH INTERROGATORY TO PLAINTIFFS**

Plaintiffs Aetna, Inc., Aetna Health, Inc., Aetna Health Management LLC and Aetna Life Insurance Company (together, "Aetna"), by and through undersigned counsel, hereby provides its supplemental objections and answers to "Interrogatory 4" issued by Defendants Mednax, Inc., and Mednax Services, Inc., formerly Pediatrix Medical Group, Inc. (together, "Mednax" or "Defendants"). Aetna incorporates, as if set forth fully herein, the objections and reservations set forth in Exhibit 1 attached hereto.

**INTERROGATORY NO. 4**

**Identify every instance in which overbilling, improper coding, fraud, or abuse was detected by the software, written policies and procedures, training materials, data analytic tools, or audit tools described in response to Interrogatory No. 3. For each such instance, identify any work papers, findings, results, and internal or external conclusions generated as a result of all such discoveries, whether any such instance resulted in cases being opened or assigned to a Special Investigations Unit investigator, and, if so, what the outcome of those investigations were.**

**RESPONSE:** Aetna incorporates its objections to Interrogatory No. 3 herein, as if set forth at length. Aetna further objects to this Interrogatory to the extent it seeks information relating to many different types of suspected overbilling, improper coding, fraud or abuse involving providers other than Mednax, because such conduct or misconduct of third parties is not relevant to the parties' claims and defenses in this case. The production of such information would further be disproportionate to the needs of the case. Furthermore, by implicating the protected health information ("PHI") of patients other than Mednax whose PHI is not relevant to this case, the production of such information by Aetna would violates Aetna's obligations under HIPAA, including its obligations under the minimum necessary standard.

**SUPPLEMENTAL RESPONSE:** Aetna incorporates its foregoing objections. Subject to and as limited by the foregoing objections, Aetna has conducted the following investigations regarding Mednax, from 2010 to the time Aetna filed its Complaint:

    i   Newborn hearing screenings: Aetna has investigated Mednax's practices relating to charging for newborn hearing screenings in the following jurisdictions, or relating to the following plans:
- Federal Employee Health Benefit Plans
- Texas
- West Virginia
- Virginia
- Arizona
- Kentucky
- Kansas
- Pennsylvania
- Michigan

    i   Fraudulent billing: SIU employee Sean Petree conducted a brief investigation to determine whether Mednax was engaged in fraud, in connection with high charges generated by its practice groups.

By:

*/s/ Mark J. Schwemler*
Mark J. Schwemler
Gregory S. Voshell
Aimee L. Kumer
Thomas B. Helbig
ELLIOTT GREENLEAF P.C.
925 Harvest Drive, Suite 300
Blue Bell, Pennsylvania 19422

DATED:   January 24, 2020

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 24, 2020, I served the foregoing on all counsel of record via email.

*/s/ Mark J. Schwemler*
MARK J. SCHWEMLER

# EXHIBIT 13

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| AETNA INC., AETNA HEALTH, INC., AETNA HEALTH MANAGEMENT LLC AND AETNA LIFE INSURANCE COMPANY,<br><br>             Plaintiffs,<br><br>v.<br><br>MEDNAX, INC., PEDIATRIX MEDICAL GROUP, INC. AND MEDNAX SERVICES, INC.,<br><br>             Defendants. | CIVIL ACTION<br><br>No. 18-2217 |

**DEFENDANTS' FIFTH SET OF REQUESTS FOR THE PRODUCTION OF
DOCUMENTS TO PLAINTIFFS**

Pediatrix Medical Group, Inc., MEDNAX Services, Inc., and MEDNAX, Inc., ("Defendants"), by and through their undersigned counsel, hereby request, pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, that Plaintiffs Aetna Inc., Aetna Health, Inc., Aetna Health Management, LLC, and Aetna Life Insurance Company ("Plaintiffs") produce for inspection and copying the documents specified below at the offices of Quinn Emanuel Urquhart & Sullivan, LLP, 51 Madison Avenue, 22nd Floor, New York, New York 10010, within 30 days after service of these requests for production ("Requests"). These Requests are made without waiving any claims that Defendants have or hereafter may assert in this Action and without waiving any defenses in this Action, including the absence of personal jurisdiction over the Defendants.

1

The documents requested for discovery and inspection are to be produced according to the definitions and instructions herein.

## DEFINITIONS

The following definitions are to be considered applicable to all specific requests for the production of documents:

1.     Each reference to a corporation, partnership, limited liability company, unincorporated association, government agency or other non-natural Person shall be deemed to include each and all of its current and former parents, owners, subsidiaries, affiliates, divisions, predecessors, successors, employees, managers, officers, directors, shareholders, partners, general partners, limited partners, members, agents, representatives, attorneys, accountants, consultants, independent contractors or any other Person or entity acting, or purporting to act, with or on behalf of any of the foregoing.

2.     Each reference to a natural Person shall be deemed to include that Person's relatives, employees, partners, agents, representatives, attorneys, accountants, consultants, independent contractors or any other Person or entity acting, or purporting to act, with or on behalf of any of the foregoing.

3.     "Action" means the litigation captioned above.

