# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AETNA INC., ET AL | : | CIVIL ACTION |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| MEDNAX, INC. et al | : | NO.   18-cv-02217-WB |
| Defendants. | : | |

## MEMORANDUM CONCERNING DOC. NO. 183

The Defendants (collectively, "Mednax") have filed a motion to compel the Plaintiffs (collectively, "Aetna") to comply with the court's Order of October 29, 2019 (ECF Doc. No. 161) ("10/29 Order"). Doc. Nos. 183 (motion) and 187 (memorandum of law ("Def. Mem.")). Aetna has responded. Doc. No. 192 ("Pl. Resp."). Mednax has filed a reply. Doc. No. 197 ("Def. Reply"). The 10/29 Order directed Aetna to produce original data analyzed by its expert, Dr. Makuch, as part of his regression analysis, which formed a substantial ground of Aetna's complaint. 10/29 Order, at 5-6.

Mednax's chief complaint is that there is a substantial difference in the amount of data produced in Aetna's August 6, 2019 production (the "August Data") and Aetna's March 18, 2019 production (the "March Data"). *See* Def. Mem. at 11; declaration of Dr. Cohen-Cole, attached as Exh. 8 to Defendant's Memorandum. From this difference, Mednax deduces that Aetna cannot have produced the original data sent to Dr. Makuch. Def. Mem. at 10-11. Aetna claims that the August Data clearly comprehended far more information and did not purport to be a duplicate of the March Data. Pl. Mem. at 2-3. A chart included in Aetna's memorandum purports to make clear why the August Data is a larger set than the March Data:

| **March Data** | | |
|---|---|---:|
| Aetna | Infant claims | 26,134,907 |

| **August Data**[3] | | |
|---|---|---:|
| Aetna | Infant claims | 26,309,909 |
| Aetna | Mother claims | 107,330,888 |
| Coventry | Infant claims | 3,280,838 |
| Coventry | Mother claims | 11,004,822 |

Aetna contends that the Coventry claims were not part of the information supplied to Dr. Makuch, because the Coventry claims were not integrated with Aetna's data until 2016, two years after Dr. Makuch's regression analysis. Pl. Mem. at 9. Neither were mother claims part of the March data. *Id.* Aetna also notes that the August data included a larger time period. *Id.* Aetna claims that the actual difference between March Data for infant claims and August Data for infant claims is only 0.6%, which is attributable to the fact that the August Data was "collected based on ICD-9 and ICD-10 codes," not on "hospital revenue codes," the basis for the March Data collection. *Id.* at 7. Aetna argues that "nearly 120 million claim records included in the August Data belong to mothers and ***do not*** relate to medical claims for infants. . ." *Id.* at 3.

Mednax has filed a reply contesting Aetna's explanation of the differences between the August Data and March Data. In the supplemental declaration of Mednax's expert, Dr. Cohen-Cole, he points out inconsistencies in Aetna's explanation. Using Aetna's expert's methodology, he calculates that there are 6.5 million claims in the March Data that could only apply to non-infants. Doc. No. 197-1 at 3. This contradicts Aetna's explanation that the March Data included only infant claims. Dr. Cohen-Cole is unable to test Aetna's claim that Coventry data was not included in the March Data because he does not know what codes identify Coventry data. *Id.* at 3. Dr. Cohen-Cole

also states that there are 1.1 million infant claims in the March Data that are not in the August Data. *Id.* This is difficult to reconcile with Aetna's claim that the August Data and March Data are almost exactly congruent, when it comes to infant data.

The meet-and-confer process has obviously broken down. The process is designed to encourage the parties to resolve their discovery issues without court intervention, if possible. Amid accusation and counter-accusation, I doubt that returning the parties to meet-and-confer, with no end in sight, will be productive. Neither am I eager to undergo a slow, painful, and probably inconclusive process of conducting a series of written declarations and counter-declarations. If I am to resolve the parties' differences, I will have to hold a hearing, and promptly.

I will order the parties to meet-and-confer about their ongoing differences, particularly the discrepancies identified in Doc. No. 197-1, with a view to narrowing their differences in advance of a hearing. I will then conduct a discovery hearing, at which Aetna will produce the March Data and August Data in electronic format, easily displayed on screen, such that any part of the March Data or August Data can be easily segregated, displayed, and examined in detail by me and the witnesses for both sides.

At the hearing Mednax will produce Dr. Cohen-Cole, Aetna will produce Dr. Blowblis, and Aetna will produce a witness or witnesses under Fed. R. Civ. Pro. 30(b)(6) who will bind the plaintiffs on the subject of 1) how the data that formed the basis of the Dr. Makuch regression analysis were compiled; 2) how the March Data were compiled, how the August Data were compiled, and why and how the March Data differ from the August Data; and 3) whether, why, and how the March Data differ from the data supplied to Dr. Makuch. I realize that Aetna contends that the March Data is identical to

the data supplied to Dr. Makuch. One purpose of the hearing will be to make a finding on that issue, among other things.

At the hearing the parties also will produce witnesses concerning their varying contentions about the other issues raised in Mednax's memorandum, *i.e.*, regression methodology, claims field information, provider fee schedules, and the Texas "Before and After" analysis. I will convene a pre-hearing scheduling conference in the coming days to discuss the number and order of witnesses and any additional briefing or pre-hearing production of exhibits that I may think is needed.

An order will enter.

BY THE COURT:

*/s Richard A. Lloret*
RICHARD A. LLORET
U.S. MAGISTRATE JUDGE