4.     "Aetna" means Plaintiffs Aetna Inc., Aetna Health, Inc., Aetna Health Management, LLC, and Aetna Life Insurance Company and each and all of their current and former parents, owners, subsidiaries, affiliates, divisions, predecessors, successors, employees, managers, officers, directors, shareholders, partners, general partners, limited partners, members, agents, representatives, attorneys, accountants, consultants, independent contractors or any other

Person or entity acting, or purporting to act, with or on behalf of any of the foregoing, as well as all employer-established health plans that Plaintiffs administer.

5.    "August Data Production" refers to the information contained in AETNA17648-17652, and produced on August 6, 2019.

6.    "March Data Production" refers to the information contained in AETNA000001.

7.    "Complaint" means the Complaint filed by Aetna Inc., Aetna Health, Inc., Aetna Health Management LLC, and Aetna Life Insurance Company on April 25, 2018 in the Court of Common Pleas of Pennsylvania, First Judicial District, Philadelphia County.  Compl., *Aetna Inc. v. MEDNAX, Inc.*, No. 171101040, 2018 WL 1998596 (Pa. Ct. Com. Pl. Apr. 25, 2018).

8.    "Communication" means the transmission of information of any kind, in any form and by any means, including but not limited to, and by way of example only, any admission, denial, agreement, contract, conversation, discussion, inquiry, meeting, memorandum, minutes, negotiation, notes (handwritten, typed or otherwise), report, statement, submission, talking points, understanding or any other direct or indirect disclosure in any form, including but not limited to audio, video, digital, electronic, Social Media (whether through postings or private messaging functions), oral or paper form, and any draft communication in such form, whether or not the communication was ever disclosed, sent or transmitted.

9.    "Defendants" means MEDNAX, Inc., MEDNAX Services, Inc., and Pediatrix Medical Group, Inc., including each and all of their current and former parents, owners, subsidiaries, affiliates, divisions, predecessors, successors, employees, managers, officers, directors, shareholders, partners, general partners, limited partners, members, agents, representatives, attorneys, accountants, consultants, independent contractors or any other Person or entity acting, or purporting to act, with or on behalf of any of the foregoing.

10.     "Document" is used in its broadest sense and means, without limitation, written, typed, printed, electronic, graphic or otherwise recorded material of any kind, however produced or reproduced, whether different because of notes made thereon or otherwise, including but not limited to, and by way of example only, any advertisement, agreement, analysis, book, brochure, calendar, chart, check (front and back) or check stub, checklist, contract, cost sheet, database information, diary, electronic file, email, facsimile, filing, financial report, graph, guideline, handbook, index, instant message, invoice, ledger, letter or other correspondence, license, log, memorandum, microfilm, minutes, motion picture film, notebook, notes (handwritten, typed or otherwise), opinion, pamphlet, paper, picture, photograph, plan, policy, procedure, press release, purchase order, receipt, recording, report, statement, study, submission, summary, tabulation, talking points, tape recording, task list, telegram, telephone call record, text message, thing, timesheet, transcript of a telephone conversation, transcript of testimony, travel record, video, voice message or recording, work paper, data compilation, including but not limited to computer data stored on a USB drive, external hard drive, compact disc, computer disk or other memory unit containing such data from which information can be obtained or translated into usable form, translations or summaries of foreign language documents and all similar recorded material.  Each non-identical document is a distinct document, including every such original, copy, draft and version of a document, whether or not any form of the document in question is ever disclosed, sent or transmitted.  A Document further includes any enclosure, exhibit, annex, appendix, schedule or other attachment, whether by staple, clip, rubber band, binding or other means, and all appended or embedded links or files.

11.     "Including" means "including, without limitation" or "including, but not limiting to."

12.     "Mednax" means MEDNAX Services, Inc., MEDNAX, Inc. and each and all of their current and former parents, owners, subsidiaries, affiliates, divisions, predecessors, successors, employees, managers, officers, directors, shareholders, partners, general partners, limited partners, members, agents, representatives, attorneys, accountants, consultants, independent contractors or any other Person or entity acting, or purporting to act, with or on behalf of any of the foregoing.

13.     "NICU" means neonatal intensive care unit.

14.     "Person" means, without limitation, any individual, corporation, business trust, estate, trust, partnership, limited liability company, association, joint venture, public corporation, group, organization or any other legal or commercial entity, including each and all of its current and former parents, owners, subsidiaries, affiliates, divisions, predecessors, successors, employees, managers, officers, directors, shareholders, partners, general partners, limited partners, members, agents, representatives, attorneys, accountants, consultants, independent contractors or any other person or entity acting, or purporting to act, with or on behalf of any of the foregoing.

15.     "Relating to," "Related to," "Concerning" and/or "Regarding," in addition to their customary and usual meanings, shall mean directly or indirectly, in whole or in part, relating to, referring to, concerning, discussing, evidencing, containing, constituting, reflecting, mentioning, assessing, characterizing, recording, describing, touching upon, summarizing, commenting on, showing, disclosing, supporting, explaining, recording, stating, memorializing, noting, analyzing, contradicting, disputing, or in any way legally, logically or factually dealing with connected to the subject matter described.

16.     "Social Media," in addition to its customary and usual meaning, includes, but is not limited to, Facebook, LinkedIn, Twitter, Instagram, Reddit, Imgur, YouTube, Snapchat, Twitch, WeChat, Skype, WhatsApp, message boards (whether through postings or private messaging functions) and any other internet-based mechanism through which the public communicates.

17.     "You" or "Your" means the subject(s) responding to each Request, including each Plaintiff and any entity or individual encompassed in the preceding definition of the term "Aetna."

18.     The terms "all," "any" and "each" shall be construed broadly and mean all, any and each as necessary so as to bring within the scope of a Request all responses that otherwise could be construed to be outside of its scope.

19.     The terms "and" and "or" shall be construed either disjunctively or conjunctively as necessary so as to bring within the scope of a Request all responses that might otherwise be construed to be outside of its scope.

20.     The use of the singular of any word includes the plural and vice versa as necessary so as to bring within the scope of a Request all responses that might otherwise be construed to be outside of its scope.

21.     The use of the past tense includes the present tense unless otherwise explicitly delimited.

22.     The use of defined terms in these Requests apply whether or not they are capitalized.

## **INSTRUCTIONS**

1.     Unless otherwise indicated, the Documents requested include all Documents and Communications in Your possession, custody or control.  Without limiting the meaning of the

terms "possession, custody or control" as used in the preceding sentence, a Document or Communication is in Your possession, custody or control if You have actual possession or custody of the Document or Communication, or the right to obtain the Document or Communication, or a copy thereof, upon demand from one or more of Your agents, representatives, attorneys, accountants, consultants, independent contractors or any other person or public or private entity that has actual physical possession of the Document or Communication.

2.    These Requests shall be deemed to call for the production of original Documents. In addition, the Requests shall be deemed to call for the separate production of all copies and, to the extent applicable, preliminary drafts of Documents that differ in any respect from the original or final draft or each other (*e.g.*, by reason of differences in form or content or by reason of handwritten notes or comments having been added to one copy of a Document but not to the original or other copies thereof).

3.    If You object to any Request, You must state in writing, with specificity, the grounds for objection pursuant to Federal Rule of Civil Procedure 34(b)(2).  If You object to a particular portion of any Request, You shall respond to any other portion of such Request as to which there is no objection and state in writing, with specificity, the grounds of the objection to the particular portion of the Request.  Your response to each Request must specifically indicate for any and each objection whether, and the scope of, Documents or Communications that are being withheld based on each objection.

4.    If You withhold any Document, Communication or part thereof that is responsive to any Request on the grounds of attorney-client privilege; the attorney work product doctrine or any other privilege, doctrine or basis, You must state in writing, with specificity, the:  (1) date of the Document or Communication; (2) the type, title and subject matter of the Document or

Communication sufficient to assess whether the assertion of privilege is valid; (3) the name of the person or persons who prepared or signed the Document or engaged in the Communication; (4) the name and position of any recipient of the Document or Communication and (5) the particular privilege, doctrine or other basis for withholding the Document or Communication.  If You fail to set forth a sufficient factual basis for the assertion of any claim of privilege or protection, then any arguable claim of privilege or protection shall be waived.  Compliance with the above instructions is not to be construed as an admission by Defendants that such privilege or protection is valid, and Defendants reserve the right to challenge any purported claim of privilege or protection.

5.      All electronically stored information ("ESI") should be preserved and produced pursuant to Federal Rule of Civil Procedure 34(b)(2)(E).

6.      Your production and responses to these Requests shall comply with all terms and requirements delineated in the Order Governing E-Discovery (Dkt. 21), unless the parties agree to alternative terms and requirements to the extent contemplated by that Order.

7.      Documents shall be produced on a rolling basis as they become available.

8.      Selection of Documents from files and other sources, and the number of such Documents, shall be performed in such a manner as to ensure that the source of each Document may be determined, if necessary.

9.      File folders with tabs or labels, or directories of files identifying Documents, must be produced intact with such Documents.

10.      Pursuant to Federal Rule of Civil Procedure 34, You must produce entire Documents and Communications, including attachments, enclosures, exhibits, cover letters, memoranda, annexes, schedules, and appendices.  Documents or Communications not otherwise responsive to a Request are to be produced if are attached to, or enclosed with, any Documents or

Communications that are responsive. Without limitation, examples of such include email attachments, attachments to letters or agreements, routing slips, transmittal memoranda or letters, evaluations or similar Documents and Communications. In the case of email attachments, if either the email or any of its attachments is responsive, You must produce the email and all of the corresponding attachments.

11.     A Document or Communication with handwritten, typed or other recorded notes, editing marks or other revisions is not and shall not be deemed to be identical to one without such modifications, additions or deletions. The term "original" includes the file copy or copies of any Document or Communication if there is no actual original.

12.     If You cannot respond fully to a Request after exercising due diligence to secure the information requested, or do not have information responsive to any part of a Request, You must so state, describe in full Your efforts to obtain the information requested and respond to the Request to the fullest extent possible. If a qualified response to a Request must be given, You shall respond to the Request as directly and fully as possible and state fully the reason that such qualification is necessary.

13.     If Your response to a particular Request is a statement that You lack the ability to comply with that Request, You must specify whether the inability to comply is because the particular item or category of information never existed or has been lost, destroyed, discarded, misplaced, stolen or otherwise disposed of, or because it has never been or is no longer in Your possession, custody or control, in which case the name and address of any Person known or believed by You to have possession, custody or control of that information or category of information must be identified.

14.     These Requests are continuing in nature, so as to require further and supplemental responses if You obtain or discover additional Documents or Communications between the time of initial production and the time of the trial.  Such supplemental Documents or Communications must be produced promptly upon discovery.  Defendants specifically reserve the right to seek supplementary responses and the additional supplementary production of Documents or Communications before trial.  Defendants will object to any attempt to introduce evidence to the Court that should have been but was not disclosed in the responses or the supplementation of the responses.  All responses to these Requests shall comply fully in all respects with the requirements of the Federal Rules of Civil Procedure, the Eastern District of Pennsylvania Local Rules, and all other applicable rules and Orders by the Court.

15.     The timeframe for these Requests shall be from January 1, 2010 until and through the present, unless otherwise specified.

## **REQUESTS FOR PRODUCTION**

## **REQUEST FOR PRODUCTION NO. 85**:[1]

Documents responsive to, or consulted in connection with responding to, the matters and issues identified in Mednax Interrogatory No. 16.

---

[1] Although the information requested in these RFPs, including Nos. 85-88, are the subject of and duplicate prior discovery requests, Mednax is serving these requests in response to Aetna's demand during the parties' August 29 meet and confer, and in order to avoid disputes and further reason for delay.  Given such duplication and Aetna's assertion during the August 29 meet and confer that Aetna's collection methodologies and processes are privileged and will not be produced, Mednax reserves the right to seek Court intervention prior to the receipt of Aetna's formal responses to these requests.

**REQUEST FOR PRODUCTION NO. 86**:

Plaintiffs' provider fee schedules during all periods relevant to this lawsuit, including as referenced in paragraph 44 of the Complaint in this Action (the "negotiated billing rates").

**REQUEST FOR PRODUCTION NO. 87**:

For the March Data Production, a complete integrated data set with the fields identified in paragraph 10 of Ethan Cohen Cole's March 11, 2019 Declaration (Dkt. 64-7).

**REQUEST FOR PRODUCTION NO. 88**:

For the August Data Production, a complete integrated data set comprised of the following fields (the Aetna file in which such information can be found is identified in parentheses):

Baby name (Aetna_17650_AEO_CJ31_MBRE)

Parents' names or guarantor names (Aetna_17650_AEO_CJ31_MBRE)

Baby DOB (Aetna_17650_AEO_CJ31_MBRE)

DOS or multiple dates of service (Aetna 17648_AEO_CJ31_CLMC)

Hospital TINS (Aetna 17648_AEO_CJ31_CLMC)

Provider name and address and type (Aetna_17651_AEO_CJ31_PRVE)

CPT code(s) for each day of service (Aetna 17648_AEO_CJ31_CLMC)

ICD 9 or 10 codes (Aetna 17648_AEO_CJ31_CLMC)

**REQUEST FOR PRODUCTION NO. 89:**

All Documents, including datasets, supporting or relied upon in connection with the analyses presented in the Declaration of John Bowblis, dated July 25, 2019 (Dkt. 130-4), including all inputted data, computer program code, output files, and the instructions used to generate the data results referenced in paragraphs 9, 11-20, as well as the native files for Exhibits 1-6..

**REQUEST FOR PRODUCTION NO. 90:**

All datasets that Aetna is using for any regression or other analyses that it intends to present at trial.

**REQUEST FOR PRODUCTION NO. 91:**

Documents sufficient to identify and describe Aetna's internal system applications and databases (including, but not limited to, documents describing the manner in which Aetna's data is entered and stored on said systems) from which the March and August Data Productions were collected.

**REQUEST FOR PRODUCTION NO. 92:**

Documents sufficient to identify the methodology utilized by Aetna to generate the data files that comprise the March and August Data Productions, including, but not limited to, any queries or program code utilized to collect the data and/or generate the data files that have been produced in discovery.

**REQUEST FOR PRODUCTION NO. 93:**

A data dictionary which describes the information contained in each data file produced in the August Data Production.

**REQUEST FOR PRODUCTION NO. 94:**

All user manuals and reference guides that describe any and all internal systems and databases from which data within the March and August Data Productions were collected.

**REQUEST FOR PRODUCTION NO. 95:**

All user manuals and reference guides that describe any and all applications that may have been utilized by Aetna to collect or query the data within the March and August Data Productions.

**REQUEST FOR PRODUCTION NO. 96:**

Any reports prepared by You (including, but not limited to, Your Medical Cost Analytics Unit) which concern, discuss, or reference Mednax or its billing practices, including, but not limited to: (1) any reports that analyzed, forecasted, or modeled costs associated with any Mednax-affiliated providers, (2) any reports or analyses that compared Mednax-affiliates to non-Mednax NICU providers, (3) contract analytics or modeling for any current or prospective contract between Mednax and Aetna, (4) "overpayment mining" reports, and (5) any "overpayment root cause" analysis or reports.

**REQUEST FOR PRODUCTION NO. 97:**

A job description of the Head of the Medical Cost Analytics Unit.

**REQUEST FOR PRODUCTION NO. 98:**

A job description of the Supervisor of Data Mining & Service Requests within your SIU.

DATED:  September 10, 2019          **QUINN EMANUEL URQUHART & SULLIVAN, LLP**

By: ____/s/ Jennifer Barrett_____
 Michael Carlinsky*
Jennifer Barrett*
Luke Nikas*
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849 7000
Fax: (212) 849 7100
michaelcarlinsky@quinnemanuel.com
jenniferbarrett@quinnemanuel.com
lukenikas@quinnemanuel.com

**LASH & GOLDBERG LLP**
Martin B. Goldberg*
Lorelei J. Van Wey*
Jonathan E. Feuer*
100 Southeast 2nd Street
Miami, FL 33131
Telephone: (305) 347-4040
mgoldberg@lashgoldberg.com
lvanwey@lashgoldberg.com
jfeuer@lashgoldberg.com
 * Admitted Pro Hac Vice

**CONRAD O'BRIEN PC**
Howard M. Klein
Pennsylvania Bar No. 33632
hklein@conradobrien.com
Robert N. Feltoon
Pennsylvania Bar No. 58197
rfeltoon@conradobrien.com
Andrew K. Garden
Pennsylvania Bar No. 314708
agarden@conradobrien.com
Centre Square West Tower
1500 Market Street, Suite 3900
Philadelphia, PA 19102-2100
Telephone: (215) 864-9600
Fax: (215) 864-9620

*Attorneys for Defendants Pediatrix Medical Group, Inc.,
MEDNAX Services, Inc., and MEDNAX, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on this 10th  day of September 2019, the foregoing was served on all counsel of record via email.

_/s/ John Chun_

EXHIBIT 14

In the United States District Court
for the Eastern District of Pennsylvania

AETNA INC., AETNA HEALTH, INC.,
AETNA HEALTH MANAGEMENT
LLC
AND AETNA LIFE INSURANCE
COMPANY,

        Plaintiffs,

v.

MEDNAX, INC., PEDIATRIX
MEDICAL GROUP, INC. AND
MEDNAX SERVICES, INC.,

        Defendants.

CIVIL ACTION

No. 18-2217

## PLAINTIFF'S RESPONSES TO DEFENDANTS' FIFTH SET OF REQUESTS FOR PRODUCTION

Pursuant to the Federal Rules of Civil Procedure, Aetna[1] hereby responds to the Fifth Requests for Production issued by Mednax.[2] Aetna incorporates by reference the reservations and objections set forth in Exhibit 1 hereto.

## RESPONSES

**REQUEST FOR PRODUCTION NO. 85**

    **Documents responsive to, or consulted in connection with responding to, the matters and issues identified in Mednax Interrogatory No. 16.**

    **RESPONSE:** Aetna incorporates its objections to Interrogatory No. 16 as if set forth fully herein.

---

[1] Aetna, Inc., Aetna Health, Inc., Aetna Health Management LLC and Aetna Life Insurance Company, all together, "Aetna."

[2] Defendants Mednax, Inc., Mednax Services, Inc., formerly Pediatrix Medical Group, Inc., all together, "Mednax."

1

**REQUEST FOR PRODUCTION NO. 86:**

Plaintiffs' provider fee schedules during all periods relevant to this lawsuit, including as referenced in paragraph 44 of the Complaint in this Action (the "negotiated billing rates").

RESPONSE: Aetna objects to this request as overly broad, unduly burdensome, and not relevant to the parties' claims and defenses. The amounts actually paid by Aetna to other providers in connection with NICU claims are reflected in the claims data. The fee schedules between Aetna and all other providers are not relevant to the parties' claims and defenses. Moreover, the collection of such documents would be an enormously burdensome undertaking, encompassing thousands of contracts over a ten year period and across the entire nation. Moreover, Mednax's request for such contracts is not for a proper purpose, and is intended to gain a competitive advantage.

**REQUEST FOR PRODUCTION NO. 87:**

For the March Data Production, a complete integrated data set with the fields identified in paragraph 10 of Ethan Cohen Cole's March 11, 2019 Declaration (Dkt. 64-7).

RESPONSE: Aetna objects to this request as overly broad, unduly burdensome, disproportionate to the needs of the case, and not relevant to the parties' claims or defenses. Aetna has produced the data set relied upon in the generation of the regression analysis referenced in its Complaint, i.e., the March Data Production. Mednax's document request asks Aetna to generate documents that do not exist, and thus are not relevant.

**REQUEST FOR PRODUCTION NO. 88:**

For the August Data Production, a complete integrated data set comprised of the

following fields (the Aetna file in which such information can be found is identified in parentheses):

      Baby name (Aetna_17650_AEO_CJ31_MBRE)

      Parents' names or guarantor names

      (Aetna_17650_AEO_CJ31_MBRE)  Baby DOB

      (Aetna_17650_AEO_CJ31_MBRE)

      DOS or multiple dates of service (Aetna 17648_AEO_CJ31_CLMC)

      Hospital TINS (Aetna 17648_AEO_CJ31_CLMC)

      Provider name and address and type

      (Aetna_17651_AEO_CJ31_PRVE)  CPT code(s) for each day of

      service (Aetna 17648_AEO_CJ31_CLMC)  ICD 9 or 10 codes

      (Aetna 17648_AEO_CJ31_CLMC)

    **RESPONSE:** Aetna objects to this request as overly broad and unduly burdensome. Aetna has already produced each of the foregoing data fields for the data included in the August Data Production. Aetna has produced the data in the form and format that it was generated. Mednax's document request asks Aetna to generate documents that do not exist, and thus are not relevant.

**REQUEST FOR PRODUCTION NO. 89:**

    **All Documents, including datasets, supporting or relied upon in connection with the analyses presented in the Declaration of John Bowblis, dated July 25, 2019 (Dkt. 130-4), including all inputted data, computer program code, output files, and the instructions used to generate the data results referenced in paragraphs 9, 11-20, as well as the native files for Exhibits 1-6.**

3

**RESPONSE:** Aetna objects to this request as overly broad and unduly burdensome. Subject to and as limited by the foregoing general and specific objections, Aetna has produced the data supporting and relied upon in connection with the analysis presented in the Declaration of John Bowblis of July 25, 2019. Aetna will produce the same kinds of information Aetna has previously produced regarding its prior regression analysis.

**REQUEST FOR PRODUCTION NO. 90:**

**All datasets that Aetna is using for any regression or other analyses that it intends to present at trial.**

**RESPONSE:** Aetna objects to this request as overly broad, and on the basis that discovery is ongoing. Subject to the foregoing general and specific objections, Aetna has produced the datasets it intends to use in its regression or other analyses at trial.

**REQUEST FOR PRODUCTION NO. 91:**

**Documents sufficient to identify and describe Aetna's internal system applications and databases (including, but not limited to, documents describing the manner in which Aetna's data is entered and stored on said systems) from which the March and August Data Productions were collected.**

**RESPONSE:** Aetna objects to this request as overly broad, unduly burdensome, and disproportionate to the needs of the case. Aetna further objects to this request as not relevant to the parties' claims or defenses.

**REQUEST FOR PRODUCTION NO. 92:**

**Documents sufficient to identify the methodology utilized by Aetna to generate the**

data files that comprise the March and August Data Productions, including, but not limited to, any queries or program code utilized to collect the data and/or generate the data files that have been  produced in discovery.

**RESPONSE:** Aetna objects to this request as overly broad and unduly burdensome. Aetna further objects to this request as seeking the production of documents that are privileged and/or protected by the work product doctrine.

**REQUEST FOR PRODUCTION NO. 93:**

A data dictionary which describes the information contained in each data file produced in  the August Data Production.

**RESPONSE:** To the extent such document exists, Aetna will produce the requested document.

**REQUEST FOR PRODUCTION NO. 94:**

All user manuals and reference guides that describe any and all internal systems and  databases from which data within the March and August Data Productions were collected.

**RESPONSE:** Aetna objects to this request as overly broad, unduly burdensome, disproportionate to the needs of the case, and not relevant to the parties' claims and defenses. The user manuals and reference guides for Aetna's internal systems are not relevant to the parties' claims and defenses, and the burden of collecting "all" such documents is considerable.

**REQUEST FOR PRODUCTION NO. 95:**

All user manuals and reference guides that describe any and all applications that may

5

have  been utilized by Aetna to collect or query the data within the March and August Data Productions.

**RESPONSE:** Aetna objects to this request as overly broad, unduly burdensome, disproportionate to the needs of the case, and not relevant to the parties' claims and defenses. The user manuals and reference guides for Aetna's internal applications are not relevant to the parties' claims and defenses, and the burden of collecting "all" such documents is considerable.

**REQUEST FOR PRODUCTION NO. 96:**

Any reports prepared by You (including, but not limited to, Your Medical Cost Analytics Unit) which concern, discuss, or reference Mednax or its billing practices, including, but not  limited to: (1) any reports that analyzed, forecasted, or modeled costs associated with any Mednax- affiliated providers, (2) any reports or analyses that compared Mednax-affiliates to non-Mednax  NICU providers, (3) contract analytics or modeling for any current or prospective contract between  Mednax and Aetna, (4) "overpayment mining" reports, and (5) any "overpayment root cause"  analysis or reports.

**RESPONSE:** Aetna objects to this request as overly broad, unduly burdensome, not relevant to the parties' claims or defenses, and sought for an improper purpose. Reports generated by Aetna regarding Mednax's billing in connection with contract analytics modeling are not relevant to the parties' claims or defenses and are sought for an improper purpose to obtain competitive information. Reports generated in connection with detecting overpayments outside of Aetna's SIU department are likewise not relevant to the parties' claims or defenses, are unduly burdensome and disproportionate to the needs of the case, and are captured by disputes that have already been submitted to the Court. Mednax's request for "any" report

6

referencing Mednax is overly broad and encompasses matters not relevant to the parties' claims and defenses.  Subject to and as limited by the foregoing general and specific objections, Aetna has agreed to produce those reports regarding Mednax's billing practices generated by or in connection with its SIU department in connection with any investigations it has undertaken regarding Mednax.

## REQUEST FOR PRODUCTION NO. 97:

**A job description of the Head of the Medical Cost Analytics Unit.**

**RESPONSE:** Aetna objects to this request as not relevant to the parties' claims or defenses. Aetna will reconsider its objection if Mednax can provide an explanation of the relevance of the request.

## REQUEST FOR PRODUCTION NO. 98:

**A job description of the Supervisor of Data Mining & Service Requests within your SIU.**

**RESPONSE:** Aetna objects to this request as not relevant to the parties' claims or defenses. Aetna will reconsider its objection if Mednax can provide an explanation of the relevance of the request.

By:  */s/ Aimee L. Kumer*
Mark J. Schwemler
Gregory S. Voshell
Aimee L. Kumer
ELLIOTT GREENLEAF P.C.
925 Harvest Drive, Suite 300
Blue Bell, Pennsylvania 19422
*Counsel for Plaintiff*

OCTOBER 24, 2019

7

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 24, 2019, I served the foregoing on all counsel of record via email.

/s/ *Aimee L. Kumer*
AIMEE L. KUMER

<u>**EXHIBIT 1**</u>

## I.   PRELIMINARY STATEMENT

Plaintiffs Aetna, Inc., Aetna Health, Inc., Aetna Health Management LLC and Aetna Life Insurance Company, ("Aetna") hereby provides the following responses and objections to Defendants' requests for production of documents.  Aetna's responses are made without waiving or intending to waive, and, on the contrary, are made intending to preserve and are preserving:

1.   All questions as to competency, relevancy, materiality, privilege and admissibility of evidence for any purpose in any subsequent proceedings or the trial of this or any other action;

2.   The right to object on any ground at any time to a demand for further response to this or any other interrogatory or discovery procedures involving or relating to the subject matter of these interrogatories;

3.   The right to further supplement and/or amend these responses based upon the discovery of additional information or documents;

4.   The right to object to the use of any documents or evidence by any party in any subsequent proceedings or the trial of this or any other action on any ground; and

5.   The attorney-client, work-product and expert privileges and, accordingly, any subsequent response or production shall not constitute a waiver of said privileges.

## II.   GENERAL OBJECTIONS

1.   Aetna objects to Defendants' instructions and definitions to the extent they attempt to impose obligations upon the Aetna beyond those contained in the Federal Rules of Civil Procedure, and to the extent that it seeks discovery beyond that permitted by the Federal Rules of Civil Procedure.

2.   Aetna objects to each of document request to the extent it seeks (a) attorney work product (b) privileged information, including, but not limited to, information or documents which are subject to the attorney-client privilege; (c) confidential and proprietary information, including trade secrets, of Aetna; and (d) privileged and confidential information relating to employee records.

3.   Aetna objects to each document request to the extent that the information sought is not relevant to the subject matter involved in this litigation or reasonably calculated to lead to discovery of admissible evidence.

4.   Aetna objects to each document request to the extent that it is overly broad, vague and ambiguous.

5.   Aetna objects to each document request to the extent that it is unduly burdensome, intentionally harassing and oppressive and seeks information which is within the knowledge, control and/or custody of Claimants.

6.   Aetna objects to each document request to the extent that it seeks in bad faith to cause unreasonable annoyance, embarrassment, oppression, burden and expense to Aetna.

7.   Aetna objects to each document request without a temporal limitation as overbroad.

## III.   RESERVATION OF RIGHT TO SUPPLEMENT.

Aetna specifically reserves the right to supplement their responses from time to time as material additions or changes occur.

# EXHIBIT 15

# ROBBINS | RUSSELL

Robbins, Russell, Englert, Orseck, Untereiner & Sauber LLP

Alison C. Barnes

202.775.4507
abarnes@robbinsrussell.com

January 13, 2020

**Via Email**

Mark Schwemler
Elliott Greenleaf P.C.
925 Harvest Drive, Suite 300
Blue Bell, PA 19422

    Re: *Aetna, Inc., et al. v. Mednax, Inc., et al.*, No. 18-cv-02217 (E.D. Pa.)

Dear Mark:

   I write regarding Defendants' Notice of Rule 30(b)(6) Deposition, which we served on November 27, 2019.  Plaintiffs served objections to the Notice on December 20, 2019.  On January 10, we requested a meet-and-confer regarding those objections and proposed to have that discussion on January 15 or 16.  Please let us know as soon as possible when you are available to have that discussion.  Please also send us dates during the first two weeks of February on which Aetna's representative is available to testify regarding Topics 4, 9, 10, 11, 14, 15, 17, 19, 20 and 21.  Plaintiffs have stated that a corporate representative will be available to testify regarding part or all of the information requested in those topics.  Defendants intend to proceed with the deposition on topics Plaintiffs have deemed to be non-objectionable while they meet and confer with Plaintiffs in an effort to resolve disputes on the remaining topics.  We are willing to take the deposition at a location that is convenient for the witness.

    Sincerely,

    *Alison Barnes*

    Alison C. Barnes

cc: Marty Goldberg, Lash & Goldberg, LLP
   Jon Feuer, Lash & Goldberg, LLP

EXHIBIT 16

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| AETNA INC., *et al.*, | CIVIL ACTION |
| Plaintiffs, | No. 18-2217 |
| v. | |
| MEDNAX, INC., *et al.*, | |
| Defendants. | |

**PLAINTIFF'S RESPONSES TO DEFENDANTS' SIXTH SET OF
REQUESTS FOR PRODUCTION**

Pursuant to the Federal Rules of Civil Procedure, Aetna[1] hereby responds to the Sixth

Requests for Production issued by Mednax.[2] Aetna incorporates by reference the reservations

and objections set forth in Exhibit 1 hereto.

**RESPONSES**

**REQUEST FOR PRODUCTION NO. 99**: **Documents sufficient to identify the
locations of offices or departments that are responsible for receiving, processing, and
paying claims submitted by Mednax and names of the departments or individuals
primarily responsible for approving payments of claims submitted by Mednax.**

**RESPONSE:** Aetna objects to this request as overly broad, unduly burdensome, not

relevant to the parties' claims or defenses, and not proportionate to the needs of the case. The

locations of routine claims processing functions, and the individuals who participate in those

routine functions, are not relevant to the case, as has already been determined by the Court in

considering similar prior requests by Mednax in this matter.

---

[1] Aetna, Inc., Aetna Health, Inc., Aetna Health Management LLC and Aetna Life Insurance
Company, all together, "Aetna."

[2] Defendants Mednax, Inc., Mednax Services, Inc., formerly Pediatrix Medical Group, Inc.,
all together, "Mednax."

**REQUEST FOR PRODUCTION NO. 100**: Documents and communications concerning any policies and procedures for the detection and reporting of fraudulent claims that Aetna is required to maintain and/or submit to any state or federal agency including, but not limited to, plans required under N.J. Stat. Ann. § 17:33A-15, Fla. Stat. Ann. § 626.9891, Cal. Code Regs. tit. 10, § 2698.40, or N.Y. Ins. Law § 409.

**RESPONSE:** Aetna objects to this request as duplicative of and overlapping with Request for Production 68, which requested a copy of all anti-fraud and compliance plans from 2010 to the present. Aetna incorporates its objections to Request for Production 68 as if set forth fully herein. By way of further response, Aetna agreed to and has produced its SIU policy handbooks for the requested timeframe. In addition, through the parties' meet and confer discussions, Aetna agreed to determine whether there existed any such plans that specifically implicated the Mednax claims at issue. Aetna has since determined that no such plans exist. Mednax's broad request for any such plans, or policies or procedures, is overbroad, unduly burdensome and not relevant to the parties' claims or defenses. Further, Mednax's repeated issuing of overlapping requests, to which Aetna has already responded, is harassing.

**REQUEST FOR PRODUCTION NO. 101**: Documents concerning any efforts that Aetna has made to recoup potential or actual overpayments from Mednax in connection with claims submitted by Mednax to Aetna between January 1, 2010 and November 9, 2017, other than the filing of this lawsuit and the pre-litigation discussions between Mednax and Aetna.

**RESPONSE:** Aetna objects to this request as overly broad, unduly burdensome, not relevant to the parties' claims or defenses, and not proportionate to the needs of the case. Routine overpayment recoupment functions are not relevant to the case, as has already been determined by the Court in considering similar prior requests by Mednax in this matter.

By: */s/ Aimee L. Kumer*
Mark J. Schwemler
Gregory S. Voshell
Aimee L. Kumer
ELLIOTT GREENLEAF P.C.
925 Harvest Drive, Suite 300
Blue Bell, Pennsylvania 19422

JANUARY 9, 2020

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on January 9, 2020, I served the foregoing on all counsel of record via email.

*/s/ Aimee L. Kumer*
AIMEE L. KUMER

## EXHIBIT 1

### I.  PRELIMINARY STATEMENT

Plaintiffs Aetna, Inc., Aetna Health, Inc., Aetna Health Management LLC and Aetna Life Insurance Company, ("Aetna") hereby provides the following responses and objections to Defendants' requests for production of documents.  Aetna's responses are made without waiving or intending to waive, and, on the contrary, are made intending to preserve and are preserving:

1.  All questions as to competency, relevancy, materiality, privilege and admissibility of evidence for any purpose in any subsequent proceedings or the trial of this or any other action;

2.  The right to object on any ground at any time to a demand for further response to this or any other interrogatory or discovery procedures involving or relating to the subject matter of these interrogatories;

3.  The right to further supplement and/or amend these responses based upon the discovery of additional information or documents;

4.  The right to object to the use of any documents or evidence by any party in any subsequent proceedings or the trial of this or any other action on any ground; and

5.  The attorney-client, work-product and expert privileges and, accordingly, any subsequent response or production shall not constitute a waiver of said privileges.

### II.  GENERAL OBJECTIONS

1.  Aetna objects to Defendants' instructions and definitions to the extent they attempt to impose obligations upon the Aetna beyond those contained in the Federal Rules of Civil Procedure, and to the extent that it seeks discovery beyond that permitted by the Federal Rules of Civil Procedure.

2.  Aetna objects to each of document request to the extent it seeks (a) attorney work product (b) privileged information, including, but not limited to, information or documents which are subject to the attorney-client privilege; (c) confidential and proprietary information, including trade secrets, of Aetna; and (d) privileged and confidential information relating to employee records.

3.  Aetna objects to each document request to the extent that the information sought is not relevant to the subject matter involved in this litigation or reasonably calculated to lead to discovery of admissible evidence.

4.  Aetna objects to each document request to the extent that it is overly broad, vague and ambiguous.

5.  Aetna objects to each document request to the extent that it is unduly burdensome, intentionally harassing and oppressive and seeks information which is within the knowledge, control and/or custody of Claimants.

6.  Aetna objects to each document request to the extent that it seeks in bad faith to cause unreasonable annoyance, embarrassment, oppression, burden and expense to Aetna.

7.  Aetna objects to each document request without a temporal limitation as overbroad.

### III.  RESERVATION OF RIGHT TO SUPPLEMENT.

Aetna specifically reserves the right to supplement their responses from time to time as material additions or changes occur.